IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Shelby Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **FARMER, RAYMOND AND DIANE** | ) | Case No. 10-40269 |
| | ) | |
| Debtors. | ) | |

**EMERGENCY MOTION OF THE DEBTORS FOR: (I) APPROVAL
OF MANAGEMENT AGREEMENTS, AND (II) AUTHORITY
TO USE CASH COLLATERAL, PURSUANT TO
SECTIONS 105, 361 AND 363 OF THE BANKRUPTCY CODE**

Raymond Farmer and Diane Farmer, the above-captioned debtors and debtors-in-possession herein (the "Debtors"), by this emergency motion (the "Motion"), respectfully request: (i) the entry of an order approving certain Management Agreements (defined below); and (ii) the entry of an interim and final order authorizing the use of cash collateral and providing adequate protection for the use thereof, pursuant to sections 105, 361, and 363 under Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure. In support of this Motion, the Debtors respectfully represent and state as follows:

**JURISDICTION**

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). The statutory predicates for relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code and Bankruptcy Rule 4001.

**BACKGROUND**

2. On April 5, 2010 (the "Petition Date"), the Debtors filed a voluntary joint petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue in possession of their properties and the management of their business and affairs as a debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case.

3. Prior to March 31, 2010, Joshua Farmer and Raymond Farmer each owned one-half of the membership interests in the following limited liability companies: (i) Wildewood Apartments of Spartanburg, LLC, a South Carolina limited liability company; (ii) Meadow Green Apartments, LLC, a South Carolina limited liability company; (iii) East Ridge Apartments, LLC, a South Carolina limited liability company; (iv) Timbercreek Apartments, LLC, a South Carolina limited liability company; (v) Groves Apartments, LLC, a South Carolina limited liability company; (vi) Georgetown Village Apartments, LLC, a South Carolina limited liability company; (vii) Gaffney Apartments, LLC, a South Carolina limited liability company; and (viii) Two Mile Properties, LLC, a North Carolina limited liability company (collectively, the "Entities").

4. Each of the Entities owned certain real property and improvements, which are used as apartment complexes and other rental properties (the "Properties"). The Entities derived substantially all of their revenues from rents related to the Properties.

5. Joshua Farmer and Raymond Farmer also each own one-half of the membership interests of Two Mile Enterprises, LLC (the "Management Company").

6. The Management Company provides management services for the Properties pursuant to a written Management Agreement with each of the Entities. Attached hereto as **Group Exhibit A** are copies of the Management Agreements.

7.  The relationship between Raymond Farmer, Joshua Farmer, the Management Company and the Entities prior to March 31, 2010 is illustrated by the organizational chart attached hereto as **Exhibit B**.

8.  On or about March 30, 2010, each of the Entities convened a meeting where it was determined, among other things, the following: (i) that each of the Entities would transfer all of the company's assets, including all personal property and real property to the members in a ratio equal to the members respective membership interests in exchange for the members assuming the liabilities of each of the Entities; and (ii) that each company would be dissolved pursuant to applicable state law. Attached hereto as **Group Exhibit C** are copies of the Minutes of the Meeting of the Members of the Entities.

9.  The same day, each of the Entities executed: (i) a Consent Resolution authorizing each of the respective Entities to transfer all of the company's assets to Joshua Farmer and Raymond Farmer subject to all liens and encumbrances; and (ii) a Bill of Sale transferring all of the real property and personal property to Joshua Farmer and Raymond Farmer. Attached hereto as **Group Exhibit D** are copies of the Consent Resolutions and Bills of Sale.

10. On or about April 1, 2010, a deed was recorded in the appropriate county evidencing the transfers from the Entities to Raymond Farmer and Joshua Farmer. Attached hereto as **Group Exhibit E** are copies of the respective deeds.

11. Each of the Entities was dissolved by filing either Articles of Dissolution (North Carolina) or Articles of Termination (South Carolina).[1]

---

[1] Two Mile Properties, LLC filed an Amendment of Articles of Organization with the North Carolina Secretary of State and changed its name to Old Two Mile Properties, LLC ("OTMP") and then subsequently dissolved OTMP because the Debtors would like to use the name "Two Mile Properties" in the future.

12. As a result of the foregoing, the relationship between Raymond Farmer, Joshua Farmer, the Management Company and the Properties is illustrated on the organizational chart attached hereto as **Exhibit F**.

13. When the Entities were in existence, they borrowed funds from various lenders (each a "Lender," and collectively, the "Lenders"), to purchase and/or repair the Properties. Attached hereto as **Exhibit G** is a chart identifying the Lenders that may have in interest in Cash Collateral (defined below).

14. Each of the Lenders takes the position that it has a perfected, first priority security interest in, among other things, the leases, rents, proceeds and profits related to the respective Properties. Debtors have not yet completed an analysis of the extent, validity or priority of the security interests and do not concede that any of the Lender's security interests are perfected.

15. The Properties generate substantially all of their revenue from leases and rents related to the Properties. These cash revenues may constitute the cash collateral of one or more of the Lenders within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral"). Due to the emergency nature of this filing, counsel for the Debtor has not yet had a full opportunity to review all loan documents evidencing the loans from the Lenders. At this point, the Debtors rely upon its understanding that the Lenders have a perfected security interest in the Cash Collateral. The Debtors specifically reserve any and all rights to challenge, avoid, object to, set aside or subordinate any of the aforesaid claims or the claimed liens or security interests upon any theory. If and to the extent that the Debtors cash on hand or cash generated post-petition constitutes the Cash Collateral of any of the Lenders, then the Debtors request authorization from the Court to use this cash to fund the operations of the Properties.

## RELIEF REQUESTED

16. Pursuant to this Motion, the Debtors seek authority to use cash collateral, on an interim basis, to operate the Properties in the ordinary course of business. The Debtors propose to use the cash collateral in accordance with a formal budget for each of the Properties (collectively, the "Budgets"), prepared by the Debtors and which assumes the accrual of ordinary course business and bankruptcy related expenses necessary to fund the operations of the Properties going forward. Debtors will file copies of the Budgets separately as soon as they are available. Because the amount of certain expenses or the timing of all expenses cannot be predicted exactly, the Debtors propose that they be in compliance with the Budgets so long as the Debtors do not exceed the Budgets by more than 10% per line item (on a cumulative basis).

17. The Debtors request a preliminary hearing on an emergency basis to approve this interim request pursuant to Bankruptcy Rule 4001(b)(2) and that a final hearing be set at least 14 days after the filing of this motion.

18. The Debtors also seek approval of the Management Agreements so that the Management Company can make payroll to the employees that perform services to the Properties and to make reasonably necessary repairs and maintenance in the ordinary course of the Debtors business and affairs.

## BASIS FOR RELIEF REQUESTED

19. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral without the consent of the secured party or court approval. See 11 U.S.C. § 363(c)(2). After notice and a hearing, the Court may approve a debtor's use of cash collateral without the necessity of obtaining the secured creditor's consent, but "to the extent necessary to

avoid immediate an irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b).

20. In order for a court to authorize the use of cash collateral over a secured party's objection, the secured party's interest in the cash collateral must be adequately protected. In the context of a cash collateral motion, the purpose of adequate protection is to protect the secured lender from a diminution in the value of its collateral during the period in which it is prevented from foreclosing upon such collateral by the automatic stay. In re Delta Resources, Inc., 54 F.3d 722, 728-30 (11th Cir. 1995), cert. denied, 516 U.S. 980 (1995).

21. Courts have found a secured creditor adequately protected where either a sufficient equity cushion in the collateral exists to protect the secured creditor, or the level of the secured creditor's collateral is not decreasing over time. In re Dynaco Corp., 162 B.R. 389, 394 (Bankr. D. N.H. 1993) (secured creditor was adequately protected and debtor was authorized to use cash collateral where level of collateral was not declining). In re May, 169 B.R. 462 (Bankr. S.D. Ga. 1994) (equity cushion in property may provide creditor with adequate protection of its interest, sufficient to permit the debtor to use cash collateral).

22. The Lender has adequate protection against the diminution of the value of the pre-petition Collateral. In the first instance, the use of cash collateral in the ordinary course of business, in and of itself, provides adequate protection in that it preserves the going concern value of the Properties and the Debtors' business and affairs and, as a result, the value of the pre-petition Collateral. The Debtors also assert that the value of the collateral, notwithstanding the cash collateral the Debtor seeks access to through this motion, may be in excess of the indebtedness to Lenders and there is a sufficient equity cushion based on the value of the real property, the fixtures and improvements thereon, and the tangible personal property of the

{00224188.DOC V. F132.017781;}

Debtors. Nevertheless, to further protect against diminution in the value of the pre-petition Collateral, the Debtor proposes to provide the Lenders with replacement liens in post-petition assets to the same extent and priority as existed pre-petition, for all cash collateral actually expended for the duration of the interim cash collateral Order.

23. Due to the emergency nature of the relief requested, the Debtor is not yet prepared to provide evidence as to the equity cushion of any of the Lenders, but reserves the right to do so at a subsequent hearing on the use of cash collateral and to seek a determination that the Lenders are adequately protected on that basis alone. In the interim, the Debtor's cash flow and other financial analysis shows that each Lender's collateral position will be adequately maintained during the Debtors' use of cash collateral related to the Properties, especially during the short term period covered by the interim order herein requested. Thus, the Debtor respectfully submits that its use of cash collateral is proper pursuant to section 363(c)(2) of the Bankruptcy Code.

24. Absent the interim relief requested, the Debtors and the Properties will suffer immediate and irreparable harm. In the absence of a court order authorizing the use of cash collateral, the Debtor will be unable to meet its operating expenses and will be forced to cease operations immediately, rather than reorganizing the debt and business structures in order to maximize value for the Debtors' estates and creditors. Many of the Debtors' vendors operate on a cash basis; regular management fees must be paid to the Management Company which, in turn, pays payroll to the employees that service the Properties; and other expenses -- such as maintenance and repairs to the Properties-- require payment on a rolling basis throughout the month in order to ensure continued smooth operation of the Properties and the Debtors' business and affairs. The Properties primary source of revenue is from the rents paid by their respective tenants. Those tenants' continued satisfaction with the Properties is crucial to retain viability as

{00224188.DOC V. F132.017781;}

a going concern. Without immediate access to cash, the Debtors' inability to pay certain items would lead to a quick collapse of the Debtors' business operations and affairs.

25. The Debtors' ability to fashion an effective plan to satisfy secured, priority, and other claims would be irreparably impaired and the value of the pre-petition Collateral, will suffer a dramatic decline if the Debtors are not permitted to use cash collateral. Moreover, if the Debtors are not permitted to use cash collateral, the value of the Debtors' assets and the Collateral will deteriorate exponentially.

26. Accordingly, the Debtors request that this Court grant them interim authority to use cash collateral in accordance with the terms of a final Budget until a further hearing on the Motion can be scheduled pursuant to Bankruptcy Rule 4001. Without such authorization, the Debtors' efforts to reorganize and maximize creditor recoveries will be brought to a halt and the intent and purpose of chapter 11 will be frustrated.

27. Further, the Debtors request approval of the Management Agreements. As discussed above, the Management Company collects the rents related to the Properties, pays expenses related to the Properties, such as maintenance and repairs, and handles the payroll for all employees that provide services to the Properties. Absent the relief sought herein, the Debtors will be unable to make necessary repairs to the Properties and there is a significant risk that the employees will walk out if they are not paid.

28. The Court should thus approve the Management Agreements going forward.

## **NOTICE**

Notice of this Motion has been given to (a) the Bankruptcy Administrator for the Western District of North Carolina, (b) the Debtors' Lenders, (c) the Debtor's twenty (20) largest unsecured creditors, and (d) those parties requesting notice pursuant to Bankruptcy Rule 2002.

{00224188.DOC V. F132.017781;}

WHEREFORE, the Debtors respectfully request that the court grant the relief requested herein and such further and other relief as is just and proper.

Dated: Charlotte, North Carolina
April 6, 2010

HAMILTON MOON STEPHENS STEELE
& MARTIN, PLLC

*/s/ Andrew T. Houston*
Travis W. Moon (Bar No. 3067)
Andrew T. Houston (Bar No. 36208)
201 South College Street
Charlotte Plaza, Suite 2020
Charlotte, North Carolina 28244-2020
Telephone: (704) 344-1117
Facsimile: (704) 344-1483
*Counsel for the Debtor*

{00224188.DOC V. F132.017781;}