

FILED & JUDGMENT ENTERED
David E. Weich

May  10  2010

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
George R. Hodges
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| In re: | ) Chapter 11 |
|---|---|
| **FARMER, RAYMOND AND DIANE** | ) Case No. 10-40269 |
| Debtors. | ) |

**FINAL ORDER AUTHORIZING THE USE OF CASH COLLATERAL,
PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE**

THIS MATTER came before the Court on April 28, 2010 for a final hearing upon the Emergency Motion of the Debtors for: (I) Approval of Management Agreements[1], and (II) Authority to Use Cash Collateral, Pursuant to Sections 105, 361 and 363 of the Bankruptcy Code (the "Motion"). Counsel for the Debtors, counsel for the pre-petition secured lenders and the Bankruptcy Administrator appeared at the hearing. The Court has reviewed the Motion, and has heard and considered the statements of counsel, considered the evidence before it and the evidence presented at the interim hearing held on April 16, 2010, and by entry of this Order the Court makes the following:

---

[1] The Debtors withdrew their motion to approve pre-petition management agreements and are authorized to operate and manage the Properties on the terms set forth herein.

**FINDINGS OF FACT:**

1. On April 5, 2010 (the "Petition Date"), the Debtors filed a voluntary joint petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors are currently debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case.

2. Prior to March 31, 2010, Joshua Farmer and Raymond Farmer each owned one-half of the membership interests in the following limited liability companies: (i) Wildewood Apartments of Spartanburg, LLC, a South Carolina limited liability company; (ii) Meadow Green Apartments, LLC, a South Carolina limited liability company; (iii) East Ridge Apartments, LLC, a South Carolina limited liability company; (iv) Timbercreek Apartments, LLC, a South Carolina limited liability company; (v) Groves Apartments, LLC, a South Carolina limited liability company; (vi) Georgetown Village Apartments, LLC, a South Carolina limited liability company; (vii) Gaffney Apartments, LLC, a South Carolina limited liability company; and (viii) Two Mile Properties, LLC, a North Carolina limited liability company (each an "Entity," and collectively, the "Entities").

3. Each of the Entities owned certain real property and improvements, and related personal property, which are used as apartment complexes and other rental properties, as set forth on **Exhibit A** hereto (each a "Property," and collectively the "Properties"). Each Entity derived substantially all of its income from rents and other revenues generated by the associated Property or Properties.

4. On or about March 30, 2010, each Entity convened a meeting where it was determined, among other things, the following: (i) that each Entity would transfer all of the company's assets, including all personal property and real property to the members in a ratio

equal to the members' respective membership interests in exchange for the members assuming the liabilities of each of the Entities; and (ii) that each company would be dissolved pursuant to applicable state law.

5. The same day, each Entity executed: (i) a Consent Resolution authorizing each Entity to transfer all of the company's assets to Joshua Farmer and Raymond Farmer subject to all liens and encumbrances; and (ii) a Bill of Sale transferring all of the Entity's personal property to Joshua Farmer and Raymond Farmer.

6. Thereafter, a quit-claim deed or non-warranty deed was executed by each Entity and recorded in the relevant county public registry, transferring the Properties to Joshua Farmer and Raymond Farmer.

7. The above-mentioned pre-petition transfers were documented and were undertaken in a transparent fashion, which does not impugn the integrity of Raymond Farmer and Joshua Farmer in the operation and management of the Properties.

8. Joshua Farmer and Raymond Farmer are competent and able to operate and manage the Properties and there is no evidence of mismanagement on the part of Joshua Farmer or Raymond Farmer.

9. When the Entities were in existence, they borrowed funds from various lenders (each a "Lender," and collectively, the "Lenders"), to purchase and/or make repairs to the Properties, as identified on **Exhibit A**.

10. Each Lender asserts a valid, first-priority and properly perfected security interest in, among other things, the leases, rents, proceeds and profits of the respective Property or Properties identified on **Exhibit A**, attached hereto (the "Pre-Petition Collateral").

11. For purposes of this Motion, the Court has proceeded with the presumption that there is a valid debt owed to the Lenders and that the leases, rents, profits and proceeds from the Properties are subject to a valid, first-priority and properly perfected security interest securing that debt. The Debtors have reserved their right, as well as the right of any other party with standing, to challenge the validity, priority or extent of any asserted lien in a later proceeding.

12. The value of the Lenders' collateral is not decreasing as a result of the replacement liens in post-petition rents granted below.

13. There is no diminution in the value of the Lenders' collateral as a result of the Debtors' use of cash collateral.

**CONCLUSIONS OF LAW**:

14. This is a "core" proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(M), among other provisions, and this Court has authority to enter this Order under 11 U.S.C. §§ 105, 361, and 363, among other sections.

15. Each Lender's interest in cash collateral is adequately protected as that term is defined in section 361 of the Bankruptcy Code.

16. Entry of this Order is in the best interest of the Debtors, their creditors and other parties in interest in this case.

In view of the foregoing, it THEREFORE IS ORDERED, ADJUDGED AND DECREED as follows:

(a) <u>Authority to Use Cash Collateral</u>. By entry of this Order, Debtors are authorized to use cash collateral derived from the rents generated by the Properties in the ordinary course of business provided such use is: (1) consistent with the approved expenses in that the amounts spent in respect of each Property do not exceed, on a line-item basis, the expense budgets for the

Properties, which are attached hereto as **Group Exhibit B** (each a "Budget," and collectively the "Budgets"), subject, however, to the following: (i) Debtors may exceed the amounts set forth in any Budget line-item by not more than ten percent (10%) of such line item, and provided that Debtors' net cash and receivable position from the use of Cash Collateral in respect of a Property does not fail to meet the Projected Cash Surplus identified on the applicable Budget; and (ii) any expenditure in excess of those amounts shall require the prior written consent of the applicable Lender(s) before being paid; and (2) Debtors comply with all other terms of this Order.

(b) <u>Grant of Liens</u>. In addition to the security interest in the Pre-Petition Collateral and its security interests and rights in the cash collateral generated upon sale of any Pre-Petition Collateral and as additional protection for such interests and rights and all obligations of Debtors arising from and after the date of entry of this Order under any of the loan documents evidencing a loan to any of the Entities, each Lender is hereby further granted a valid, perfected, and enforceable security interest in the rents and proceeds of the Property or Properties in which such Lender has asserted a pre-petition lien or security interest, equivalent in extent and priority to that which it held as of the Petition Date on like collateral, to the extent of cash collateral actually expended (the "Replacement Lien"). Such Replacement Lien is equivalent to a lien granted under 11 U.S.C. § 364(c)(2) in and upon Post-Petition Collateral. Nothing herein shall be deemed to resolve the issue of whether the Lenders already have a security interest in post-petition leases and rents, pursuant to 11 U.S.C. § 552(b), such that no "grant" of a post-petition lien is necessary.

(c) <u>Lien Attachment and Perfection</u>. This Order shall be sufficient and conclusive evidence of the priority and validity of each Lender's security interest in and liens in the Post-Petition Collateral without the necessity of filing, recording, or serving any financing statements

or other documents which may otherwise be required under federal or state law in any jurisdiction or the taking of any action to validate or perfect the security interests and liens granted to each Lender hereunder.

(d) <u>Unauthorized Use</u>.  In addition to constituting a default hereunder, and without any limitation upon other remedies available to each Lender for such unauthorized use, if Debtors use cash collateral for a purpose not authorized herein, each Lender's liens and other security interests shall automatically attach to any assets acquired with such cash collateral to the same extent and with the same priority as the pre-petition liens and security interests would have attached thereto.

(e) <u>Limitations</u>.  In addition to the restrictions set forth herein, the Debtors shall: (a) maintain separate accounting for each of the Properties; (b) maintain separate bank accounts for each of the Properties to ensure that funds are not commingled; (c) pay all escrowed funds for property taxes into an escrow account maintained by counsel for the Debtors; (d) pay all funds for property insurance (including without limitation payments to insurance premium financing companies that financed any of the Entities' property insurance premiums before the Petition Date) into a trust account maintained by counsel for the Debtors; and (e) pay all funds for the Professional Fee Carve out as set forth in the Budgets into a trust account maintained by counsel for the Debtors as set forth in paragraph j below.

(f) <u>Challenges</u>.  Nothing contained herein shall prevent the Debtors, a creditor, subsequently appointed trustee, or official creditors' committee from contesting the validity, perfection and enforceability, or priority of the liens on the Pre-Petition Collateral, or from raising any defenses, offsets, deductions or counterclaims thereto.

(g)  No Waiver.  Nothing contained herein shall be deemed or construed as a waiver of any substantive or procedural rights of any party in interest in these chapter 11 cases, including, without limitation, the rights of the Lenders to contest the validity of the transfers of assets to the Debtors prior to the filing of the Debtors' bankruptcy petitions and all rights and responsibilities related to those transfers.

(h)  Management of the Properties.  Joshua Farmer and Raymond Farmer are hereby authorized to operate and manage the Properties on the following terms: (i) Joshua Farmer and Raymond Farmer are hereby authorized to provide management services to the Properties; (ii) the Farmers may charge a 4.5% management fee (the "Management Fee"), together with all actual and reasonable costs to each Property as reflected on each applicable Budget; (iii) Joshua Farmer shall be paid a salary of $75,000.00 annually together with his vehicle, with such compensation being paid from the Management Fee; and (iv) Raymond Farmer shall be paid $50,000.00 annually, with such compensation being paid from the Management Fee.  Nothing contained herein shall be construed as a limitation on the power of this Court to reconsider the issue of the management of any one or more of the Properties.

(i)  Professional Fee Carve out.  The Debtors shall be entitled to a professional fee carve out from the Lenders' cash collateral of $40,000 per month for professional fees incurred by the estates (the "Professional Fee Carve out").  As set forth in the Budgets, the Professional Fee Carve out is apportioned on a *pro rata* basis in relation to the gross monthly income of the Properties.  The Professional Fee Carve out shall be paid monthly into a trust account maintained by counsel for the Debtors and paid to counsel for the Debtors and other professionals retained by the estates upon approval by the Court.

(j) <u>Service of Order</u>. Counsel for Debtors shall ensure that a copy of this Order is served electronically or by first class mail (which, pursuant to the Bankruptcy Rules, will be deemed sufficient) upon (i) the Bankruptcy Administrator; (ii) all secured creditors; and (iii) any person who has filed with this Court on or before the date of this Order and served upon Debtors' counsel a request to be served with copies of all pleadings, notices, and other papers filed in this bankruptcy case.

| | |
|---|---|
| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of this Order. | United States Bankruptcy Court Western District of North Carolina |