FILED & JUDGMENT ENTERED
David E. Weich

May 28 2010

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
George R. Hodges
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **FARMER, RAYMOND AND DIANE** | ) Case No. 10-40269 |
| | ) |
| Debtors. | ) Jointly Administered |

**ORDER RESOLVING MOTION OF THE PALMETTO BANK FOR A
DETERMINATION THAT THE DEBTORS ARE SUBJECT
TO VARIOUS PROVISIONS OF THE BANKRUPTCY CODE RELATING TO SINGLE
ASSET REAL ESTATE AND THOSE APPLICABLE TO CORPORATE ENTITIES**

THIS MATTER came before the Court for hearing on May 12, 2010 on (a) the Court's *sua sponte* direction on April 28, 2010 that it would hear from the parties concerning the application to these cases of Bankruptcy Code provisions relating to single asset real estate corporate entities; and (b) the Motion of Palmetto Bank for a Determination that the Debtors are subject to various provisions of the Bankruptcy Code relating to Single Asset Real Estate and those applicable to Corporate Entities (the "Motion"). Based upon the Debtors' prior testimony, the pleadings filed in these cases (including the briefs filed by Palmetto Bank, the Debtors and Inland Mortgage Capital Corporation) and the oral argument presented by counsel for the parties, and in the exercise of the Court's equitable powers under 11 U.S.C. § 105(a), the

Court finds that good cause exists to resolve the matter on the grounds set forth below.

Accordingly, the Court makes the following findings of fact and conclusions of law:

1.  Joshua Farmer is a licensed North and South Carolina attorney with the law firm of Tomblin, Farmer & Morris, PLLC. His practice focuses on bankruptcy matters and civil litigation.

2.  Joshua Farmer and his father Raymond Farmer (collectively, the "Farmers") formed various limited liability companies in North and South Carolina for the purpose of acquiring and operating multi-family apartment complexes and other real estate ventures. In particular, the Farmers each owned one-half of the membership interests in the following limited liability companies: (a) Wildewood Apartments of Spartanburg, LLC, a South Carolina limited liability company; (b) Meadow Green Apartments, LLC, a South Carolina limited liability company; (c) East Ridge Apartments, LLC, a South Carolina limited liability company; (d) Two Mile Properties, LLC, a North Carolina limited liability company; (e) Timbercreek Apartments, LLC a South Carolina limited liability company; (f) Groves Apartments, LLC a South Carolina limited liability company; (g) Georgetown Village Apartments, LLC, a South Carolina limited liability company; and (h) Gaffney Apartments, LLC, a South Carolina limited liability company (each an "Entity," and collectively, the "Entities").

3.  Prior to March 30, 2010, each Entity owned certain real property and improvements, which were operated as apartment complexes and other rental properties (the "Properties"). With the exception of Two Mile Properties, LLC and Gaffney Apartments, LLC, each of the Entities owned only a single piece of real estate (the Entities other than Two Mile Properties, LLC and Gaffney Apartments, LLC are the "Single Asset Entities"). Each of the

Single Asset Entities derived substantially all of their revenues from rents on their respective property.

4. Various lenders who made loans to the Entities have asserted a properly perfected mortgage or deed of trust encumbering one or more of the Properties. The lenders have also asserted properly perfected security interests in, among other things, leases and rents generated by the Properties.

5. For purposes of this Order, the Court has proceeded with the presumption that there is a valid debt owed to the lenders and that the leases, rents, profits and proceeds from the Properties are subject to valid, first-priority and properly perfected security interests securing that debt. The Debtors have reserved their right, as well as the right of any other party with standing, to challenge the validity, priority or extent of any asserted lien in a later proceeding.

6. The creditors have asserted that: the Entities defaulted on their loans by failing to make payments to the lenders as they were due; and that none of the Entities had any equity in the Properties.

7. On or about March 30, 2010, each Entity (through its members Joshua Farmer and Raymond Farmer) executed the following documents:

(a) Minutes of the Meeting of the Members (the "Meeting Minutes") whereby it was resolved that "all assets of the company, including all real and personal property and all tangible and intangible assets, be transferred to [Raymond Farmer and Joshua Farmer] in a ratio equal to each member's proportional membership interest in the company in consideration of the member's assuming liabilities of the company per the company's accounting records";

    (b) a Consent Resolution (the "Consent Resolution") authorizing each Entity to transfer to the Farmers "all of the Company's assets, subject to all liens and encumbrances";

    (c) a Bill of Sale ("Bill of Sale") to transfer to the Farmers all of the Entities interest in "furniture, fixtures, equipment and other tangible personal property that is now affixed to and/or located at the Real Property . . . and used in connection with the management, operation or repair of the Real Property" (the "Personal Property"); and

    (d) a quit-claim deed or non-warranty deed transferring the real property owned by the Entities to the Farmers (the "Deeds").

The transfers of real and personal property as evidenced by the Meeting Minutes, Consent Resolutions, Bills of Sale and Deeds are referred to herein as the "Pre-Petition Transfers."

  8. Between April 1 and April 5, 2010, each Entity filed either Articles of Dissolution (in North Carolina) or Articles of Termination (in South Carolina).

  9. Joshua Farmer testified that the assets were transferred because "[w]e felt that we couldn't afford to file 12 different cases" and "it would be too expensive to have individual Chapter 11 cases for each of these separate LLCs." Mr. Farmer further testified that all the assets were transferred to the Farmers to avoid the absolute priority rule which applies to corporate Chapter 11 debtors.

  10. The Debtors filed their respective Chapter 11 cases on April 5, 2010.

  11. The Debtors have admitted that, but for the Pre-Petition Transfers and the pre-petition dissolution of each of the Single Asset Entities, the real property owned before April 1, 2010 by each of the Single Asset Entities would satisfy the definition for single asset real estate

4

under 11 U.S.C. § 101(51B).

12.     The Court finds that on these facts it is appropriate to treat the Debtors' assets and liabilities as if the Pre-Petition Transfers had not occurred and the Entities' assets and liabilities were being administered in separate bankruptcy cases.

13.     To prevent a perceived abuse or avoidance of the bankruptcy system, the Court finds that the provisions of the Bankruptcy Code should apply to the assets owned by the Entities prior to March 30, 2010, as if the subsequent transfers did not occur.  The alternative would be to require each of the Entities to file a separate bankruptcy petition and the Court does not believe that this is warranted or necessary in the present situation.

14.     The Court's intention is to administer the present cases in such a way that it would be the same as if each of the Entities and the Debtors had filed separate bankruptcy petitions.  This separate administration will include not only separate application of the provisions of Section 362 of the Code with respect to each Entity and its assets and liabilities before the Pre-Petition Transfers, but will also require separate accounting, separate administration and separate voting on any Chapter 11 plan of reorganization.

15.     To aid in the administration of these cases, the Debtors should file separate schedules and statements of financial affairs for each Entity.

Based upon the foregoing, it is hereby ORDERED, ADJUDGED and DECREED as follows:

A.     The rules applicable to single asset real estate cases shall apply to the assets held by the Single Asset Entities prior to the date of the Pre-Petition Transfers and the administration of these proceedings shall be governed by the applicable provisions of the Bankruptcy Code as

5

applied to the various assets and liabilities as if the Pre-Petition Transfers had not occurred and the Entities' assets and liabilities were being administered in separate bankruptcy cases; provided however, that the Court will not rule at this time as to whether the absolute priority rule will apply in these cases.

B.  The Court will not rule at this time on Palmetto and Inland's argument that the Pre-Petition Transfers to the Debtors are void fraudulent transfers. A determination concerning the Debtors' interest (if any) in the various transferred properties shall be resolved in the context of an adversary proceeding under Bankruptcy Rule 7001.

C.  The Debtors are directed to file amended schedules and statements of financial affairs for themselves and for each of the Entities on or before June 11, 2010. The amended schedules and statements of financial affairs shall separately list the assets and liabilities for each of the Entities as if the Pre-Petition Transfers had not occurred.

D.  Nothing herein shall be deemed to address the effectiveness of the Pre-Petition Transfers or the validity of any lien or claim of a creditor. The rights of all parties with regard to these issues are specifically preserved.

This Order has been signed electronically.　　　　　　　　　　　　　United States Bankruptcy Court
The Judge's signature and Court's seal
appear at the top of this Order.