IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **Joshua and Andrea Farmer** | ) | Chapter 11 |
| | ) | Case No. 10-40270 |
| Debtors. | ) | |
| In re: | ) | |
| | ) | |
| **Raymond and Diane Farmer** | ) | Chapter 11 |
| | ) | Case No. 10-40269 |
| Debtors. | ) | |

**FIRST AMENDED JOINT PLAN OF REORGANIZATION OF RAYMOND AND DIANE FARMER AND JOSHUA AND ANDREA FARMER, PURSUANT TO SECTION 1121(a) OF THE BANKRUPTCY CODE**

Dated: Charlotte, North Carolina
        November 15, 2010

HAMILTON MOON STEPHENS STEELE & MARTIN, PLLC
Travis W. Moon (Bar No. 3067)
Andrew T. Houston (Bar No. 36208)
201 South College Street
Charlotte Plaza, Suite 2020
Charlotte, North Carolina 28244-2020
Telephone:  (704) 344-1117

*Counsel for Debtors*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **Joshua and Andrea Farmer** | ) | Chapter 11 |
| | ) | Case No. 10-40270 |
| Debtors. | ) | |
| In re: | ) | |
| | ) | |
| **Raymond and Diane Farmer** | ) | Chapter 11 |
| | ) | Case No. 10-40269 |
| Debtors. | ) | |

## FIRST AMENDED JOINT PLAN OF REORGANIZATION OF RAYMOND AND DIANE FARMER AND JOSHUA AND ANDREA FARMER, PURSUANT TO SECTION 1121(a) OF THE BANKRUPTCY CODE

## PREAMBLE

Raymond and Diane Farmer and Joshua and Andrea Farmer hereby submit this "First Amended Joint Plan of Reorganization of Raymond and Diane Farmer and Joshua and Andrea Farmer, Pursuant to Section 1121(a) of the Bankruptcy Code" pursuant to section 1121(a) under Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

## ARTICLE I

## DEFINITIONS

As used in this chapter 11 plan, the following terms shall have the respective meanings specified below:

1.1     Addison Townhomes. Refers to a fifty-four (54) unit apartment community located on Watson Road, Taylors, South Carolina.

1.2     Administrative Claim.  Any cost or expense of administration of these jointly administered Chapter 11 Cases (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Bar Date, or (b) Allowed under section 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently.  Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving the Estate incurred during the Chapter 11 Case, (ii) any actual and necessary expenses of operating the Debtors' business incurred during the Chapter 11 Case, (iii) any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of its business as a debtor in possession, or for the acquisition or lease of property by, or

for the rendition of services to, the Debtors as debtors in possession, (iv) obligations pursuant to executory contracts assumed by the Debtors pursuant to an order of the Bankruptcy Court, (v) all Claims as provided by section 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, (viii) all fees payable and unpaid under section 1930 of Title 28, United States Code, and (ix) any fees or charges assessed against the Estate under chapter 123 of Title 28, United States Code.

1.3     Administrative Claims Bar Date.  The date thirty (30) days after the Effective Date or such other date(s), if any, as determined by order of the Bankruptcy Court, by which all requests for allowance of Administrative Claims must be filed with the Bankruptcy Court.  The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals incurred after the Confirmation Date.

1.4     Alliance.  Refers to Alliance Laundry Systems, LLC.

1.5     Allowed Administrative Claim.  All or that portion of any Administrative Claim that is or has become an Allowed Claim.

1.6     Allowed Claim.  Any Claim against the Debtors (i) proof of which were filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against the Debtor individually or jointly or, if no proof of claim is filed, which has been or hereafter is listed by the Debtors in their Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim).  A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim.  The term "Allowed," when used to modify a reference in this Plan to any Claim or class of Claims, shall mean a Claim (or any Claim in any such class) that is allowed (e.g., an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estate securing such Claim), as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code.  Unless otherwise specified in this Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

1.7     Andrea Farmer.  Refers to Andrea G. Farmer, one of the Debtors in these Chapter 11 Cases.

1.8     Assumed Agreement.  Each of the Debtors' unexpired leases and other executory contracts that are being assumed pursuant to the Plan.

1.9     Audi.  Refers to Audi Financial Services.

1.10    Available Cash.  All cash of the Estate existing on or after the Effective Date pursuant to the provisions of the Plan, as well as all cash that subsequently becomes the property

of the Estate, including, without limitation, (i) cash in any accounts wherever located, (ii) cash recovered from any Person pursuant to an Avoidance Action, and (iii) cash proceeds realized from the sale, disposition, collection, or other realization of value (including interest earned thereon, if applicable) LESS (a) the cash or property contained in the Disputed Claims Reserve and any other similar reserve or escrow accounts established or maintained by the Estate after the Petition Date or pursuant to the provisions of this Plan, and (b) the amount determined by the Estate to be necessary and appropriate to reserve for future costs of administration of the Estate (including, without limitation, the compensation, fees, and costs of all professionals, consultants, agents and employees retained or to be retained by the Estate), including the costs of liquidating assets, investigating, analyzing, and pursuing causes of action against third parties pursuant to the terms of this Plan (including, without limitation, the Avoidance Actions), and reserving for potential indemnification obligations of the Estates.

1.11    Avoidance Action.  Any and all actions which a trustee, debtor-in-possession, or other appropriate party in interest may assert on behalf of the Estates under the Bankruptcy Code, including actions pursuant to sections 542, 543, 544, 545, 546, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code.

1.12    Avoidance Action Claims.  Claims asserted by parties pursuant to sections 502(d) and/or 502(h) of the Bankruptcy Code in connection with any Avoidance Action(s) brought by the Debtor against such parties.

1.13    Ballot.  The document used in voting on the Plan that must be executed and delivered by holders of Claims entitled to vote on the Plan.

1.14    Bankruptcy Administrator.  The United States Bankruptcy Administrator for the Bankruptcy Court.

1.15    Bankruptcy Code.  The Bankruptcy Reform Act of 1978, as amended, and memorialized in Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

1.16    Bankruptcy Court.  The United States Bankruptcy Court for the Western District of North Carolina, having jurisdiction over the Chapter 11 Case.

1.17    Bankruptcy Rules.  The Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to these Chapter 11 Cases.

1.18    Baytree.  Baytree Leasing Company, LLC.

1.19    BOA.  Refers to Bank of America, National Association.

1.20    Business Day.  Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of North Carolina are authorized or required by law to close.

1.21    Cash.  Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, and commercial paper.

1.22    Cash Collateral Order.  Refers to the Bankruptcy Court's Final Order Authorizing the Use of Cash Collateral Pursuant to Sections 361 and 363 of the Bankruptcy Code, which was entered in these Chapter 11 Cases on May 10, 2010, and subsequently amended on July 13, 2010.

1.23    Chapter 11 Cases.  The jointly administered bankruptcy cases of Raymond and Diane Famer (Case No. 10-40270) and Joshua and Andrea Farmer (Case No. 10-40269) under Chapter 11 of the Bankruptcy Code that are pending before the Bankruptcy Court, in which the Debtors are debtors and debtors in possession.

1.24    Claim.  Any right to payment from the Estates, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

1.25    Claims Bar Date.  The deadline set by the bankruptcy Court by which all proofs of claim must be filed in these Chapter 11 Cases.  The Claims Bar Date was August 19, 2010.

1.26    Class.  Means a classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

1.27    Confirmation Date.  The date upon which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

1.28    Confirmation Order.  An order of the Bankruptcy Court, in form and substance satisfactory to the Debtors, confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.29    Contingent Claim.  A Claim that is either contingent or unliquidated on or immediately before the Confirmation Date.

1.30    Creditor.  Any Person that holds a Claim against the Estate.

1.31    Creekside Apartments.  Refers to the Creekside at Wellington Apartments, which are owned by Joshua Farmer and Raymond Farmer.

1.32    Creekside Mini-Storage.  Refers to an eighty-one (81) unit mini-storage facility located on Overbrook Drive, Gaffney, South Carolina.

1.33    Debtors.  Collectively refers to Raymond Farmer, Diane Farmer, Joshua Farmer and Andrea Farmer.

1.34    Dewees Island House.  Refers to the real property and improvements located at 422 Pelican Flight Drive, Dewees Island, South Carolina.  Joshua Farmer and Andrea Farmer

own a 50% interest in the Dewees Island House as tenants in common with David and Jayne Caulder.

1.35   <u>Diane Farmer.</u>   Refers to Diane P. Farmer, one of the Debtors in these Chapter 11 Cases.

1.36   <u>Disclosure Statement</u>.   The disclosure statement filed with the Bankruptcy Court with respect to the Plan, pursuant to section 1125 of the Bankruptcy Code, either in its present form or as it may be altered, amended, or modified from time to time.

1.37   <u>Disputed Claim</u>.   A Claim which is the subject of a timely objection interposed by the Debtors, if at such time such objection remains unresolved; <u>provided</u>, <u>however</u>, that the Bankruptcy Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code; <u>provided</u>, <u>further</u>, that the Debtors, in their sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.

1.38   <u>Disputed Claims Reserve</u>.   The interest bearing reserve account(s) established by the Reorganized Debtors pursuant to Section 8.1 of this Plan from which all cash distributions under the Plan shall be made with respect to all Disputed Claims.

1.39   <u>Distribution Date</u>.   With respect to any Allowed Claim, each date on which a distribution is made with respect to such Allowed Claim, including the Effective Date, on which distributions of cash and other assets are to be made by the Estate.

1.40   <u>Distribution Reserve</u>.   The interest bearing reserve account(s) established by the Reorganized Debtors pursuant to Section 8.1 of this Plan from which all cash distributions under the Plan shall be made.

1.41   <u>East Ridge</u>.   Refers to the former East Ridge Apartments, LLC, a South Carolina limited liability company.

1.42   <u>East Ridge Apartments</u>.   Refers to the East Ridge Apartments, which are owned by Joshua Farmer and Raymond Farmer.

1.43   <u>Edwards Street Land</u>.   Refers to three (3) unimproved parcels on 9.34 acres across the street from 174 Edwards Street Extension, Rutherfordton, North Carolina.

1.44   <u>Effective Date</u>.   The Business Day on which all of the conditions set forth in Section 11.2 of this Plan shall have been satisfied or waived.

1.45   <u>EMC</u>.   Refers to EMC Mortgage Corporation.

1.46   <u>Estates</u>.   The bankruptcy estates of the Debtors, including all interests in property that the Debtors hold.  The property of the Estates shall be vested in the Reorganized Debtors upon the occurrence of the Effective Date of the Plan.

1.47    <u>Final Distribution</u>.  The distribution made to holders of Claims pursuant to the Plan which, after making such distribution, (i) results in a balance of $5,000.00 or less of the assets of the Estates, and (ii) the Reorganized Debtors determine to be the final distribution to be made to Claimants pursuant to the Plan.

1.48    <u>Final Distribution Date</u>.  The first Distribution Date to occur after all Disputed Claims and Avoidance Actions that are pursued and prosecuted by the Reorganized Debtor by have been resolved by Final Order.

1.49    <u>Final Order</u>.  An order which is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.50    <u>First South</u>.  Refers to First South Bank.

1.51    <u>FNBS</u>.  Refers to the First National Bank of the South.

1.52    <u>FNB</u>.  Refers to the First National Bank.

1.53    <u>Former Entities</u>.  Refers collectively to the following former entities: (i) East Ridge; (ii) Meadow Green; (iii) Wildewood; (iv) Groves; (v) Two Mile Properties; (vi) Georgetown; (vii) Timbercreek; and (viii) Gaffney.

1.54    <u>Gaffney</u>.  Refers to the former Gaffney Apartments, LLC, a South Carolina limited liability Company.

1.55    <u>Georgetown Village Apartments</u>.  Refers to the Georgetown Village Apartments, which are owned by Joshua Farmer and Raymond Farmer.

1.56    <u>Georgetown</u>.  Refers to the former Georgetown Village Apartments, LLC, a South Carolina limited liability company.

1.57    <u>General Unsecured Claim</u>.  Any Unsecured Claim, other than an Administrative Claim, an Other Priority Claim, or a Priority Tax Claim.  Allowed General Unsecured Claims include, without limitation, Allowed Unsecured Deficiency Claims, and any Claim in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim).

1.58    <u>Groves Apartments</u>.  Refers to the Groves Apartments, which are owned by Joshua Farmer and Raymond Farmer.

1.59    <u>Groves</u>.  Refers to the former Groves Apartments, LLC, a South Carolina limited liability company.

1.60    <u>GTV Investors</u>.  Refers to GTV Investors, LLC.

1.61    <u>Harbour Finance</u>.  Refers to Harbour Finance Limited, an entity organized and existing in the Cayman Islands.

1.62    Honeysuckle House.  Refers to the real property and improvements located at 305 Honeysuckle Drive, Rutherfordton, North Carolina.  Joshua Farmer and Andrea Farmer own a 50% interest in the Honeysuckle House in tenancy by the entirety.  Raymond Farmer and Diane Farmer own a 50% interest in the Honeysuckle House in tenancy by the entirety.

1.63    Honeysuckle Lot.  Refers to an unimproved lot consisting of approximately 1.14 acres, which is adjacent to the Honeysuckle House.  Joshua Farmer and Andrea Farmer own a 50% interest in the Honeysuckle Lot in tenancy by the entirety.  Raymond Farmer and Diane Farmer own a 50% interest in the Honeysuckle Lot in tenancy by the entirety.

1.64    Inland.  Refers to Inland Mortgage Capital Corporation.

1.65    John Deere.  Refers to John Deere Credit.

1.66    Joshua Farmer.  Refers to Joshua B. Farmer, one of the Debtors in these Chapter 11 Cases.

1.67    Keybank.  Refers to Keybank National Association.

1.68    Land Rover.  Refers to Land Rover Capital.

1.69    Magnolia Ridge Apartments.  Refers to the Magnolia Ridge Apartments, which are owned by Joshua Farmer and Raymond Farmer.

1.70    Mayse Road Houses.  Refers to fifteen (15) houses and real property located on Mayse Road, Forest City, North Carolina.

1.71    Meadow Green.  Refers to the former Meadow Green Apartments, LLC, a South Carolina limited liability company.

1.72    Meadow Green Apartments.  Refers to the Meadow Green Apartments, which are owned by Joshua Farmer and Raymond Farmer.

1.73    Miller.  Refers to Jim Miller, an individual.

1.74    Net Income.  Refers to the total earnings or profits of the Former Entities.  Net Income is calculated as the total revenues generated by one of the Former Entities, less the cost of all reasonable expenses, depreciation, interest, taxes, a capital expenditure reserve not to exceed $250/apartment unit per year, and other reasonable expenses related to one or more of the Properties.  Since these are individual Chapter 11 cases, it is intended that the term Net Income will be synonymous with the concept of projected disposable income as defined in section 1129(a)(15)(B) of the Bankruptcy Code.

1.75    Office and Warehouse.  Refers to the real property and improvements consisting of the Two Mile Office and Warehouse, which is commonly known as 174/220 Edwards Street Extension, Rutherfordton, North Carolina.

1.76    Other Priority Claims.  Any Claim to the extent entitled to priority in payment under sections 507(a)(3) through 507(a)(7) of the Bankruptcy Code.

1.77    Palmetto.  Refers to the Palmetto Bank.

1.78    Person.  An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government, governmental unit or any subdivision thereof or any other entity.

1.79    Petition Date.  April 5, 2010, the date of the commencement of these Chapter 11 Cases.

1.80    Plan.  This Joint Plan of Reorganization of Raymond and Diane Farmer and Joshua and Andrea Farmer Pursuant to Section 1121(a) of the Bankruptcy Code

1.81    Priority Tax Claim.  Any Claim arising prior to the Petition Date entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.82    ProBuild.  Refers to ProBuild East, LLC.

1.83    Pro Rata Share.  As of any certain date, with respect to any Allowed Claim in any Class, the proportionate share that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

1.84    Professional.  Any attorney, accountant, appraiser, auctioneer, or other professional person retained and employed by the Estate in these Chapter 11 Cases in accordance with sections 327 and/or 328 of the Bankruptcy Code.

1.85    Properties.  Refers to the apartment complexes, real property, and other rental properties that were owned by the Former Entities.

1.86    Raymond Farmer.  Refers to Raymond B. Farmer, one of the Debtors in these Chapter 11 Cases.

1.87    Rejected Agreement.  Each unexpired lease or other executory contract of the Debtors which (i) is not an Assumed Agreement, (ii) has not been expressly assumed or rejected by order of the Bankruptcy Court prior to the Confirmation Date, or (iii) is not the subject of a pending motion to assume on the Effective Date.

1.88    Reorganized Debtors.  The Debtors, as reorganized, and re-vested with all of the assets of the Estates pursuant to this Plan.

1.89    Reynolds.  Refers to Jeff Reynolds, an individual.

1.87    SARE Order.   Refers to the Order Resolving Motion of the Palmetto Bank for a Determination that the Debtors are Subject to Various Provisions of the Bankruptcy Code Relating to Single Asset Real Estate and those Applicable to Corporate Entities, entered by the Bankruptcy Court on May 28, 2010.

1.90    Schedules.  The Schedules of Assets and Liabilities, and any amendments thereto, filed by the Debtors with the Bankruptcy Court in accordance with section 521(l) of the Bankruptcy Code.

1.91    Secured Claim.  A Claim to the extent of the value, of any interest in property of the Estates securing such Claim, as determined pursuant to section 506(a) or 1111(b) of the Bankruptcy Code.  To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.92    SLS.  Refers to Specialized Loan Servicing, LLC.

1.93    Taxes.  All income, franchise, excise, sales, use, employment, withholding, property, payroll, and other taxes, assessments, and governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local, or foreign governmental authority.

1.94    Timbercreek.  Refers to the former Timbercreek Apartments, LLC, a South Carolina limited liability company.

1.95    Timbercreek Apartments.  Refers to the Timbercreek Apartments, which are owned by Joshua Farmer and Raymond Farmer.

1.96    Tomblin.  Refers to Janet Tomblin.

1.97    Toyota Finance.  Refers to Southeastern Toyota Finance.

1.98    Two Mile.  Refers to Two Mile Properties, which is the trade name for the management entity that has provided management services to the Properties.  Two Mile is owned by Raymond Farmer and Joshua Farmer, and is operated as a general partnership.  The Debtors were authorized to establish Two Mile pursuant to the Cash Collateral Order.

1.99    Two Mile Properties.  Refers to the former Two Mile Properties, LLC, a North Carolina limited liability company.

1.100   Unsecured Claim.  A Claim not secured by a charge against or interest in property in which the Estates have an interest, including any Unsecured Deficiency Claim, and any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

1.101   Unsecured Deficiency Claim.  A Claim by a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of such Creditor's interest in property of the Estates securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by section 506(a) of the Bankruptcy Code.

1.102   <u>Voting Deadline</u>.  The date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting the Plan.

1.103   <u>Wachovia</u>.  Refers to Wachovia Bank, N. A.

1.104   <u>Wells Fargo</u>.  Refers to Wells Fargo Financial Leasing.

1.105   <u>Wildewood</u>.  Refers to the former Wildewood Apartments of Spartanburg, LLC, a South Carolina limited liability company.

1.106   <u>Wildewood Apartments</u>.  Refers to the Wildewood Apartments, which are owned by Joshua Farmer and Raymond Farmer.

1.107   <u>Winchester Drive Houses</u>.  Refers to five (5) houses and real property located on Winchester Drive, Ellenboro, North Carolina.

1.108   <u>234 Edwards Street Home</u>.  Refers to that certain real property and improvements located at 234 Edwards Street Extension, Rutherfordton, North Carolina.

1.109   <u>Other Definitions</u>.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein.  Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.  The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan.  The word "including" shall mean "including without limitation."

## ARTICLE 2

### PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE CLAIMS; ADMINISTRATIVE CLAIMS BAR DATE; PROVISIONS FOR PAYMENT OF ALLOWED PRIORITY TAX CLAIMS

2.1   <u>Administrative Claims and Priority Tax Claims are Not Classified in this Plan</u>. The treatment of and consideration to be received by holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article 2 of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims.  The Debtor's obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

2.2   <u>Administrative Claims Bar Date</u>.  Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, <u>including</u> all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Confirmation Date, must be filed and served on the Debtors and the Bankruptcy Administrator no later than thirty (30) days after the Effective Date.  Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such

request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof.  The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals incurred after the Confirmation Date.

2.3     Treatment of Administrative Claims.  Allowed Administrative Claims are not impaired by the Plan.  Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due.

2.4     Treatment of Priority Tax Claims.  Allowed Priority Tax Claims are not impaired by the Plan.  Each holder of an Allowed Priority Tax Claim, shall be paid the Allowed Amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtor; or (c) in Cash payments commencing within ninety (90) days after the Effective Date, in equal quarterly installments within five (5) years from the Petition Date, and in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section l129(a)(9)(C) of the Bankruptcy Code.

2.5     Treatment of Allowed Other Priority Claims.   Allowed Other Priority Claims are not impaired by the Plan.  Except to the extent the holder of an Allowed Other Priority Claim agrees otherwise, each holder of an Allowed Other Priority Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Other Priority Claim) as soon as practicable after the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Claim.  Allowed Other Priority Claims are not impaired by the Plan and, as such, holders of Allowed Other Priority Claims are: (a) not entitled to vote for/against the Plan, and (b) deemed to have accepted the Plan.

## ARTICLE 3

## DESIGNATION OF AND PROVISIONS
## FOR TREATMENT OF CLAIMS

A Claim is included in a particular class or designation only to the extent that such Claim qualifies within the description of that class or designation, and is in a different class or designation to the extent that the remainder of such Claim qualifies within the description of such different class or designation.  The Claims against the Debtors and the Former Entities are designated, and shall be treated, as follows:

**3.1**   *Joshua Farmer and Andrea Farmer*

*Class 1: Secured Tax Claims of Rutherford County*

*Classification*

Class 1 consists of the Allowed Secured Claim of Rutherford County.

*Treatment*

The holder of the Allowed Class 1 Claim shall be paid its Allowed Secured Tax Claim, at the option of Joshua Farmer and Andrea Farmer: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of the Allowed Class 1 Claim and Joshua and Andrea Farmer; or (c) in annual Cash payments commencing twelve (12) months after the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim as required by Section 1129(a)(9)(D) of the Bankruptcy Code, within five (5) years of the Petition Date. The holder of the Allowed Class 1 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date.

*Impairment and Voting*

Class 1 is impaired by the Plan. The holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

*Class 2: EMC Secured Claim (234 Edwards Street Home)*

*Classification*

Class 2 consists of the Allowed Secured Claim of EMC. Prior to the Petition Date, EMC asserted a first position deed of trust encumbering the 234 Edwards Street Home.

*Treatment*

These obligations shall be treated as secured obligations of Joshua Farmer and Andrea Farmer. Payments on account of the Allowed EMC secured claims shall begin within ninety (90) days of the Effective Date and shall be paid: (i) monthly at the nondefault contract rate of interest, on the terms set forth in the applicable loan documents, or (ii) as otherwise agreed upon by the Debtors and EMC. All arrearages in respect of the Allowed EMC secured claim shall be paid: (i) monthly over a period of five (5) years until all arrearages are paid in full, or (ii) as otherwise agreed upon by the Debtors and EMC. EMC shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 2 is impaired by the Plan.  The holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

### Class 3: EMC Secured Claim (234 Edwards Street Home)

### Classification

Class 3 consists of the Allowed Secured Claim of EMC.  Prior to the Petition Date, EMC asserted a second position deed of trust encumbering the 234 Edwards Street Home.

### Treatment

These obligations shall be treated as secured obligations of Joshua Farmer and Andrea Farmer up to the value of the collateral securing the claims, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code either at the Confirmation Hearing or earlier upon motion of the Debtors, or (ii) as otherwise agreed upon by the Debtors and EMC.  In the event the Bankruptcy Court determines this claim is undersecured, payments on account of the EMC secured claims shall begin within ninety (90) days of the Effective Date and shall be paid: (i) monthly with interest at a fixed rate of 4.70% per annum, amortized over thirty (30) years, with no prepayment penalties, or (ii) as otherwise agreed upon by the Debtors and EMC.  EMC shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.  In the event the Bankruptcy Court determines this claim is totally unsecured, then the lien shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule, provided however, that the Debtors reserve the right to seek an Order from the Bankruptcy Court directing the register of deeds to cancel the lien.

### Impairment and Voting

Class 3 is impaired by the Plan.  The holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

### Class 4: Tomblin Secured Claim (Honeysuckle House)

### Classification

Class 4 consists of the Allowed Secured Claim of Tomblin.  Prior to the Petition Date, Tomblin asserted a deed of trust encumbering the interests of Joshua Farmer and Andrea Farmer in the Honeysuckle House.

### Treatment

This obligation shall be treated as a secured obligation of Joshua Farmer and Andrea Farmer up to the value of the collateral securing the claim, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code either at the Confirmation Hearing or earlier upon motion of the Debtors, or (ii) as otherwise agreed upon by the Debtors and Tomblin. Payments on account of the Tomblin secured claim shall begin within ninety (90) days of the Effective Date and shall be made monthly by Joshua Farmer and Andrea Farmer, at the non-default contract rate of interest, amortized over a period of twenty-five (25) years. Tomblin shall retain her lien with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until her claims are paid as set forth herein.

### Impairment and Voting

Class 4 is impaired by the Plan. The holders of Class 4 Claims are entitled to vote to accept or reject the Plan

### Class 5: Wachovia Secured Claim (Honeysuckle Lot)

### Classification

Class 5 consists of the Allowed Secured Claim of Wachovia. Prior to the Petition Date, Wachovia asserted a first position deed of trust encumbering the Honeysuckle Lot.

### Treatment

This obligation shall be treated as a secured obligation of Joshua Farmer and Andrea Farmer up to the value of the collateral securing the claim, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code either at the Confirmation Hearing or earlier upon motion of the Debtors, or (ii) as otherwise agreed upon by the Debtors and Wachovia. Payments on account of the Wachovia secured claims shall begin within ninety (90) days of the Effective Date and shall be paid monthly with interest at a fixed rate of 4.70% per annum, amortized over thirty (30) years, with no prepayment penalties. Wachovia shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 5 is impaired by the Plan. The holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

### Class 6: BOA Secured Claim (Dewees Island House)

### Classification

Class 6 consists of the Allowed Secured Claim of BOA. Prior to the Petition Date, BOA asserted a first position mortgage and a second position mortgage encumbering the Dewees Island House.

### Treatment

This obligation shall be treated as a secured obligation of Joshua Farmer and Andrea Farmer up to the value of the collateral securing the claim, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code either at the Confirmation Hearing or earlier upon motion of the Debtors, or (ii) as otherwise agreed upon by the Debtors and BOA. Payments on account of the Allowed BOA secured claim shall begin within ninety (90) days of the Effective Date and shall be paid monthly with interest at a fixed rate of 4.70% per annum, amortized over thirty (30) years, with no prepayment penalties. Codebtors will continue to make debt service payments. BOA shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 6 is impaired by the Plan. The holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

### Class 7: Audi Secured Claim (2006 Audi A8L)

### Classification

Class 7 consists of the Allowed Secured Claim of Audi. Prior to the Petition Date, Audi held a purchase money security interest in a 2006 Audi A8L.

### Treatment

This obligation shall be treated as a secured obligation of Joshua Farmer, Andrea Farmer and Raymond Farmer in the amount of $22,450.00. Payments on account of the Audi secured claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of the Reorganized Debtors, as follows: (i) with interest payments of 5.25% per annum, amortized over a period of seventy-two (72) months, or (ii) on such other terms as may be agreed upon by the Debtors and Audi. Audi shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 7 is impaired by the Plan. The holders of Class 7 Claims are entitled to vote to accept or reject the Plan.

***Class 8: Joshua Farmer and Andrea Farmer General Unsecured Claims***

***Classification***

Class 8 consists of all Allowed General Unsecured Claims of creditors of Joshua Farmer and Andrea Farmer.

***Treatment***

Class 8 Claims shall be paid their Pro Rata Share of an amount equal to the value of each Debtor's projected disposable income for a period of five (5) years as defined in section 1129(a)(15)(B) of the Bankruptcy Code.  Class 8 Claims will be paid from the Distribution Reserve on a pro rata basis in annual installments with the first payment to be made within one year of the Effective Date.  The Debtors reserve the right to satisfy their obligations under this paragraph in less than five (5) years.

***Impairment and Voting***

Class 8 is impaired by the Plan.  The holders of Class 8 Claims are entitled to vote to accept or reject the Plan.

### 3.3     *Raymond Farmer and Diane Farmer*

***Class 9: Secured Tax Claims of Rutherford County, North Carolina***

***Classification***

Class 9 consists of the Allowed Secured Claims of Rutherford County, North Carolina.

***Treatment***

The holder of the Allowed Class 9 Claim shall be paid its Allowed Secured Tax Claim, at the option of Raymond Farmer and Diane Farmer: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of the Allowed Class 9 Claim and Raymond Farmer and Diane Farmer; or (c) in annual Cash payments commencing twelve (12) months after the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim as required by Section 1129(a)(9)(D) of the Bankruptcy Code, within five (5) years of the Petition Date. The holder of the Allowed Class 9 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date.

***Impairment and Voting***

Class 9 is impaired by the Plan.  The holders of Class 9 Claims are entitled to vote to accept or reject the Plan

### Class 10: EMC Secured Claim (Honeysuckle House)

#### Classification

Class 10 consists of the Allowed Secured Claim of EMC.  Prior to the Petition Date, EMC asserted a first position deed of trust encumbering Raymond Farmer's and Diane Farmer's interests in the Honeysuckle House.

#### Treatment

These obligations shall be treated as secured obligations of Raymond Farmer and Diane Farmer.  Payments on account of the Allowed EMC secured claims shall begin within ninety (90) days of the Effective Date and shall be paid: (i) monthly at the nondefault contract rate of interest, on the terms set forth in the applicable loan documents, or (ii) as otherwise agreed upon by the Debtors and EMC.  All arrearages in respect of the Allowed EMC secured claim shall be paid: (i) monthly over a period of five (5) years until all arrearages are paid in full, or (ii) as otherwise agreed upon by the Debtors and EMC.  EMC shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

#### Impairment and Voting

Class 10 is impaired by the Plan.  The holders of Class 10 Claims are entitled to vote to accept or reject the Plan.

### Class 11: SLS Secured Claim (Honeysuckle House)

#### Classification

Class 11 consists of the Allowed Secured Claim of SLS.  Prior to the Petition Date, SLS asserted a second position deed of trust encumbering Raymond Farmer's and Diane Farmer's interests in the Honeysuckle House.

#### Treatment

These obligations shall be treated as secured obligations of Raymond Farmer and Diane Farmer up to the value of the collateral securing the claims, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code either at the Confirmation Hearing or earlier upon motion of the Debtors, or (ii) as otherwise agreed upon by the Debtors and EMC.  In the event the Bankruptcy Court determines this claim is undersecured, payments on account of the EMC secured claims shall begin within ninety (90) days of the Effective Date and shall be paid: (i) monthly with interest at a fixed rate of 4.70% per annum, amortized over thirty (30) years, with no prepayment penalties, or (ii) as otherwise agreed upon by the Debtors and EMC.  EMC

shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.  In the event the Bankruptcy Court determines this claim is totally unsecured, then the lien shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule, provided however, that the Debtors reserve the right to seek an Order from the Bankruptcy Court directing the register of deeds to cancel the lien.

### Impairment and Voting

Class 11 is impaired by the Plan.  The holders of Class 11 Claims are entitled to vote to accept or reject the Plan.

### Class 12: Tomblin Secured Claim (Honeysuckle House).

### Classification

Class 12 consists of the Allowed Secured Claim of Tomblin.  Tomblin has a third position deed of trust encumbering the interests of Raymond Farmer and Diane Farmer in the Honeysuckle House.

### Treatment

This obligation shall be treated as secured obligations of Raymond Farmer and Diane Farmer up to the value of the collateral securing the claims, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code either at the Confirmation Hearing or earlier upon motion of the Debtors, or (ii) as otherwise agreed upon by the Debtors and Tomblin.  In the event the Bankruptcy Court determines this claim is undersecured, payments on account of the Tomblin secured claims shall begin within ninety (90) days of the Effective Date and shall be paid: (i) monthly with interest at a fixed rate of 4.70% per annum, amortized over thirty (30) years, with no prepayment penalties, or (ii) as otherwise agreed upon by the Debtors and Tomblin.  Tomblin shall retain her liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.  In the event the Bankruptcy Court determines this claim is totally unsecured, then the lien shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule, provided however, that the Debtors reserve the right to seek an Order from the Bankruptcy Court directing the register of deeds to cancel the lien

### Impairment and Voting

Class 12 is impaired by the Plan.  The holders of Class 12 Claims are entitled to vote to accept or reject the Plan.

### Class 13: Wachovia Secured Claim (Honeysuckle Lot)

#### Classification

Class 13 consists of the Allowed Secured Claim of Wachovia.  Prior to the Petition Date, Wachovia held a first position deed of trust encumbering the Honeysuckle Lot.

#### Treatment

This obligation shall be treated as a secured obligation of Raymond Farmer and Diane Farmer up to the value of the collateral securing the claim, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code either at the Confirmation Hearing or earlier upon motion of the Debtors, or (ii) as otherwise agreed upon by the Debtors and Wachovia.  Payments on account of the Wachovia secured claims shall begin within ninety (90) days of the Effective Date and shall be paid monthly with interest at a fixed rate of 4.70% per annum, amortized over thirty (30) years, with no prepayment penalties.  Wachovia shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

#### Impairment and Voting

Class 13 is impaired by the Plan.  The holders of Class 13 Claims are entitled to vote to accept or reject the Plan.

### Class 14: Raymond Farmer and Diane Farmer General Unsecured Claims

#### Classification

Class 14 consists of all Allowed General Unsecured Claims of creditors of Raymond Farmer and Diane Farmer.

#### Treatment

Class 14 Claims shall be paid their Pro Rata Share of an amount equal to the value of each Debtor's projected disposable income for a period of five (5) years as defined in section 1129(a)(15)(B) of the Bankruptcy Code.  Class 14 Claims will be paid from the Distribution Reserve on a pro rata basis in annual installments with the first payment to be made within one year of the Effective Date.  The Debtors reserve the right to satisfy their obligations under this paragraph in less than five (5) years.

#### Impairment and Voting

Class 14 is impaired by the Plan.  The holders of Class 14 Claims are entitled to vote to accept or reject the Plan

### 3.4     *Wildewood*

### *Class 15: Secured Tax Claims of Spartanburg County, South Carolina*

### *Classification*

Class 15 consists of the Allowed Secured Tax Claims of Spartanburg County, South Carolina.

### *Treatment*

The holder of the Allowed Class 15 Claim shall be paid its Allowed Secured Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of the Allowed Class 15 Claim and the Reorganized Debtors, or (c) in annual Cash payments commencing twelve (12) months after the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim as required by Section 1129(a)(9)(D) of the Bankruptcy Code, within five (5) years of the Petition Date. The holder of the Allowed Class 15 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date.

### *Impairment and Voting*

Class 15 is impaired by the Plan.  The holders of Class 15 Claims are entitled to vote to accept or reject the Plan.

### *Class 16: Palmetto Secured Claim*

### *Classification*

Class 16 consists of the Allowed Secured Claim of Palmetto.  Prior to the Petition Date, Palmetto asserted a first position mortgage encumbering the Wildewood Apartments.

### *Treatment*

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer up to the value of the collateral securing the claim, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code at a valuation hearing, or (ii) as otherwise agreed upon by the Debtors and Palmetto. Payments on account of the Allowed Palmetto Secured Claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of Wildewood Apartments, at the fixed rate of interest of five percent (5%), for a period of one year.  Thereafter, payments shall be made monthly at the fixed rate of interest of 5%, amortized over a period of 30 years. The restructured loan will mature five (5) years from the Effective Date of the Plan with no prepayment penalties.  Palmetto

shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### *Impairment and Voting*

Class 16 is impaired by the Plan. The holders of Class 16 Claims are entitled to vote to accept or reject the Plan.

### *Class 17: Harbour Finance Secured Claim*

### *Classification*

Class 17 consists of the Allowed Secured Claim of Harbour Finance. Harbour Finance has a second position mortgage encumbering Wildewood Apartments.

### *Treatment*

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer up to the value of the collateral securing the claims, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code either at the Confirmation Hearing or earlier upon motion of the Debtors, or (ii) as otherwise agreed upon by the Debtors and Harbour Finance. In the event the Bankruptcy Court determines this claim is undersecured, payments on account of the Allowed Harbour Finance secured claims shall begin within ninety (90) days of the Effective Date and shall be paid: (i) monthly with interest at a fixed rate of five percent (5%) per annum, amortized over thirty (30) years, with no prepayment penalties, or (ii) as otherwise agreed upon by the Debtors and Harbour Finance. Harbour Finance shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein. In the event the Bankruptcy Court determines this claim is totally unsecured, then the lien shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule. The Debtors reserve the right to seek an Order from the Bankruptcy Court directing the applicable register of deeds to cancel the lien of record.

### *Impairment and Voting*

Class 17 is impaired by the Plan. The holders of Class 17 Claims are entitled to vote to accept or reject the Plan.

### *Class 18: Wildewood General Unsecured Claims*

### *Classification*

Class 18 consists of all Allowed General Unsecured Claims of creditors of Wildewood.

***Treatment***

Class 18 Claims shall be paid their Pro Rata Share of an amount equal to the Net Income from the business and operations of the Wildewood Apartments for a period of five (5) years.  Class 18 Claims will be paid from the Distribution Reserve on a pro rata basis in annual installments with the first payment to be made within one year of the Effective Date.  The Debtors reserve the right to satisfy their obligations under this paragraph in less than five (5) years.

***Impairment and Voting***

Class 18 is impaired by the Plan.  The holders of Class 18 Claims are entitled to vote to accept or reject the Plan.

**3.5     *Meadow Green***

***Class 19: Secured Tax Claims of Spartanburg County, South Carolina***

***Classification***

Class 19 consists of the Allowed Secured Tax Claims of Spartanburg County, South Carolina.

***Treatment***

The holder of the Allowed Class 19 Claim shall be paid its Allowed Secured Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of the Allowed Class 19 Claim and the Reorganized Debtors, or (c) in annual Cash payments commencing twelve (12) months after the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim as required by Section 1129(a)(9)(D) of the Bankruptcy Code, within five (5) years of the Petition Date. The holder of the Allowed Class 19 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date.

***Impairment and Voting***

Class 19 is impaired by the Plan.  The holders of Class 19 Claims are entitled to vote to accept or reject the Plan.

### Class 20: Palmetto Secured Claim

### Classification

Class 20 consists of the Allowed Secured Claim of Palmetto.  Prior to the Petition Date, Palmetto asserted a first position mortgage encumbering the Meadow Green Apartments.

### Treatment

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer up to the value of the collateral securing the claim, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code at a valuation hearing, or (ii) as otherwise agreed upon by the Debtors and Palmetto. Payments on account of the Allowed Palmetto Secured Claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of Meadow Green Apartments, at the fixed rate of interest of five percent (5%), for a period of six (6) months.  Thereafter, payments shall be made monthly at the fixed rate of interest of five percent (5%), amortized over a period of thirty (30) years. The restructured loan will mature five (5) years from the Effective Date of the Plan with no prepayment penalties.  Palmetto shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 20 is impaired by the Plan.  The holders of Class 20 Claims are entitled to vote to accept or reject the Plan.

### Class 21: Reynolds Secured Claim

### Classification

Class 21 consists of the Allowed Secured Claim of Reynolds.  Prior to the Petition Date, Reynolds asserted a second position mortgage encumbering the Meadow Green Apartments

### Treatment

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer up to the value of the collateral securing the claims, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code either at the Confirmation Hearing or earlier upon motion of the Debtors, or (ii) as otherwise agreed upon by the Debtors and Reynolds.  In the event the Bankruptcy Court determines this claim is undersecured, payments on account of the Allowed Reynolds secured claim shall begin within ninety (90) days of the Effective Date and shall be paid: (i) monthly with interest at a fixed rate of five percent (5%) per annum, amortized over

thirty (30) years, with no prepayment penalties, or (ii) as otherwise agreed upon by the Debtors and Reynolds.  Reynolds shall retain his liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.  <u>In the event the Bankruptcy Court determines this claim is totally unsecured</u>, then the lien shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule, provided however, that the Debtors reserve the right to seek an Order from the Bankruptcy Court directing the register of deeds to cancel the lien.

### Impairment and Voting

Class 21 is impaired by the Plan.  The holders of Class 21 Claims are entitled to vote to accept or reject the Plan.

### Class 22: Meadow Green General Unsecured Claims

### Classification

Class 22 consists of all Allowed General Unsecured Claims of creditors of Meadow Green.

### Treatment

Class 22 Claims shall be paid their Pro Rata Share of an amount equal to the Net Income from the business and operations of the Meadow Green Apartments for a period of five (5) years.  Class 22 Claims will be paid from the Distribution Reserve on a pro rata basis in annual installments with the first payment to be made within one year of the Effective Date.  The Debtors reserve the right to satisfy their obligations under this paragraph in less than five (5) years.

### Impairment and Voting

Class 22 is impaired by the Plan.  The holders of Class 22 Claims are entitled to vote to accept or reject the Plan.

### 3.6     East Ridge

### Class 23: Secured Tax Claims of Spartanburg County, South Carolina

### Classification

Class 23 consists of the Allowed Secured Tax Claims of Spartanburg County, South Carolina.

*Treatment*

The holder of the Allowed Class 23 Claim shall be paid its Allowed Secured Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of the Allowed Class 23 Claim and the Reorganized Debtors, or (c) in annual Cash payments commencing twelve (12) months after the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim as required by Section 1129(a)(9)(D) of the Bankruptcy Code, within five (5) years of the Petition Date. The holder of the Allowed Class 23 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date.

*Impairment and Voting*

Class 23 is impaired by the Plan. The holders of Class 23 Claims are entitled to vote to accept or reject the Plan.

### Class 24: Palmetto Secured Claim

*Classification*

Class 24 consists of the Allowed Secured Claim of Palmetto. Prior to the Petition Date, Palmetto asserted a first position mortgage encumbering the East Ridge Apartments.

*Treatment*

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer up to the value of the collateral securing the claim, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code at a valuation hearing, or (ii) as otherwise agreed upon by the Debtors and Palmetto. Payments on account of the Allowed Palmetto Secured Claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of East Ridge Apartments, at the fixed rate of interest of five percent (5%), for a period of six (6) months. Thereafter, payments shall be made monthly at the fixed rate of interest of five percent (5%), amortized over a period of thirty (30) years. The restructured loan will mature five (5) years from the Effective Date of the Plan with no prepayment penalties. Palmetto shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

*Impairment and Voting*

Class 24 is impaired by the Plan. The holders of Class 24 Claims are entitled to vote to accept or reject the Plan.

### Class 25: Harbour Finance Secured Claim

#### Classification

Class 25 consists of the Allowed Secured Claim of Harbour Finance.  Prior to the Petition Date, Harbour Finance had a second position mortgage encumbering the East Ridge Apartments

#### Treatment

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer up to the value of the collateral securing the claims, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code either at the Confirmation Hearing or earlier upon motion of the Debtors, or (ii) as otherwise agreed upon by the Debtors and Harbour Finance.  <u>In the event the Bankruptcy Court determines this claim is undersecured</u>, payments on account of the Allowed Harbour Finance secured claims shall begin within ninety (90) days of the Effective Date and shall be paid: (i) monthly with interest at a fixed rate of five percent (5%) per annum, amortized over thirty (30) years, with no prepayment penalties, or (ii) as otherwise agreed upon by the Debtors and Harbour Finance.  Harbour Finance shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.  <u>In the event the Bankruptcy Court determines this claim is totally unsecured</u>, then the lien shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule, provided however, that the Debtors reserve the right to seek an Order from the Bankruptcy Court directing the register of deeds to cancel the lien.

#### Impairment and Voting

Class 25 is impaired by the Plan.  The holders of Class 25 Claims are entitled to vote to accept or reject the Plan.

### Class 26: ProBuild Secured Claim

#### Classification

Class 26 consists of the ProBuild Secured Claim.

#### Treatment

ProBuild filed a mechanic's lien against the East Ridge Apartments but failed to timely perfect its lien.  Since ProBuild failed to perfect its lien, the lien shall be canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule, provided however, that the Debtors

reserve the right to seek an Order from the Bankruptcy Court directing the applicable register of deeds to cancel the lien of record.

### Impairment and Voting

Class 26 is impaired by the Plan. The holders of Class 26 Claims are entitled to vote to accept or reject the Plan.

### Class 27: East Ridge General Unsecured Claims

### Classification

Class 27 consists of all Allowed General Unsecured Claims of creditors of East Ridge.

### Treatment

Class 27 Claims shall be paid their Pro Rata Share of an amount equal to the Net Income from the business and operations of the East Ridge Apartments for a period of five (5) years. Class 27 Claims will be paid from the Distribution Reserve on a pro rata basis in annual installments with the first payment to be made within one year of the Effective Date. The Debtors reserve the right to satisfy their obligations under this paragraph in less than five (5) years.

### Impairment and Voting

Class 27 is impaired by the Plan. The holders of Class 27 Claims are entitled to vote to accept or reject the Plan.

### 3.7    Timbercreek

### Class 28: Secured Tax Claims of Spartanburg County, South Carolina

### Classification

Class 28 consists of the Allowed Secured Tax Claims of Spartanburg County, South Carolina.

### Treatment

The holder of the Allowed Class 28 Claim shall be paid its Allowed Secured Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of the Allowed Class 28 Claim and the Reorganized Debtors, or (c) in annual Cash payments commencing twelve (12) months after the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim as required by Section 1129(a)(9)(D) of the Bankruptcy Code, within five (5) years of the Petition Date. The

holder of the Allowed Class 28 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date.

### Impairment and Voting

Class 28 is impaired by the Plan. The holders of Class 28 Claims are entitled to vote to accept or reject the Plan.

### Class 29: Keybank Secured Claim

### Classification

Class 29 consists of the Allowed Secured Claim of Keybank.

### Treatment

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer up to the value of the collateral securing the claim, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code at a valuation hearing, or (ii) as otherwise agreed upon by the Debtors and Keybank. Payments on account of the Allowed Keybank Secured Claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of the Timbercreek Apartments, at the fixed rate of interest of five percent (5%), for a period of six (6) months. Thereafter, payments shall be made monthly at the fixed rate of interest of five percent (5%), amortized over a period of twenty-five (25) years. The restructured loan will mature five (5) years from the Effective Date of the Plan with no prepayment penalties. Keybank shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 29 is impaired by the Plan. The holders of Class 29 Claims are entitled to vote to accept or reject the Plan.

### Class 30: Wachovia Secured Claim

### Classification

Class 30 consists of the Allowed Secured Claim of Wachovia.

### Treatment

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer up to the value of the collateral securing the claims, in amounts: (i) to be

determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code
either at the Confirmation Hearing or earlier upon motion of the Debtors, or (ii) as
otherwise agreed upon by the Debtors and Wachovia.  In the event the Bankruptcy Court
determines this claim is undersecured, payments on account of the Allowed Wachovia
secured claims shall begin within ninety (90) days of the Effective Date and shall be paid:
(i) monthly with interest at a fixed rate of five percent (5%) per annum, amortized over
thirty (30) years, with no prepayment penalties, or (ii) as otherwise agreed upon by the
Debtors and Wachovia.  Wachovia shall retain its liens with the priority thereof, as they
existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code,
until their claims are paid as set forth herein.  In the event the Bankruptcy Court
determines this claim is totally unsecured, then the lien shall be deemed automatically
canceled, terminated and of no further force or effect without further act or action under
any applicable agreement, law, regulation, order, or rule, provided however, that the
Debtors reserve the right to seek an Order from the Bankruptcy Court directing the
register of deeds to cancel the lien.

### Impairment and Voting

Class 30 is impaired by the Plan.  The holders of Class 30 Claims are entitled to vote to
accept or reject the Plan.

### Class 31: Timbercreek General Unsecured Claims

### Classification

Class 31 consists of all Allowed General Unsecured Claims of creditors of Timbercreek.

### Treatment

Class 31 Claims shall be paid their Pro Rata Share of an amount equal to the Net Income
from the business and operations of the Timbercreek Apartments for a period of five (5)
years.  Class 31 Claims will be paid from the Distribution Reserve on a pro rata basis in
annual installments with the first payment to be made within one year of the Effective
Date.  The Debtors reserve the right to satisfy their obligations under this paragraph in
less than five (5) years.

### Impairment and Voting

Class 31 is impaired by the Plan.  The holders of Class 31 Claims are entitled to vote to
accept or reject the Plan.

### 3.8    *Groves*

***Class 32: Secured Tax Claims of Aiken County, South Carolina***

*Classification*

Class 32 consists of the Allowed Secured Tax Claims of Aiken County, South Carolina.

*Treatment*

The holder of the Allowed Class 32 Claim shall be paid its Allowed Secured Tax Claim, at the option of the Reorganized Individual Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter from accrued cash collateral generated by the Groves Apartments; (b) upon such other terms as may be mutually agreed upon between such holder of the Allowed Class 32 Claim and Joshua Farmer and Raymond Farmer; or (c) in annual Cash payments commencing twelve (12) months after the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim as required by Section 1129(a)(9)(D) of the Bankruptcy Code, within five (5) years of the Petition Date. The holder of the Allowed Class 32 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date.

*Impairment and Voting*

Class 32 is impaired by the Plan.  The holders of Class 32 Claims are entitled to vote to accept or reject the Plan.

***Class 33: Secured Tax Claims of City of North Augusta, South Carolina***

*Classification*

Class 33 consists of the Allowed Secured Tax Claims of the City of North Augusta, South Carolina.

*Treatment*

The holder of the Allowed Class 33 Claim shall be paid its Allowed Secured Tax Claim, at the option of the Reorganized Individual Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter from accrued cash collateral generated by the Groves Apartments; (b) upon such other terms as may be mutually agreed upon between such holder of the Allowed Class 33 Claim and Joshua Farmer and Raymond Farmer; or (c) in annual Cash payments commencing twelve (12) months after the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim as required by Section 1129(a)(9)(D) of the Bankruptcy Code, within five (5) years of the Petition Date. The holder of the Allowed Class 33 Claim shall retain its existing liens, privileges and

encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date.

### Impairment and Voting

Class 33 is impaired by the Plan. The holders of Class 33 Claims are entitled to vote to accept or reject the Plan.

### Class 34: Inland Secured Claim

### Classification

Class 34 consists of the Allowed Secured Claim of Inland. Prior to the Petition Date, Inland had a validly perfected, first priority lien on the Groves Apartments and the leases, rents, profits and proceeds related to the Groves Apartments.

### Treatment

The Debtors and Inland have stipulated that Inland shall have an Allowed Secured Claim in the amount of $3,774,559.37. Joshua Farmer and Raymond Farmer will sell the Groves Apartments free and clear of liens, claims and interests pursuant to sections 363 and 1129(b)(2)(A)(iii) of the Bankruptcy Code, at an auction to be conducted immediately after the Confirmation Hearing. The sale will be closed in connection with the Plan becoming effective. Inland shall have the right to submit a credit bid in connection with the sale pursuant to section 363(k) of the Bankruptcy Code. The Debtors and Inland have agreed that Inland will waive any claim to an Unsecured Deficiency Claim or any pro rata distribution of the Debtors' projected disposable income as such term is defined under section 1129(a)(15) of the Bankruptcy Code.

### Impairment and Voting

Class 34 is impaired by the Plan. The holders of Class 34 Claims are entitled to vote to accept or reject the Plan.

### Class 35: Groves General Unsecured Claims

### Classification

Class 35 consists of all Allowed General Unsecured Claims of creditors of Groves.

### Treatment

To the extent the net proceeds from the section 363 referenced above exceed the full amount of the Inland Allowed Claim, then Class 35 Claims shall be paid their Pro Rata Share of such net proceeds. In the event of a distribution, Class 35 Claims will be paid from the Distribution Reserve within one (1) year of the Effective Date.

*Impairment and Voting*

Class 35 is impaired by the Plan. The holders of Class 35 Claims are entitled to vote to accept or reject the Plan.

**3.9    Georgetown**

*Class 36: Secured Tax Claims of Spartanburg County, South Carolina*

*Classification*

Class 36 consists of the Allowed Secured Tax Claims of Spartanburg County, South Carolina.

*Treatment*

The holder of the Allowed Class 36 Claim shall be paid its Allowed Secured Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of the Allowed Class 36 Claim and the Reorganized Debtors, or (c) in annual Cash payments commencing twelve (12) months after the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim as required by Section 1129(a)(9)(D) of the Bankruptcy Code, within five (5) years of the Petition Date. The holder of the Allowed Class 36 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date.

*Impairment and Voting*

Class 36 is impaired by the Plan. The holders of Class 36 Claims are entitled to vote to accept or reject the Plan.

*Class 37: FNBS Secured Claim*

*Classification*

Class 37 consists of the Allowed Secured Claim of FNBS. Prior to the Petition Date, FNBS asserted a mortgage encumbering the Georgetown Village Apartments.

*Treatment*

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer up to the value of the collateral securing the claim, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code at a valuation hearing, or (ii) as otherwise agreed upon by the Debtors and FNBS. Payments

on account of the Allowed FNBS Secured Claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of the Georgetown Village Apartments, at the fixed rate of interest of four and one-quarter percent (4.25%), for a period of six (6) months. Thereafter, payments shall be made monthly at the fixed rate of interest of four and one-quarter percent (4.25%), amortized over a period of twenty-five (25) years. The restructured loan will mature five (5) years from the Effective Date of the Plan with no prepayment penalties. FNBS shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein. The Debtors listed the FNBS Secured Claim as disputed in their Schedules that were filed in this case. Since FNBS failed to file a proof of claim on or before the Claims Bar Date, FNBS shall not be entitled to vote on the Plan or to partake in a distribution to unsecured creditors in respect of its Unsecured Deficiency Claim as set forth in Rule 3003(c)(2) of the Bankruptcy Rules.

### Impairment and Voting

Class 37 is impaired by the Plan. Pursuant to Rule 3003(c)(2), FNBS shall not be entitled to vote to accept or reject the Plan.

### Class 38: GTV Investors Secured Claim

### Classification

Class 38 consists of the Allowed Secured Claim of GTV Investors. Prior to the Petition Date, GTV Investors asserted a second mortgage encumbering Georgetown Village Apartments.

### Treatment

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer up to the value of the collateral securing the claims, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code either at the Confirmation Hearing or earlier upon motion of the Debtors, or (ii) as otherwise agreed upon by the Debtors and GTV Investors. In the event the Bankruptcy Court determines this claim is undersecured, payments on account of the Allowed GTV Investors secured claims shall begin within ninety (90) days of the Effective Date and shall be paid: (i) monthly with interest at a fixed rate of five percent (5%) per annum, amortized over thirty (30) years, with no prepayment penalties, or (ii) as otherwise agreed upon by the Debtors and GTV Investors. GTV Investors shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein. In the event the Bankruptcy Court determines this claim is totally unsecured, then the lien shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule,

provided however, that the Debtors reserve the right to seek an Order from the Bankruptcy Court directing the register of deeds to cancel the lien.

### *Impairment and Voting*

Class 38 is impaired by the Plan.  The holders of Class 38 Claims are entitled to vote to accept or reject the Plan.

### *Class 39: Georgetown General Unsecured Claims*

### *Classification*

Class 39 consists of all Allowed General Unsecured Claims of creditors of Georgetown.

### *Treatment*

Class 39 Claims shall be paid their Pro Rata Share of an amount equal to the Net Income from the business and operations of the Georgetown Village Apartments for a period of five (5) years.  Class 39 Claims will be paid from the Distribution Reserve on a pro rata basis in annual installments with the first payment to be made within one year of the Effective Date.  The Debtors reserve the right to satisfy their obligations under this paragraph in less than five (5) years.

### *Impairment and Voting*

Class 39 is impaired by the Plan.  The holders of Class 39 Claims are entitled to vote to accept or reject the Plan.

### **3.10**    *Gaffney*

### *Class 40: Secured Tax Claims of Cherokee County, South Carolina*

### *Classification*

Class 40 consists of the Allowed Secured Tax Claims of Cherokee County, South Carolina.

### *Treatment*

The holder of the Allowed Class 39 Claim shall be paid its Allowed Secured Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of the Allowed Class 40 Claim and the Reorganized Debtors, or (c) in annual Cash payments commencing twelve (12) months after the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim as required by Section 1129(a)(9)(D) of the Bankruptcy Code, within five (5) years of the Petition Date. The

holder of the Allowed Class 40 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date.

### Impairment and Voting

Class 40 is impaired by the Plan.  The holders of Class 40 Claims are entitled to vote to accept or reject the Plan.

### Class 41: Keybank Secured Claims

### Classification

Class 41 consists of the Allowed Secured Claim of Keybank.  Prior to the Petition Date, Keybank asserted a first mortgage on the Creekside Apartments and Magnolia Ridge Apartments.

### Treatment

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer up to the value of the collateral securing the claim, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code at a valuation hearing, or (ii) as otherwise agreed upon by the Debtors and Keybank. Payments on account of the Allowed Keybank Secured Claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of the Creekside Apartments and Magnolia Ridge Apartments, at the fixed rate of interest of five (5%), for a period of six (6) months.  Thereafter, payments shall be made monthly at the fixed rate of interest of five percent (5%), amortized over a period of twenty-five (25) years. The restructured loan will mature five (5) years from the Effective Date of the Plan with no prepayment penalties.  Keybank shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 41 is impaired by the Plan.  The holders of Class 41 Claims are entitled to vote to accept or reject the Plan.

### Class 42: Wachovia Secured Claim

### Classification

Class 42 consists of the Allowed Secured Claim of Wachovia.  Prior to the Petition Date, Wachovia had a promissory note that was subordinated to the Keybank promissory note, by secured by a mortgage on the Creekside Apartments and Magnolia Ridge Apartments.

### Treatment

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer up to the value of the collateral securing the claims, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code either at the Confirmation Hearing or earlier upon motion of the Debtors, or (ii) as otherwise agreed upon by the Debtors and Wachovia.  In the event the Bankruptcy Court determines this claim is undersecured, payments on account of the Allowed Wachovia secured claim shall begin within ninety (90) days of the Effective Date and shall be paid: (i) monthly with interest at a fixed rate of five percent (5%) per annum, amortized over thirty (30) years, with no prepayment penalties, or (ii) as otherwise agreed upon by the Debtors and Wachovia.  Wachovia shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.  In the event the Bankruptcy Court determines this claim is totally unsecured, then the lien shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule, provided however, that the Debtors reserve the right to seek an Order from the Bankruptcy Court directing the applicable register of deeds to cancel the lien of record.

### Impairment and Voting

Class 42 is impaired by the Plan.  The holders of Class 42 Claims are entitled to vote to accept or reject the Plan.

### Class 43 : Gaffney General Unsecured Claims

### Classification

Class 43 consists of all Allowed General Unsecured Claims of creditors of Gaffney.

### Treatment

Class 43 Claims shall be paid their Pro Rata Share of an amount equal to the Net Income from the business and operations of the Creekside Apartments and Magnolia Ridge Apartments for a period of five (5) years.  Class 43 Claims will be paid from the Distribution Reserve on a pro rata basis in annual installments with the first payment to be made within one year of the Effective Date.  The Debtors reserve the right to satisfy their obligations under this paragraph in less than five (5) years.

### Impairment and Voting

Class 43 is impaired by the Plan.  The holders of Class 43 Claims are entitled to vote to accept or reject the Plan.

### 3.11   Two Mile Properties

### Class 44: Secured Tax Claims of Greenville County, South Carolina

#### Classification

Class 44 consists of the Allowed Secured Tax Claims of Greenville County, South Carolina.

#### Treatment

The holder of the Allowed Class 44 Claim shall be paid its Allowed Secured Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of the Allowed Class 44 Claim and the Reorganized Debtors, or (c) in annual Cash payments commencing twelve (12) months after the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim as required by Section 1129(a)(9)(D) of the Bankruptcy Code, within five (5) years of the Petition Date. The holder of the Allowed Class 44 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date.

#### Impairment and Voting

Class 44 is impaired by the Plan.  The holders of Class 44 Claims are entitled to vote to accept or reject the Plan.

### Class 45: Secured Tax Claims of Cherokee County, South Carolina

#### Classification

Class 45 consists of the Allowed Secured Tax Claims of Cherokee County, South Carolina.

#### Treatment

The holder of the Allowed Class 45 Claim shall be paid its Allowed Secured Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of the Allowed Class 45 Claim and the Reorganized Debtors, or (c) in annual Cash payments commencing twelve (12) months after the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim as required by Section 1129(a)(9)(D) of the Bankruptcy Code, within five (5) years of the Petition Date. The holder of the Allowed Class 45 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date.

### Impairment and Voting

Class 45 is impaired by the Plan.  The holders of Class 45 Claims are entitled to vote to accept or reject the Plan.

### Class 46: Secured Tax Claims of Rutherford County, North Carolina

### Classification

Class 46 consists of the Allowed Secured Tax Claims of Spartanburg County, South Carolina.

### Treatment

The holder of the Allowed Class 46 Claim shall be paid its Allowed Secured Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of the Allowed Class 46 Claim and the Reorganized Debtors, or (c) in annual Cash payments commencing twelve (12) months after the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim as required by Section 1129(a)(9)(D) of the Bankruptcy Code, within five (5) years of the Petition Date. The holder of the Allowed Class 46 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date.

### Impairment and Voting

Class 46 is impaired by the Plan.  The holders of Class 46 Claims are entitled to vote to accept or reject the Plan.

### Class 47: FNB Secured Claim(s) (Winchester Drive Houses)

### Classification

Class 47 consists of the Allowed Secured Claim of FNB.

### Treatment

FNB and the Debtors have stipulated that this claim shall be treated as a secured obligation of Joshua Farmer and Raymond Farmer in the amount of $140,000.00. Payments on account of the FNB secured claim shall begin within thirty (30) days of the Effective Date and shall be made monthly from the business and operations of the Winchester Drive Houses, at the fixed rate of interest of five percent (5%), for a period of six (6) months.  Thereafter, payments shall be made monthly at the fixed rate of interest of five percent (5%), amortized over a period of fifteen (15) years. The restructured loan

will mature five (5) years from the Effective Date, with no prepayment penalties.  FNB shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 47 is impaired by the Plan.  The holders of Class 47 Claims are entitled to vote to accept or reject the Plan.

### Class 48: FNB Secured Claim(s) (Mayse Road Houses)

### Classification

Class 48 consists of the Allowed Secured Claims of FNB.

### Treatment

FNB and the Debtors have stipulated that this claim shall be treated as a secured obligation of Joshua Farmer and Raymond Farmer in the amount of $415,000.00.  Payments on account of the FNB secured claim shall begin within thirty (30) days of the Effective Date and shall be made monthly from the business and operations of the Mayse Road Houses, at the fixed rate of interest of five percent (5%), for a period of six (6) months.  Thereafter, payments shall be made monthly at the fixed rate of interest of five percent (5%), amortized over a period of fifteen (15) years. The restructured loan will mature five (5) years from the Effective Date, with no prepayment penalties.  FNB shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 48 is impaired by the Plan.  The holders of Class 48 Claims are entitled to vote to accept or reject the Plan

### Class 49: First South Secured Claim (Creekside Mini-Storage)

### Classification

Class 49 consists of the Allowed Secured Claim of First South.  Prior to the Petition Date, First South had a first priority mortgage encumbering the Creekside Mini-Storage.

### Treatment

First South and the Debtors have stipulated that this claim shall be treated as a secured obligation of Joshua Farmer and Raymond Farmer in the amount of $229,000.00.

Payments on account of the First South secured claim shall commence within thirty (30) days of the Effective Date and shall be made monthly from the business and operations of the Creekside Mini-Storage, at the fixed rate of interest of five percent (5%), for a period of six (6) months. Thereafter, payments shall be made monthly at the fixed rate of interest of five percent (5%), amortized over a period of twenty (20) years. The restructured loan will mature five (5) years from the Effective Date, with no prepayment penalties. First South shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 49 is impaired by the Plan. The holders of Class 49 Claims are entitled to vote to accept or reject the Plan

### Class 50: Miller Secured Claim (Creekside Mini-Storage)

### Classification

Class 50 consists of the Allowed Secured Claim of Miller. Prior to the Petition Date, Miller had a second position mortgage encumbering the Creekside Mini-Storage.

### Treatment

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer up to the value of the collateral securing the claims, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code either at the Confirmation Hearing or earlier upon motion of the Debtors, or (ii) as otherwise agreed upon by the Debtors and Miller. In the event the Bankruptcy Court determines this claim is undersecured, payments on account of the Allowed Miller secured claims shall begin within ninety (90) days of the Effective Date and shall be paid: (i) monthly with interest at a fixed rate of five percent (5%) per annum, amortized over thirty (30) years, with no prepayment penalties, or (ii) as otherwise agreed upon by the Debtors and Miller. Miller shall retain his liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein. In the event the Bankruptcy Court determines this claim is totally unsecured, then the lien shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule, provided however, that the Debtors reserve the right to seek an Order from the Bankruptcy Court directing the register of deeds to cancel the lien.

### Impairment and Voting

Class 50 is impaired by the Plan. The holders of Class 50 Claims are entitled to vote to accept or reject the Plan

***Class 51: Palmetto Secured Claim (Addison Townhomes)***

***Classification***

Class 51 consists of the Allowed Secured Claim of Palmetto.

***Treatment***

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer up to the value of the collateral securing the claim, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code at a valuation hearing, or (ii) as otherwise agreed upon by the Debtors and Palmetto. Payments on account of the Allowed Palmetto Secured Claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of Addison Townhomes, at the fixed rate of interest of five percent (5%), for a period of one year.  Thereafter, payments shall be made monthly at the fixed rate of interest of five percent (5%), amortized over a period of thirty (30) years. The restructured loan will mature five (5) years from the Effective Date of the Plan with no prepayment penalties.  Palmetto shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

***Impairment and Voting***

Class 51 is impaired by the Plan.  The holders of Class 51 Claims are entitled to vote to accept or reject the Plan.

***Class 52: Palmetto Secured Claim(s) (Office and Warehouse, Edwards Street Land)***

***Classification***

Class 52 consists of the Allowed Secured Claim of Palmetto.

***Treatment***

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer up to the value of the collateral securing the claim, in amounts: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code at a valuation hearing, or (ii) as otherwise agreed upon by the Debtors and Palmetto. Payments on account of the Allowed Palmetto Secured Claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of Two Mile, at the fixed rate of interest of five percent (5%), for a period of six (6) months.  Thereafter, payments shall be made monthly at the fixed rate of interest of five percent (5%), amortized over a period of thirty (25) years. The restructured loan will mature five (5) years from the Effective Date of the Plan with no prepayment

penalties. Palmetto shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

**Impairment and Voting**

Class 52 is impaired by the Plan. The holders of Class 52 Claims are entitled to vote to accept or reject the Plan.

### Class 53: Alliance Secured Claim(s)

### Classification

Class 53 consists of the Allowed Secured Claim of Alliance. Prior to the Petition Date, Alliance had a purchase money security interest in eight (8) speed queen washing machines and four (4) speed queen stack dryers.

### Treatment

Alliance and the Debtors have stipulated that this claim shall be treated as a secured obligation of Joshua Farmer and Raymond Farmer in the amount of $11,328.00. Payments on account of the Alliance Secured Claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of the Reorganized Debtors, as follows: (i) with interest payments of 5.25% per annum, amortized over a period of seventy-two (72) months, or (ii) on such other terms as may be agreed upon by the Debtors and Alliance. Alliance shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein. Alliance shall have an Allowed unsecured deficiency claim in the amount of $12,611.42.

### Impairment and Voting

Class 53 is impaired by the Plan. The holders of Class 53 Claims are entitled to vote to accept or reject the Plan.

### Class 54: Audi Secured Claim (2006 Audi A8L)

### Classification

Class 54 consists of the Allowed Secured Claim of Audi. Prior to the Petition Date, Audi held a purchase money security interest in a 2006 Audi A8L.

### Treatment

This obligation shall be treated as a secured obligation of Joshua Farmer, Andrea Farmer and Raymond Farmer in the amount of $22,450.00. Payments on account of the Audi

secured claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of the Reorganized Debtors, as follows: (i) with interest payments of 5.25% per annum, amortized over a period of seventy-two (72) months, or (ii) on such other terms as may be agreed upon by the Debtors and Audi. Audi shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 54 is impaired by the Plan.  The holders of Class 54 Claims are entitled to vote to accept or reject the Plan.

### Class 55: Baytree Secured Claim

### Classification

Class 55 consists of the Allowed Secured Claim of Baytree.  Baytree has a purchase money security interest in a Boxxer 421 carpet cleaning machine and related supplies.

### Treatment

This obligation shall be treated as a secured obligation of Joshua Farmer and Raymond Farmer in the amount of $8,000.00.  Payments on account of the Baytree secured claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of Two Mile, as follows: (i) with interest payments of 5.25% per annum, amortized over a period of seventy-two (72) months, or (ii) on such other terms as may be agreed upon by the Debtors and Baytree.  Baytree shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 55 is impaired by the Plan.  The holders of Class 54 Claims are entitled to vote to accept or reject the Plan.

### Class 56: FNB Secured Equipment Claim

### Classification

Class 56 consists of the Allowed Secured Claim of FNB.  FNB holds a purchase money security interest in equipment as evidenced by a UCC financing statement filed with the North Carolina Secretary of State, file no. 20080016560 and in three (3) twenty (20) foot cargo trailers.

*Treatment*

FNB and the Debtors have stipulated that this claim shall be treated as a secured obligation of Joshua Farmer and Raymond Farmer in the amount of $70,000.00. Payments on account of the FNB secured equipment claim shall commence within thirty (30) days of the Effective Date and shall be made monthly from the business and operations the Reorganized Debtors, at the fixed rate of interest of five and one-quarter percent (5.25%), for a period of six (6) months. Thereafter, payments shall be made monthly at the fixed rate of interest of five and one-quarter percent (5.25%), amortized over a period of seven (7) years. The restructured loan will mature five (5) years from the Effective Date, with no prepayment penalties. FNB shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

*Impairment and Voting*

Class 56 is impaired by the Plan. The holders of Class 56 Claims are entitled to vote to accept or reject the Plan.

### Class 57: GMAC Secured Claim (2008 Chevrolet Silverado 3500 Flat Bed)

*Classification*

Class 57 consists of the Allowed Secured Claim of GMAC. Prior to the Petition Date, GMAC has a purchase money security interest in a 2008 Chevrolet Silverado 3500 Flat Bed Truck.

*Treatment*

This obligation shall be treated as a secured obligation of Joshua Farmer and Raymond Farmer in the amount of $22,000.00. Payments on account of the GMAC secured claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of the Reorganized Debtors, as follows: (i) with interest payments of 5.25% per annum, amortized over a period of seventy-two (72) months, or (ii) on such other terms as may be agreed upon by the Debtors and GMAC. GMAC shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

*Impairment and Voting*

Class 57 is impaired by the Plan. The holders of Class 57 Claims are entitled to vote to accept or reject the Plan.

### Class 58: GMAC Secured Claim (2007 Chevrolet Silverado 2500 HD VIN:8682)

#### Classification

Class 58 consists of the Allowed Secured Claim of GMAC.  GMAC has a purchase money security interest in a 2007 Chevrolet Silverado 2500 HD VIN:8682.

#### Treatment

This obligation shall be treated as a secured obligation of Joshua Farmer and Raymond Farmer in the amount of $14,600.00.  Payments on account of the GMAC secured claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of the Reorganized Debtors, as follows: (i) with interest payments of 5.25% per annum, amortized over a period of seventy-two (72) months from the Effective Date, or (ii) on such other terms as may be agreed upon by the Debtors and GMAC.  GMAC shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

#### Impairment and Voting

Class 58 is impaired by the Plan.  The holders of Class 58 Claims are entitled to vote to accept or reject the Plan.

### Class 59: GMAC Secured Claim (2007 Chevrolet Silverado 2500 HD VIN:8398)

#### Classification

Class 59 consists of the Allowed Secured Claim of GMAC.  GMAC has a purchase money security interest in a 2007 Chevrolet Silverado 2500 HD VIN:8398.

#### Treatment

This obligation shall be treated as a secured obligation of Joshua Farmer and Raymond Farmer in the amount of $14,100.00.  Payments on account of the GMAC secured claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of the Reorganized Debtors, as follows: (i) with interest payments of 5.25% per annum, amortized over a period of seventy-two (72) months from the Effective Date, or (ii) on such other terms as may be agreed upon by the Debtors and GMAC.  GMAC shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### *Impairment and Voting*

Class 59 is impaired by the Plan.  The holders of Class 59 Claims are entitled to vote to accept or reject the Plan.

### *Class 60: John Deere Secured Claim*

### *Classification*

Class 60 consists of the Allowed Secured Claim of John Deere.  John Deere has a purchase money security interest in a commercial walk-behind mower.

### *Treatment*

This obligation shall be treated as a secured obligation of Joshua Farmer and Raymond Farmer in the amount of $1,500.00.  Payments on account of the John Deere secured claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of the Reorganized Debtors, as follows: (i) with interest payments of 5.25% per annum, amortized over a period of seventy-two (72) months, or (ii) on such other terms as may be agreed upon by the Debtors and John Deere.  John Deere shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### *Impairment and Voting*

Class 60 is impaired by the Plan.  The holders of Class 60 Claims are entitled to vote to accept or reject the Plan.

### *Class 61: Land Rover Secured Claim*

### *Classification*

Class 61 consists of the Allowed Secured Claim of Land Rover.  Land Rover has a purchase money security interest in a 2008 Land Rover-Range Rover.

### *Treatment*

This obligation shall be treated as a secured obligation of Joshua Farmer and Raymond Farmer in the amount of $48,850.00, which consists of the value of the collateral of $48,250.00, together with $600.00 that was awarded pursuant to an Order of the Bankruptcy Court entered on July 27, 2010.  Payments on account of the Land Rover secured claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of the Reorganized Debtors, as follows: (i) with interest payments of 5.25% per annum, amortized over a period of seventy-two (72) months from the Effective Date, or (ii) on such other terms as may be agreed upon by the

Debtors and Land Rover. Land Rover shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 61 is impaired by the Plan. The holders of Class 61 Claims are entitled to vote to accept or reject the Plan.

### Class 62: Toyota Finance Secured Claim (2008 Toyota Prius VIN:6921)

### Classification

Class 62 consists of the Allowed Secured Claim of Toyota Finance. Toyota Finance has a purchase money security interest in a 2008 Toyota Prius VIN:6921.

### Treatment

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer in the amount of $11,300.00. Payments on account of the Toyota Finance secured claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of the Reorganized Debtors, as follows: (i) with interest payments of 5.25% per annum, amortized over a period of seventy-two (72) months, or (ii) on such other terms as may be agreed upon by the Debtors and Toyota Finance. Toyota Finance shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 62 is impaired by the Plan. The holders of Class 62 Claims are entitled to vote to accept or reject the Plan.

### Class 63: Toyota Finance Secured Claim (2008 Toyota Prius VIN:8801)

### Classification

Class 63 consists of the Allowed Secured Claim of Toyota Finance. Toyota Finance has a purchase money security interest in a 2008 Toyota Prius VIN:8801.

### Treatment

This obligation shall be treated as a secured obligation of Joshua Farmer and Raymond Farmer in the amount of $10,100.00. Payments on account of the Toyota Finance secured claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of the Reorganized Debtors, as follows: (i)

with interest payments of 5.25% per annum, amortized over a period of seventy-two (72) months, or (ii) on such other terms as may be agreed upon by the Debtors and Toyota Finance. Toyota Finance shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 63 is impaired by the Plan. The holders of Class 63 Claims are entitled to vote to accept or reject the Plan.

### Class 64: Wells Fargo Secured Claim

### Classification

Class 64 consists of the Allowed Secured Claim of Wells Fargo. Wells Fargo has a purchase money security interest in a Toshiba Copier e-studio 2500C.

### Treatment

This obligation shall be treated as a secured obligation of Raymond Farmer and Joshua Farmer in the amount of $4,000.00. Payments on account of the Wells Fargo secured claim shall begin within ninety (90) days of the Effective Date and shall be made monthly from the business and operations of the Reorganized Debtors, as follows: (i) with interest payments of 5.25% per annum, amortized over a period of seventy-two (72) months from the Effective Date, or (ii) on such other terms as may be agreed upon by the Debtors and Wells Fargo. Wells Fargo shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until their claims are paid as set forth herein.

### Impairment and Voting

Class 64 is impaired by the Plan. The holders of Class 64 Claims are entitled to vote to accept or reject the Plan.

### Class 65: Two Mile Properties General Unsecured Claims

### Classification

Class 65 consists of all Allowed General Unsecured Claims of creditors of the former Two Mile Properties LLC.

### Treatment

Class 65 Claims shall be paid their Pro Rata Share of an amount equal to the Net Income from the business and operations of Two Mile Properties for a period of five (5) years.

Class 65 Claims will be paid from the Distribution Reserve on a pro rata basis in annual installments with the first payment to be made within one year of the Effective Date.  The Debtors reserve the right to satisfy their obligations under this paragraph in less than five (5) years.

***Impairment and Voting***

Class 65 is impaired by the Plan.  The holders of Class 65 Claims are entitled to vote to accept or reject the Plan.

# ARTICLE 4

## MEANS FOR EXECUTION AND
## IMPLEMENTATION OF THE PLAN

4.1     <u>Plan Funding</u>.  Joshua and Andrea Farmer and Raymond and Diane Farmer propose to fund this Plan by committing the value of their projected disposable income to be received by each Debtor for a period of five (5) years as set forth in section 1129(a)(15) of the Bankruptcy Code.

4.2     <u>Source of Funds</u>.  The Debtors will commit the value of the Net Income generated from the operation of the Former Entities and the Properties over a period of five (5) years <u>after</u> payment of all secured tax claims and the secured debt service, less amounts placed in reserve to fund capital expenditures which are reasonably necessary to maintain the value of the Properties. In addition, the Debtors will commit the Net Income generated by Two Mile to fund the Plan. The proceeds recovered in the Avoidance Actions will also be used to fund this Plan

4.3     <u>Authority to Act Following Confirmation Date</u>.  Upon confirmation of this Plan, the Debtors shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan. In connection with the occurrence of the Effective Date, the Reorganized Debtor is authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

4.4     <u>Authority to Act Following Effective Date</u>.  The Reorganized Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

4.5     <u>Status of Liens of Secured Tax Claims and Allowed Secured Claims</u>.  Unless otherwise provided in this Plan, or by Order of the Bankruptcy Court, on the Effective Date, all existing liens held by any Class or Classes on the Debtors' Assets shall retain the same validity, priority and extent that existed on the Petition Date. Section 552 of the Bankruptcy Code shall

not apply to limit any of the liens and security interests. All other liens and encumbrances shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule.  The Debtors shall be entitled to seek an Order from the Bankruptcy Court directing the applicable register of deeds to cancel such liens of record.

4.6     Effectuating Documents and Further Transactions.  The Debtors and the Reorganized Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtors and the Reorganized Debtors, to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

4.7     Application of Preconfirmation Adequate Protection Payments.  To the extent the Debtors made preconfirmation adequate protection payments to an Undersecured Creditor, then such payments shall be applied to satisfy that Creditor's Secured Claim under the Plan.  To the extent the Debtors made preconfirmation adequate protection payments to an Oversecured Creditor, then such payments shall be applied consistent with applicable state law and the underlying loan documents.

## ARTICLE 5

## UNEXPIRED LEASES AND OTHER EXECUTORY CONTRACTS

5.1     Assumption of Certain Unexpired Leases and other Executory Contracts.  As of the Effective Date, all executory contracts and unexpired leases of the Debtors that (a) have not previously been assumed by the Debtors by Order of the Bankruptcy Court, or (b) are not the subject of a motion to assume/reject pending on the Effective Date, shall be deemed ASSUMED by the Debtors.  The Debtors does not believe that there are any cure payments owed as of the Effective Date for the assumption of these obligations.  This zero cure amount will be binding on the counterpart to such Assumed Agreement unless timely objected to by parties to the executory contracts and unexpired leases.

5.2     Resolution of Disputes Regarding Assumed Agreements.  If not otherwise resolved by the parties, the Bankruptcy Court shall determine any dispute pertaining to the assumption and assignment of any Assumed Agreement, and any required disputed cure payment shall be paid promptly following the entry of a Final Order resolving such dispute.

5.3     Claims Based on Rejection of Unexpired Leases and other Executory Contracts. Except to the extent a prior order of the Bankruptcy Court provided for an earlier date, in which case such earlier date shall control, all proofs of claim with respect to Claims arising from the Debtors' rejection of unexpired leases and other executory contracts shall be filed with the Bankruptcy Court within thirty (30) days after the date of service of notice of entry of an order of the Bankruptcy Court approving such rejection and requiring the filing of a proof of claim in connection therewith, including the Confirmation Order.  Any Claims not filed within such times

shall be released, discharged, and forever barred from assertion against the Estates and the Reorganized Debtors.

## ARTICLE 6

## ACCEPTANCE OR REJECTION OF THIS PLAN;
## EFFECT OF REJECTION BY ONE OR MORE CLASSES

6.1     Impaired Classes to Vote.  Except as otherwise required by the Bankruptcy Code or the Bankruptcy Court, any holder of a Claim that is impaired under this Plan is entitled to vote to accept or reject this Plan if, at any time prior to the voting deadline, (a) its Claim has been Allowed, (b) its Claim has been temporarily allowed for voting purposes only by order of the Bankruptcy Court pursuant to Bankruptcy Rule 3018 (in which case such Claim may be voted in such temporarily allowed amount), (c) its Claim has been scheduled by the Debtor (but only if such Claim is not scheduled as disputed, contingent, or unliquidated) and no objection to such Claim has been filed, or (d) it has filed a proof of claim on or before the applicable bar date (or such later date as the Bankruptcy Court may have established with respect to any particular Claim, but not later than the date of the order approving the disclosure statement accompanying this Plan), and such Claim is not a Disputed Claim.  Notwithstanding the foregoing, a holder of a Disputed Claim which has not been temporarily allowed as provided above may nevertheless vote such Disputed Claim in an amount equal to the portion, if any, of such Claim shown as fixed, liquidated, and undisputed in the Schedules.

6.2     Acceptance By Class of Creditors.  A class of Creditors shall have accepted this Plan if this Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept this Plan.

6.3     Cramdown.  In the event that one or more classes of impaired Claims does not accept or is deemed not to have accepted this Plan, the Debtor requests that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code.  The Debtors reserves the right to amend the Plan, if necessary, in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

6.4     1111(b) Election.  In the event a Secured Creditor makes the 1111(b) election, then the electing creditor shall: (i) retain a lien equal to the amount of its total Allowed Claim; (ii) receive a stream of payments that are equal to the present value of its Collateral at a discount rate to be determined by the Bankruptcy Court; and (iii) receive a total sum of payments that equals the amount of that Creditor's total Allowed Claim.  Payments to an electing Creditor shall commence within ninety (90) days of the Effective Date, and shall be made in monthly installments for a period of forty (40) years until the total amount of such Allowed Claim is paid in full.  An electing Creditor relinquishes its right to vote on the Plan as an Unsecured Creditor and to share in any distribution to Unsecured Creditors.

## ARTICLE 7

## PROCEDURES FOR RESOLVING
## DISPUTED CLAIMS AND AVOIDANCE ACTIONS

7.1    <u>Filing of Objections to Claims</u>.  Following the Effective Date, the Reorganized Debtors shall be authorized to object to, or to succeed or otherwise join any objection filed by the Debtors prior to the Effective Date, Claims so as to have the Bankruptcy Court determine the amounts to be allowed, if any, of such Claims and thus paid pursuant to the Plan.  Objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of such Claims no later than one hundred and twenty (120) days after the Effective Date; <u>provided</u>, <u>however</u>, that this deadline may be extended by the Bankruptcy Court upon the entry of an order by the Bankruptcy Court extending such deadline.  An objection to the allowance of a Claim by the Reorganized Debtors must be filed with the Bankruptcy Court and served upon the holder of the subject Claim(s) and all parties who have requested notice in the Chapter 11 Case.

7.2    Notwithstanding the foregoing, unless an order of the Bankruptcy Court specifically provides for a later date, any proof of claim for pre-petition debts of the Debtors filed <u>after</u> the Confirmation Date shall be automatically disallowed in full as a late-filed claim, without any action by the Reorganized Debtors necessary, <u>unless and until</u> the party filing such Claim obtains (i) the written consent of the Reorganized Debtors to file such Claim late, or (ii) approval from the Bankruptcy Court upon notice to the Reorganized Debtors that permits the late filing of the Claim, in which event, the Reorganized Debtors shall have one hundred and twenty (120) days from the date of such written consent or order to object to such Claim, which deadline may be extended by the Bankruptcy Court upon motion of the Reorganized Debtors.

7.3    <u>Prosecutions of Objections to Claims</u>.  Prior to the Effective Date, the Debtors shall litigate to judgment, propose settlements of, or withdraw objections to such Disputed Claims asserted against it as the Debtors may choose.  From and after the Effective Date, the Reorganized Debtors shall litigate to judgment, propose settlements of, or withdraw objections to all Disputed Claims.  Prior to the expiration of thirty (30) days from the date of service of any such objection to Claims, the Claimant(s) whose Claim(s) was the subject of the objection must file a response to the objection with the Bankruptcy Court and serve the response upon the objecting party and the Reorganized Debtors.  If a Claimant(s) whose Claim(s) was the subject of the objection fails to file and serve its response to the objection within the 30-day response deadline, the Bankruptcy Court may grant the relief requested in the objection against the non-responding Claimant(s) without further notice or hearing.  All proposed settlements of Disputed Claims shall be subject to the approval of the Bankruptcy Court after notice and opportunity for a hearing (as that term is used in section 102(1) of the Bankruptcy Code).

7.4    <u>Estimation of Disputed Claims</u>.  The Debtors and, after the Effective Date, the Reorganized Debtors, may at any time request that the Bankruptcy Court estimate for all purposes, including distributions under this Plan, any Disputed, contingent or unliquidated Claim or Interest pursuant to Section 502(c) of the Bankruptcy Code whether or not the Debtor or the Reorganized Debtor has previously objected to such Claim or Interest. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

7.5    <u>Establishment of Disputed Claims Reserve</u>.  Within twenty-one (21) days after the Effectve Date, the Reorganized Debtors shall establish the Disputed Claims Reserve.

7.6     No Distribution on Account of Disputed Claims.  Notwithstanding anything else contained in this Plan, except with respect to any undisputed, non-contingent and liquidated portion of General Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order. The Reorganized Debtors shall set aside or reserve a portion of the consideration payable to the holders of Allowed Claims in a particular Class to be held in the Disputed Claims Reserve for such Class in an amount sufficient to pay to the holders of all Disputed Claims in such Class the full distributions they may be entitled to if their respective Claims were ultimately to be allowed in full by Final Order.

7.7     Avoidance Actions.  After the Effective Date, the Reorganized Debtors shall have the sole right, in the name of the Debtors and the Estates, to commence, continue, or settle any Avoidance Action, including any Avoidance Action brought by the Debtors prior to the Effective Date and which remain unsettled as of the Effective Date, if any.  All proposed settlements of Avoidance Actions, where the settlement amount of the claim in question is greater than $25,000, shall be subject to the approval of the Bankruptcy Court after notice and opportunity for a hearing (as that term is used in section 102(1) of the Bankruptcy Code).  All proposed settlements of Avoidance Actions, where the settlement amount of the claim in such Avoidance Action is $25,000 or less, may be entered into by the Reorganized Debtors without further notice, hearing, or order of the Court.

## ARTICLE 8

## DISTRIBUTIONS UNDER THE PLAN

8.1     Establishment of Reserves.  Within twenty-one (21) Business Days after the Effective Date, the Reorganized Debtors shall establish the Distribution Reserve and the Disputed Claims Reserve.  Thereafter, as assets are liquidated and reduced to Cash, the Reorganized Debtors shall fund the Distribution Reserve with such Cash, as practicable.  The Reorganized Debtors shall have the discretion to retain a reasonable portion of Cash and fund the Disputed Claim Reserve as is necessary and appropriate under the circumstances in order to account for Disputed Claims, if any.  When all Disputed Claims have been resolved by Final Order, all remaining Cash or property in the Disputed Claims Reserve shall be transferred to the Distribution Reserve.

8.2     Disbursing Agent.  The Reorganized Debtors, or an agent employed by the Reorganized Debtor, shall serve as the "disbursing agent" and shall make all distributions provided for under the Plan.

8.3     Making of Distributions and Payments.  The Reorganized Debtor shall make the payments and distributions expressly required to be made in respect of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Claims, and Allowed General Unsecured Claims at such time or times as are provided for in Articles 2 and 3 of the Plan.

8.4     Delivery of Distributions; Unclaimed Property.

(a)    Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed or if the Reorganized Debtors have been notified of a change of address).  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Reorganized Debtors are notified in writing of such holder's then current address, at which time all missed distributions shall be made to such holder without interest (except to the extent that such missed distributions have become unclaimed property).  All claims for undeliverable distributions shall be made on or before the earlier of the second (2nd) anniversary of the applicable Distribution Date and the Final Distribution Date, and after such date, such undeliverable distributions shall be unclaimed property.  All unclaimed property attributable to any Claim shall revert to the Reorganized Debtors, and the claim of any holder with respect to such property shall be discharged and forever barred and, in the case of a Claim, shall no longer be deemed an Allowed Claim.

(b)    Checks issued by the Reorganized Debtors in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissue of any check shall be made, in writing, to the Reorganized Debtors by the record holder of the Allowed Claim with respect to which such check was originally issued.  Any funds in respect of such a voided check shall be deemed an undeliverable or unclaimed distribution and shall revert to the Reorganized Debtors.

(c)    Method of Payment.  Payments of Cash required pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank at the election of the Person making such payment.

(d)    Payment Dates.  Whenever any payment or distribution to be made under this Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

(e)    Rounding.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent.

8.5    Payments of Less Than Five (5) Dollars.  If a cash payment otherwise provided for by this Plan with respect to an Allowed Claim would be less than five dollars ($5.00) (whether in the aggregate or on any Distribution Date provided for in this Plan), notwithstanding any contrary provision of this Plan, the Reorganized Debtors shall not be required to make such payment.

8.6    Setoff.  The Reorganized Debtors may, but shall not be required to, setoff against any Claim (and the distributions to be made pursuant to this Plan with respect to such Claim), claims of any nature whatsoever that the Debtors, the Estates, or the Reorganized Debtors may have, against the holder of such Claim.  Notwithstanding the foregoing, the failure to effect such a setoff will not constitute a waiver or release by the Reorganized Debtors of any such claim against such holder.

## ARTICLE 9

## MANAGEMENT OF THE PROPERTIES

9.1     <u>Two Mile</u>.  Joshua Farmer and Raymond Farmer will operate and manage the
Properties as a general partnership under the trade name of Two Mile.  Two Mile will charge a
reasonable management fee to the Properties, and shall be reimbursed for all actual and
reasonable fees incurred related to the management of the Properties (the "Management Fee").
Joshua Farmer will be paid a reasonable salary annually together with his vehicle with such
compensation being paid from the Management Fee.  Raymond Farmer shall be paid a
reasonable salary annually with such compensation being paid from the Management Fee.

## ARTICLE 10

## EFFECTS OF CONFIRMATION

10.1     <u>Discharge of Debtors</u>.  The consideration distributed under this Plan shall be in
exchange for, and in complete satisfaction, discharge, release, and termination of all Claims of
any nature whatsoever against the Estates or the Debtors. Pursuant to section 1141 of the
Bankruptcy Code, and except as otherwise stated in the Plan, the Debtors shall be entitled to
move for entry of a discharge upon completion of all payments under the Plan.  If such discharge
is approved by Order of the Bankruptcy Court (the "Discharge Order"), the Debtors shall be
deemed discharged and released pursuant to section 1141 of the Bankruptcy Code from any and
all Claims, including but not limited to demands and liabilities that arose before the date of the
Discharge Order, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the
Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed
filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed
under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has
accepted this Plan.  The Discharge Order shall be a judicial determination of discharge and
termination of all liabilities of and all Claims against the Estates and Debtors, except as
otherwise specifically provided in this Plan.  Upon the entry of the Discharge Order, as to every
discharged Claim and other debt of the Debtors, the holder of such Claim or other debt of the
Debtors shall be permanently enjoined and precluded from asserting against the Reorganized
Debtors, or against its assets or properties or any transferee thereof, any other or further Claim or
other debt of the Debtors based upon any document, instrument, or act, omission, transaction, or
other activity of any kind or nature that occurred prior to the entry of the Discharge Order <u>except</u>
as expressly set forth in this Plan.  In the event that, after entry of the Discharge Order, any
Person asserts, against the Reorganized Debtors or any of its subsidiaries or affiliates, any right
to payment or equitable remedy for breach of performance which gives rise to a right of
payment, which right was not asserted prior to the entry of the Discharge Order but is based on
any act, fact, event, occurrence, or omission, by or relating to the Debtors, as the Debtors existed
before the entry of the Discharge Order, and in the further event that such right is determined by
a court of competent jurisdiction not to have been discharged pursuant to the provisions of
Bankruptcy Code section 1141 and this Plan, and that such right may be asserted against the
Reorganized Debtors, then, in such circumstances the holder of such right shall be entitled to
receive from the Reorganized Debtors value equivalent to the value such holder would have

received if such right had been asserted against the Debtors before the Confirmation Date and only to the extent such right would have been allowed or allowable as a Claim. Nothing in this Section 10.1 shall have the effect of excepting from discharge any Claim that is or would be discharged pursuant to Bankruptcy Code section 1141 or this Plan.

10.2    Release of Certain Claims and Actions. As of and upon entry of the Discharge Order, all Persons or entities who have held, hold, or may hold Claims against the Estates, and any of its successors, assigns, or representatives, shall be deemed to have waived, released, and discharged all rights or claims, whether based upon tort, contract, or otherwise, which they possessed or may possess prior to the entry of the Discharge Order against the Estates, the Debtors, the Debtors' present agents, representatives, and attorneys and any of its successors or assigns, and the Debtors' former agents, representatives, and attorneys and any of its successors or assigns, except as otherwise provided for in the Plan (including the documents filed as Schedules to the Plan) or the Confirmation Order; provided, however, that the foregoing release shall not apply to performance or nonperformance under the Plan or related instruments, securities, agreements, or documents, or to any action or omission that constitutes actual fraud or criminal behavior. The Discharge Order shall contain a permanent injunction to effectuate the releases granted in this Section 10.2.

10.3    Exculpation. To the fullest extent permitted by Section 1125(e) of the Bankruptcy Code, the Debtors and their respective present and former representatives, counsel, or agents shall be deemed released by each of them against the other and by the holders of Claims and from any and all claims, obligations, rights, causes of action, and liabilities for any act or omission in connection with, or arising out of, these Chapter 11 Cases, including, without limiting the generality of the foregoing, the Disclosure Statement, the pursuit and approval of the Disclosure Statement, the pursuit of Confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and all such persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan and under the Bankruptcy Code. The Reorganized Debtor will indemnify, hold harmless, and reimburse the exculpated Persons from and against any and all losses, Claims, causes of action, damages, fees, expenses, liabilities, and actions for which liability is limited pursuant to this Section of this Plan. All rights of the exculpated Persons indemnified pursuant to this Section 10.3 shall survive confirmation of this Plan.

10.4    Re-vesting of Assets; No Further Supervision. The assets of the Debtors and all property of the Estates (including, without limitation, all rights of the Debtors to recover property under sections 542, 543, 550, and 553 of the Bankruptcy Code, all avoiding powers under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, all proceeds thereof, and all claims and causes of action, cross-claims and counterclaims of any kind or nature whatsoever against third parties arising before the Confirmation Date that have not been disposed of prior to the Confirmation Date), shall be preserved and shall re-vest in the Reorganized Debtors, in each case free and clear of all Claims, but subject to the obligations of the Reorganized Debtors as specifically set forth in this Plan. Except as otherwise provided in the Plan, there are no restrictions or prohibitions on the conduct of the business of the Reorganized Debtors. The Reorganized Debtor may use, operate and deal with its assets, and may conduct and change its businesses, without any supervision by the Bankruptcy Court or the

Bankruptcy Administrator, and free of any restrictions imposed on the Debtors by the Bankruptcy Code or by the Bankruptcy Court during the Chapter 11 Case.

10.5    Exemption from Certain Taxes.  To the full extent allowed pursuant to section 1146(c) of the Bankruptcy Code, the consummation of the transactions contemplated by this Plan shall not subject the Debtors, the Estates, or the Reorganized Debtors to any state or local stamp tax or similar tax.

10.6    Authority to Implement.  The Debtors are hereby authorized to take all necessary steps and perform all necessary acts to consummate the terms and conditions of this Plan.

10.7    Injunction.  Provided that the Effective Date occurs, the entry of the Discharge Order shall permanently enjoin all Persons that have held, currently hold, or may in the future hold a Claim or other debt or liability against the Estates from taking any of the following actions on account of such Claim:  (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtors, the Estates, or the Reorganized Debtors; (b) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Estates, or the Reorganized Debtors; (c) creating, perfecting, or enforcing in any manner directly or indirectly, any Lien, charge, or encumbrance of any kind against the Debtors, the Estates, or the Reorganized Debtors; and (d) proceeding in any manner in any place whatsoever against the Debtors, the Estates, or the Reorganized Debtors, funds, or reserves held or maintained by any of the aforementioned persons or entities pursuant to this Plan, in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan.

10.8    Holders of Claims shall not, under any circumstances, be entitled to specific performance or other injunctive, equitable, or other prospective relief.

## ARTICLE 11

## CONDITIONS PRECEDENT

11.1    Conditions Precedent to Confirmation.  The Plan shall not be confirmed unless and until the Bankruptcy Court has entered the Confirmation Order in a form and substance satisfactory to the Debtor.

11.2    Conditions Precedent to Effective Date.  The Plan shall not become effective and operative unless and until the Effective Date occurs.  The Effective Date shall occur after the Confirmation Order has been entered, has not been modified or altered in any way, and no stay of the Confirmation Order shall be in effect.

11.3    Notice of the Effective Date.  On or before ten (10) Business Days after the Effective Date, the Reorganized Debtors shall mail (or cause to be mailed) a form of notice that informs all holders of Claims of the (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; (c) assumption of the Assumed Agreement(s) pursuant to the Plan; (d) rejection

of all other executory contracts not assumed pursuant to the Plan, as well as the deadline for the filing of Claims arising from such rejection; (e) procedures for changing an address of record pursuant to this Plan; and (f) such other matters as the Reorganized Debtors deem to be appropriate; to all parties in interest in the Chapter 11 Case.

      11.4    <u>Non-Occurrence of the Effective Date</u>.  If the Confirmation Order is entered but the Effective Date does not occur within the 60 days thereafter, unless otherwise ordered by the Bankruptcy Court, (a) the Confirmation Order shall be deemed vacated; (b) all bar dates and deadlines established by the Plan or the Confirmation Order shall be deemed vacated; (c) the Chapter 11 Case will continue as if confirmation of the Plan had not occurred; and (d) the Plan will be of no further force and effect, with the result that the Debtors and other parties in interest will be returned to the same position as if confirmation had not occurred.  The failure of the Effective Date to occur shall not affect the validity of any order entered in the Chapter 11 Case other than the Confirmation Order.

# ARTICLE 12

# RETENTION OF JURISDICTION

      12.1    From and after the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over these Chapter 11 Cases for the following purposes:

          (a)    To determine any and all objections to the allowance of Claims;

          (b)    To determine any and all applications for the rejection, assumption, or assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Reorganized Debtors are a party or with respect to which the Reorganized Debtors may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

          (c)    To determine any and all applications for the determination of any priority of any Claim including Claims arising from any event that occurred prior to the Petition Date or from the Petition Date through the Effective Date and for payment of any alleged Administrative Claim, Priority Tax Claim, Other Priority Claims, or General Unsecured Claim;

          (d)    To determine any and all applications, motions, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date or filed thereafter;

          (e)    To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of this Plan or in connection with the obligations of the Reorganized Debtor under this Plan, and to enter such orders as may be necessary or appropriate to implement any distributions to holders of Allowed Claims;

(f)     To consider any modification, remedy any defect or omission, or reconcile any inconsistency in this Plan or any order of the Bankruptcy Court, including the Confirmation Order, all to the extent authorized by the Bankruptcy Code;

(g)     To issue such orders in aid of execution of this Plan to the extent authorized by section 1142 of the Bankruptcy Code;

(h)     To determine such other matters as may be set forth in the Confirmation Order, or as may arise in connection with this Plan or the Confirmation Order;

(i)     To hear and determine any claim or controversy of any nature arising from or in connection with any agreement made a part of this Plan and to enter such orders as may be appropriate to enforce, modify, interpret, or effectuate such agreements;

(j)     To determine any suit or proceeding brought by the Reorganized Debtors, on behalf of the Estates, to (a) recover property under section 542, 543 or 553 of the Bankruptcy Code or to avoid any transfer or obligation under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, or (b) otherwise collect or recover on account of any claim or cause of action that the Reorganized Debtors may have (provided that the Bankruptcy Court's jurisdiction with respect to such matters shall be nonexclusive);

(k)     To consider and act on the compromise and settlement of any Claim against or cause of action by or against the Estates;

(l)     To estimate Claims pursuant to section 502(c) of the Bankruptcy Code;

(m)     To hear and determine any dispute or controversy relating to any Allowed Claim or any Claim alleged or asserted by any Person to be an Allowed Claim;

(n)     To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed to the Professionals under the Bankruptcy Code or this Plan;

(o)     To administer and enforce the injunctions contained in this Plan, and any related injunction or decree contained in the Confirmation Order; and

(p)     To hear and determine any other matter related hereto and not inconsistent with the Bankruptcy Code.

## ARTICLE 13

## MISCELLANEOUS PROVISIONS

13.1     <u>Modification of Payment Terms</u>.  The Reorganized Debtors reserve the right to modify the treatment of any Allowed Claim in any manner adverse only to the holder of such

Claim at any time after the Effective Date upon the written consent of the Creditor whose Allowed Claim treatment is being adversely affected.

13.2    Filing of Additional Documents.  On or before the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court such agreements and other documents, if any, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and the other agreements referred to herein.

13.3    Compliance with Tax Requirements.  In connection with this Plan, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all distributions hereunder shall be subject to such withholding and reporting requirements.

13.4    Setoffs.  The Reorganized Debtors may (but shall not be required to) if it is in the best interests of the Estates, setoff or recoup against any Claim claims of any nature whatsoever that the Estate may have against the holder of such Claim, to the extent such claim may be setoff or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors or the Estates of any such claim that it may have against such holder.

13.5    Payment of Certain Professional Fees/Expenses.  The Reorganized Debtor shall assume responsibility for the payment of all fees and expenses of Professionals retained by the Estate and accruing after the Effective Date.

13.6    Section Headings.  The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

13.7    Waiver.  The Debtors reserve the right, in its sole discretion, to waive any provision of this Plan, to the extent such provision is for the sole benefit of the Debtor and the Estate.

13.8    Notices.  Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

Raymond and Diane Farmer<br>
Joshua and Andrea Farmer<br>
c/o Andrew T. Houston<br>
Hamilton Moon Stephens Steele & Martin, PLLC<br>
201 South College Street<br>
Charlotte Plaza, Suite 2020<br>
Charlotte, North Carolina 28244-2020

13.9    Severability.  If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term

or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the Debtor's option, remain in full force and effect and not be deemed affected.  However, the Debtor reserves the right not to proceed to confirmation or consummation of the Plan if any such ruling occurs.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.10   <u>Plan Controls</u>.  To the extent the Plan is inconsistent with the Disclosure Statement or any other document, agreement, pleading, or understanding, the provisions of this Plan shall control; <u>provided</u>, <u>however</u>, that the Confirmation Order shall control to the extent there is any inconsistency between the Plan and the Confirmation Order.

13.11   <u>Reservation of Rights</u>.  If the Plan is not confirmed by the Bankruptcy Court or any other Court of competent jurisdiction for any reason, the rights of all parties in interest in this Chapter 11 Case are and shall be reserved in full.  Any concession reflected or provision contained herein, is made for the purposes of the Plan only, and if the Plan does not become effective, no party in interest in this Chapter 11 Case shall be bound or deemed prejudiced by any such concession.

13.12   <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of North Carolina.

13.13   <u>Exemption from Transfer Taxes</u>.  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall <u>not</u> be subject to any stamp tax or other similar tax.

13.14   <u>Termination of Subordination Rights</u>.  The classification and manner of satisfying all Claims under the Plan takes into consideration all contractual, legal, equitable subordination, and turnover rights, if any, whether arising under general principals of equitable subordination, section 510(c) of the Bankruptcy Code or otherwise, that a holder of a Claim against the Estate may have against other Claim holders with respect to any distribution made pursuant to this Plan.  On the Effective Date, all contractual, legal, equitable subordination, and turnover rights that a holder of a Claim against the Estate may have with respect to any distribution to be made pursuant to this Plan will be discharged and terminated, and all actions related to the enforcement of such subordination rights, if any, will be permanently enjoined.  Accordingly, distributions pursuant to this Plan to holders of Allowed Claims will not be subject to payment of a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated subordination rights.

13.15   <u>Amendment of Plan</u>.  This Plan may be amended by the Debtors as provided for in section 1127 of the Bankruptcy Code.

13.16   <u>Revocation of Plan</u>.  The Debtor reserves the right to revoke and withdraw this Plan prior to entry of the Confirmation Order.  If the Debtor revokes or withdraws this Plan, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Estate or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

13.17   <u>Implementation</u>.  The Debtors and Reorganized Debtors shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan, including, without limitation, any transaction contemplated by the Disclosure Statement approved by the Bankruptcy Court.  Nothing contained in this Section shall be construed to prohibit, limit, restrict, or condition the Debtor's authority in any lawful manner to sell or otherwise dispose of any other assets.

# ARTICLE 14

## CONFIRMATION REQUEST

14.1    The Debtors hereby requests confirmation of the Plan pursuant to sections 1129(a) and 1129(b) of the Bankruptcy Code.

Dated: Charlotte, North Carolina
　　　　November 15, 2010

Respectfully submitted,

Raymond B. Farmer

_____*s/ Raymond B. Farmer*_____

Diane P. Farmer

_____*s/ Diane P. Farmer*_____

Joshua B. Farmer

_____*s/ Joshua B. Farmer*_____

Andrea G. Farmer

_____*s/ Andrea G. Farmer*_____