# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

In the matter of:            )
                             )
RAYMOND B. FARMER and DIANE P.)
FARMER,                      ) Case No. 10-40269
                             )
    Debtors.                 )

_____

JOSHUA B. FARMER and ANDREA  )
G. FARMER,                   ) Case No. 10-40270
                             )
    Debtors.                 )

                               Charlotte, NC
                               May 12, 2010, 9:43 a.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GEORGE R. HODGES
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

                          Andrew T. Houston
                          Richard Wright
                          Hamilton Moon Stephens
                            Steele & Martin
                          201 South College Street
                          Suite 2020
                          Charlotte, NC 28244


Electronic Recorder
Operator:                 Cecelia Burr

Transcriber:              Patricia Basham
                          6411 Quail Ridge Drive
                          Bartlett, TN  38135
                          901-372-0613

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

APPEARANCES (Continued):

Linda Simpson
U.S. Bankruptcy Administrator
402 W. Trade Street, Suite 200
Charlotte, NC 28202-1669

Bradley E. Pearce
Katten Muchin Rosenman LLP
550 S. Tryon Street, Suite 2900
Charlotte, NC 28202-4213

William L. Esser, IV
Parker Poe Adams & Bernstein, LLP
401 S. Tryon St., Suite 3000
Three Wachovia Center
Charlotte, NC 28202

Hillary B. Crabtree
Moore & Van Allen PLLC
100 N. Tryon Street, Suite 4700
Charlotte, NC 28202-4003

James Heath Pulliam
Kilpatrick Stockton, LLP
214 N. Tryon St., Ste. 2500
Charlotte, NC 28202

Heather White
Smith Moore Leatherwood
525 North Tryon Street, Suite 1400
Charlotte, NC 28202

Louis Spencer
McNair Law Firm
Two Wachovia Center
301 S. Tryon Street, Suite 1615
Charlotte, NC 28282

3

1        THE COURT: In the Farmer matters, why don't we just

2    start with Ms. Simpson and go across the room that way.

3        MS. SIMPSON: Linda Simpson, Bankruptcy Administrator.

4        MR. HOUSTON: Good morning, Your Honor.  Andy Houston

5    and Richard Wright on behalf of the debtors, Raymond and Diane

6    Farmer, Josh and Andrea Farmer.

7        MR. PEARCE: Your Honor, Brad Pearce on behalf of

8    Inland Mortgage Capital Corporation.

9        MR. ESSER: Your Honor, Will Esser on behalf of

10   Palmetto Bank.  And appearing with me today, I would like to

11   introduce to the court my colleague, Katie Trotter, who was a

12   clerk for Judge Leonard and has come back to us from a stint in

13   New York.

14       THE COURT: Good.

15       MS. CRABTREE: Your Honor, Hillary Crabtree,

16   representing South Carolina Electric and Gas and Public Service

17   of North Carolina, Inc.

18       MR. PULLIAM: Your Honor, Jim Pulliam, appearing on

19   behalf of 1230 Overbrook Drive Holdings, LLC, CBA-Mezzanine

20   Capital Finance, LLC, US Bank in its capacity as trustee for

21   registered holders of MLCFC and US Bank in its capacity as

22   trustee for Commercial Mortgage Trust 2007-C5.

23       MS. WHITE: Your Honor, Heather White appearing on

24   behalf of Easlan Property Management Group.

25       MR. SPENCER: Your Honor, Louis Spencer on behalf of

4

1    First National Bank of Charlotte.

2    　　　　THE COURT: Okay.  All right.  I guess we have got a

3    couple of things on.  Does anybody have any ideas of what we

4    ought to do first?

5    　　　　MR. ESSER: Well, Your Honor, I think that procedurally

6    we have a motion from Palmetto Bank to determine the applicable

7    law which will apply in this case.  I think that's in

8    conjunction with the court's *sua sponte* putting this on with

9    regard to the single-asset real estate rules.

10    　　　　And, Your Honor, I think maybe to start with is giving

11    a summary of where we are in this case.  I don't believe that

12    there are any facts which are in dispute before the court

13    today.

14    　　　　The debtor, Mr. Joshua Farmer, has twice now testified

15    both here in the court, as well as in his 2004 examination,

16    regarding these prepetition transfers which occurred.  The

17    court has heard about that extensively.  It is undisputed that

18    there were – the reasons why it was done.  Mr. Farmer has not

19    tried to hide those reasons.  He has been fairly forthright

20    about the fact that he, you know, met with Max Gardner and Tom

21    Moon prior to filing this bankruptcy and came up with this

22    strategy for two reasons.  One, to avoid having to file

23    multiple separate corporate actions and the second being to try

24    to avoid the absolute priority rule.  Twice under oath Mr.

25    Farmer has testified that those are the only two reasons for

5

1    having done these transfers.

2         I think it is also clear, Your Honor, that Mr. Farmer

3    has testified that there was no consideration given.  The bills

4    of sale and the quitclaim deeds recite that there was, I think,

5    ten dollars of consideration and assumption of debt.   Mr.

6    Farmer testified in his 2004 examination that the ten dollars

7    was just stated in the documents but no ten dollars ever

8    transferred hands.  So that leaves us with this assumption of

9    debt.

10        With regard to all of the secured debt, Your Honor,

11   that was already guaranteed by Mr. Farmer and Raymond Farmer.

12   So there was no benefit given to the various LLCs and, in fact,

13   it is uncontroverted that the various LLCs did not receive any

14   kind of releases and, to this day, remain liable on all of

15   their various debts which were allegedly assumed.

16        Your Honor, with regard to the issue that Palmetto has

17   raised in its brief with regard to the fact that all of these

18   transfers were void as fraudulent transfers, I don't want to

19   overstate our position on that.  We think that ultimately the

20   facts as laid out are incontrovertible and they clearly

21   establish that all of those transfers were void as a matter of

22   South Carolina state law.

23        That being said, when I filed the motion for Palmetto,

24   I simply had stated in the motion itself that Palmetto was

25   reserving its right with regard to that issue.  As I went

6

1    forward on briefing, however, it became clear that the white

2    elephant in the room which needed to be addressed was are these

3    properties property of the estate or are these properties not

4    property of the estate, but that clearly was the overriding

5    issue that needed to be addressed by the court.

6         Now, Palmetto is happy to admit or, excuse me, will

7    readily admit that there are some cases which hold that the

8    question of what is or is not property of the estate, that that

9    issue is properly raised in an adversary proceeding.

10        Now, that being said, Your Honor, Palmetto believes

11   that in this circumstance there is no need for an adversary

12   proceeding.  Palmetto doesn't believe it needs to take any

13   discovery, the debtor doesn't need to take any discovery.  We

14   are willing to move for summary judgment on this issue with

15   regard to solely based upon the testimony which has been

16   presented already.

17        Now, if the debtors can articulate an advantage or a

18   reason or some benefit that they would obtain through having

19   this issue obtained in an adversary proceeding, some benefit

20   other than solely delay, then I would like to hear what that

21   is.  But ultimately, Your Honor, if you believe an adversary

22   proceeding is necessary on the fraudulent transfer issue,

23   Palmetto will immediately file one and we would simply ask that

24   the court, under Rule 9006(c), require the debtors to

25   expeditiously answer the complaint, say no more than fourteen

7

1    days to respond, because there really aren't any factual issues

2    to be addressed, and then immediately allow Palmetto to go

3    ahead and have the matter heard on summary judgment.    That

4    would put it into the kind of procedural context which the

5    debtors apparently would like on the fraudulent transfer issue.

6    With regard to the other two issues which are before

7    the court, with regard to the single asset real estate issue,

8    Your Honor, which you raised *sua sponte*, it's a little bit

9    problematic or difficult to try to fit what is somewhat of a

10   square peg into a round hole.    That is, to take a rule which

11   would apply to a corporate debtor and try to apply it to an

12   individual debtor.    We acknowledge that.    That's a situation

13   which the debtors themselves have created and which they call,

14   therefore, unorthodox.

15   Your Honor, I think that the court can easily address

16   that issue, however, by simply entering an order which says

17   unless the debtors start to make the required payments to the

18   lenders, or have filed a plan of reorganization within ninety

19   days, then the court will find the lenders do not have adequate

20   protection and therefore there is cause for relief from stay

21   under 362(d)(1).

22   I think using that kind of a road map avoids any of

23   the problems of trying to apply, quote, single-asset real

24   estate rules in an individual case but really applies justice

25   and fairness because that is what exactly would apply but for

8

1   the debtor's inappropriate stratagem to avoid the Bankruptcy

2   Code.

3        The same thing, I think, Your Honor, applies with

4   regard to the absolute priority rule.  If these cases had been

5   filed as corporate cases, which they should have been, then

6   there is no question but that the absolute priority rule would

7   apply.  I think that the way Your Honor could address that

8   issue today is to simply say, well, if the debtor tries to keep

9   equity in the properties without paying creditors less than a

10  hundred percent on the dollar, that the court would find that

11  any such plan fails to meet the requirements of 1129(a)(3) for

12  good faith and therefore there is no problem about applying –

13  you know, that clearly applies whether the case is an

14  individual or a corporate case, but it also essentially

15  achieves the same substance, which is that the debtors should

16  not be allowed to come up with a clever strategy to try to

17  avoid what Congress has said is the law with regard to

18  bankruptcy debtors.

19       So for those reasons, Your Honor, we would ask that

20  both the single-asset real estate and absolute priority rules

21  would apply in the manner in which Palmetto, as I have just

22  stated, and that with regard to the fraudulent transfer issue,

23  if the court doesn't rule on it today, that we set up, the

24  court allow an adversary proceeding with very shortened time

25  lines so that we can get this matter to summary judgment very

9

1    quickly.

2            THE COURT: Okay.   Anybody else?

3            MR. HOUSTON: Your Honor, Andy Houston on behalf of the

4    debtor, and I think what Your Honor asked is if anybody had any

5    ideas as to how to deal with the multiple motions that are on,

6    and I guess we are addressing the single-asset argument right

7    now.

8            Starting off, Your Honor, I would just like to sort of

9    re-focus the court as to what was properly before it today.

10   Starting with at the hearing on the 12th or the 28th, Your Honor

11   requested that parties either submit some kind of argument as

12   to whether the single-asset rule should apply or whether Your

13   Honor should do it on his own motion.   After some discussion,

14   Your Honor agreed that the parties could brief and argue the

15   issue, and that is really the only issue that I believe is

16   properly before the court.

17           I acknowledge that Palmetto Bank filed a motion

18   slightly expanding the scope of what Your Honor had requested

19   shortly after the hearing, and then I acknowledged that

20   Palmetto Bank filed a brief five days ago drastically expanding

21   the scope of what Your Honor had requested a hearing on,

22   including containing arguments regarding whether these

23   transfers were void as fraudulent transfers under South

24   Carolina law, as well as certain other arguments.   That they

25   should be granted relief from stay, I believe was one of them,

10

1   as well as dismissing the case.

2          The issues we are prepared to address today are

3   single-asset rules and specifically 362(d)(3) which, as Mr.

4   Esser mentioned, is essentially a ninety-day rule and that the

5   debtors have to commence making interest payments at the non-

6   default contract rate on the value of the lender's collateral

7   or the debtor has to file a plan within the ninety days.

8          As to whether it should apply in this case, the

9   debtors submit that 362(d)(3) does not actually fit in this

10  case, and I believe Mr. Esser made a very good analogy that

11  it's like sticking a square peg in a round hole.   The

12  definition is set forth in section 101, and I think we all

13  agree that the essential elements to show whether a case is a

14  single-asset case is whether the debtor owns real property

15  constituting one property or project; two, whether all of the

16  debtor's or substantially all of the debtor's gross income

17  comes from the operation of that project; and, three, whether

18  there is any other substantial business being conducted on that

19  one property or project.

20          I think it is pretty clear that the case doesn't

21  technically fit a single-asset case.   The debtors are

22  individual debtors.   They own multiple properties currently.

23  Substantially all of their income is not derived from the

24  operation of these properties.   In fact, both Josh and Andrea

25  Farmer are practicing attorneys.   Andrea full-time and Josh

11

1   less so.   Ray Farmer owns a construction business, and I

2   believe his wife is a part-time teacher.

3          In terms of whether substantial business is operated

4   other than just the operation of the real estate and actions

5   incidental thereto, this really is an enterprise.   I mean,

6   there are managers portfolio wide, a gentleman named Andy Kidd.

7   There are a number of other employees who provide services

8   portfolio wide as opposed to this just being the situation

9   where you have got the debtor and one piece of real estate or

10  one project.

11         In addition, I would submit that I don't believe that

12  there is any harm to the lenders in not treating this case as

13  a single-asset case.   And, by that, I mean the lenders on one

14  hand, if these cases were filed individually, would have had

15  secured claims to the value of their collateral and, if they

16  are filed in individual cases, probably some kind of nominal

17  dividend would be paid on their unsecured claims.   And I

18  believe, in this case, they are actually going to be benefitted

19  by the fact that there is this operating enterprise which has

20  a wider base of assets that they would be allowed to increase

21  the dividend on the unsecured portions of their claim, which is

22  probably going to be the large chunk of unsecured claims in

23  this case.

24         Your Honor, I understand this is certainly an

25  unorthodox case.   We have acknowledged as much before.   Mr.

12

1   Farmer testified to as much.  What do you do?  The answer is,

2   if Your Honor is inclined to apply the single-asset rules, we

3   believe that, if you are going to apply them, that we would

4   request that you apply them to those properties which would

5   have been single-asset cases absent the prepetition transfers.

6          In our motion and the brief, we filed a chart and I

7   believe six of the properties probably would have been single-

8   asset cases.  I think it's three properties that were pledged

9   to Palmetto Bank; one property was pledged to Inland; one

10  that's pledged to - it's Timber Creek.  I believe it's Key

11  Bank.  And then the Georgetown property.  I think it is those

12  six.  The other properties, I do not believe to be single-asset

13  cases.

14         And if Your Honor is inclined to apply the rules to

15  those, we would also request that Your Honor enter some kind of

16  limiting order preventing those lenders from not sharing in

17  essentially the other pool of assets.  For instance, any of

18  these unencumbered assets which could potentially increase the

19  dividend that they would have received.  So we would request

20  that they do not receive anything more than they would have

21  received if this case had been filed as a single-asset case

22  with respect to their properties.

23         The second issue is the absolute priority rule and,

24  Your Honor, I have basically two thoughts on this.  The first

25  being that I am not sure that the court needs to decide whether

13

the absolute priority rule applies now.  It seems to me that it is more of a confirmation fight than anything else.  And if Your Honor is inclined to hear argument on that today, then I would submit the absolute priority rule does not apply in individual cases.

And in coming to that determination, you have to look at the purpose and history behind the absolute priority rule, and I think the general purpose behind the absolute priority rule is to prevent equity holders in corporate cases from obtaining their interest, obtaining value  when the unsecured creditors are not paid in full.

Historically speaking, it is something that has not worked well in individual cases, and my understanding is that, pre 2005, the absolute priority rule applied in individual Chapter 11 cases and it was in many regards unworkable and, in response to those problems, Congress enacted BAPCPA in 2005, which essentially changed the absolute priority rule and it did not apply to individual cases, and a number of cases interpreting that – in fact, I am not aware of any that have not interpreted it as stating that the absolute priority rule does not apply in individual cases.

You know, I think the reasoning behind that is that it is just something that is very antithetical to the nature of an individual case in that there are no shareholders in an individual case.  And I think Congress responded to that by

14

1    enacting section 1129(a)(15) talking about projected disposable

2    income in an attempt to make individual Chapter 11 cases look

3    more like Chapter 13 cases.

4         And I think this is the point to be made, is that

5    Palmetto has consistently harped on the fact that Mr. Farmer

6    considered the absolute priority rule prior to this what we

7    have referred to as the roll-up prepetition.  And while that is

8    certainly their opinion, it seems to ignore fact and be based

9    on the erroneous assumption that Congress intended that

10   individual debtors get some kind of get out of jail free card

11   by filing an individual eleven.

12        You know, frankly it doesn't seem to work that the

13   absolute priority rule would apply in an individual case and,

14   in lieu of that, Congress has allowed debtors, when an

15   unsecured creditor objects, it allows debtors to - requires

16   debtors to commit all of their projected disposable income to

17   fund the plan.

18        And I should also point out that, to the extent that

19   there are any of these properties, and probably not the

20   apartment complexes so much, but any of these other properties

21   that have equity, the debtors would have to buy back that

22   equity essentially to tender to the unsecured creditors to

23   satisfy the best interest test.  So I am not sure that the

24   lenders would be any worse off with this treatment.

25        Moving on, Your Honor, to the extent that the court

15

1    wants to entertain the fraudulent transfer arguments, I think

2    there are really a number of reasons, and clearly there are

3    factual disputes, and I could just gloss over them, whether

4    there was consideration paid or not, you know, whether these

5    were property of the estate.  I don't believe that Mr. Esser

6    has made any kind of showing for some kind of expedited

7    adversary proceeding.   I don't believe these issues are

8    properly before the court.

9         And if you are looking for a reason why this should

10   actually be determined in an adversary proceeding, if that's

11   where we need to go, is I am not sure these were fraudulent

12   transfers under South Carolina law.  And if I can approach the

13   bench, Your Honor?

14        THE COURT: Yes.

15        MR. HOUSTON: Along those lines, Your Honor, I would

16   submit to you the case of *Leasing Enterprises v. Goodman*, and

17   if I could just take a brief minute about this case.  In the

18   *Leasing Enterprises* case, Leasing Enterprises leased equipment

19   to Mr. Goodman.  Mr. Goodman and Mrs. Goodman were guarantors

20   of that obligation.  Mr. Goodman filed for bankruptcy – do you

21   want me to –

22        THE COURT: Yeah, let me just ask you all to stand down

23   for a minute.

24        (Recess from 10:02 a.m. until 10:16 a.m. while the

25   court heard matters in unrelated cases.)

16

1    THE COURT: Okay. Back to the Farmer matter. I guess

2    I should say that I don't think the fraudulent transfer issue

3    is properly before us today. And on the absolute priority

4    rule, I think that that is best left to dealing with that in

5    conjunction with a plan or confirmation of a plan.

6    I have confirmed a plan that violated the absolute

7    priority rule but I got reversed for that. I only did that

8    because Mr. Henson dared me to, but I will try not to do that

9    again. But I think that is an issue that should be dealt with

10   at confirmation rather than give what would essentially be an

11   advisory opinion at this point.

12   It is a serious matter and, as I say, we can't confirm

13   a plan that does violate the actual priority rule. So I will

14   let you all deal with that.

15   So I think the main thing we need to consider today is

16   application of the single-asset rules. I cut you off with the

17   phone call. Is there anything –

18   MR. HOUSTON: Your Honor, in light of your comments, I

19   am inclined not to actually say any more on this issue.

20   THE COURT: Okay. Anybody else? Mr. Pearce, you were

21   standing up a minute ago.

22   MR. PEARCE: Your Honor, I will take exception. I

23   don't think the single-asset real estate rule of 362(d)(3) is

24   difficult to apply in this case. It applies to the property

25   and to the related secured debt, and it certainly gives the

17

1    debtors the opportunity to propose a plan within ninety days in

2    lieu of making payments.

3          The one issue is with respect to the payment option.

4    If there is not a plan that has a reasonable chance of being

5    confirmed filed within ninety days, then I would just propose,

6    as opposed to running back to court or running back-and-forth

7    with multiple fights, that the payments be established at a

8    minimum at the contract, non-default rate, at the amount listed

9    by the debtors in the schedules.  And of course every creditor

10   would be free to come in and challenge the valuation of its

11   interest in the property securing its loan.

12         Mr. Houston suggested a limitation which I believe

13   related  to  payments  under  the  plan.    I  believe  that's

14   premature.  Also I would like to point out that, at least with

15   respect to the debt owed to Inland, we have complete payment

16   guaranties from Joshua and Raymond Farmer and limited payment

17   guaranties from Diane and Andrea Farmer.  So that kind of

18   limitation would be circumventing any contrary to the pre-

19   bankruptcy contractual obligations of the debtors.

20         I really don't think it is that difficult to apply in

21   this case, and I think equity does say that it should apply,

22   notwithstanding the various fights we have had about whether

23   there is a fraudulent transfer, whether the matter is properly

24   before the court to find a fraudulent transfer.  We did have

25   transfers  of  the  assets  from  the  LLCs  immediately  prior  to

18

1   bankruptcy in violation, at least in my case, of covenants of

2   the LLCs and of agreements signed by the Farmers individually.

3   I don't think it is a big stretch for the court to exercise its

4   equitable jurisdiction in this case to apply the single-asset

5   real estate rules for those six properties and certainly to the

6   Groves Apartments.

7          THE COURT: Okay.  Anybody else?  Ms. Simpson.

8          MS. SIMPSON: Your Honor, I disagree a little bit on

9   the administrative end of it.  I think, if you are going to

10  require one of these complexes to be a single-asset real estate

11  entity, then you split it out entirely as if it was a separate

12  entity.  I think we split out the creditors of that entity.  I

13  think we split out the assets, whatever they happen to be,

14  including potential tax attributes of those entities.  I don't

15  know if the net operating loss carry forward, anything like

16  that, but I think you do split them out entirely.

17          So  in  that  sense,  there  is  a  little  more

18  administration to it if Your Honor decides to treat them as

19  such.

20          MR. ESSER: Your Honor, to echo what Ms. Simpson said,

21  I think that that would actually be somewhat of an ideal

22  solution if the court were to just treat these as all split

23  out.  I mean, one of the things that hasn't really been

24  addressed as much is the fact that, if these are all treated

25  separately, the pool of claimants for the particular property

19

1    and therefore the pool of claimants who will vote on a plan

2    with regard to that property is much narrower. I mean, I think

3    the court could probably get a pretty good sense the very first

4    day we were in here. All of the lenders were over here arguing

5    with the exception of Mr. Henderson was over here. And guess

6    who their impaired class of creditors to cram down everybody

7    else is going to be? I mean, that became clear on the very

8    first day.

9           So if we go ahead and treat it the way that it should

10   have been treated, the way the creditors intended it to be

11   treated, the way it was set up until five days before the

12   bankruptcy plan, all of these would be treated separately.

13          Now, we don't want to insist that the debtors have to

14   file separate cases and bear the various administrative

15   expenses but, if the court were to rule that all of these

16   single assets would be put into separate buckets and the plan

17   is going to have to treat them with separate buckets, then I

18   think that that would be an appropriate resolution to dealing

19   with this.

20          If the court is not ready to do this, at least I think

21   the court could have the road map on proceeding forward of

22   simply finding, under 362(d)(1), that cause exists for relief

23   from stay if the debtor does not start making those payments or

24   file a plan within the ninety days.

25          THE COURT: Anybody else?

20

1           (No response.)

2           THE COURT: It is remarkably silent.   Anything else,

3      Mr. Houston?

4           MR. HOUSTON: I don't, Your Honor.

5           THE COURT: All right.   Well, I think I should apply

6      the single-asset rules to the six properties that would have

7      been single assets, and I think the issues is not whether the

8      case now qualifies as a single-asset case but the issue is

9      really what parts of it would have qualified as a single-asset

10     case before the transfers in, I think, April 1st.

11          So I will require that the single-asset rules apply as

12     to the six properties.   Are you all in agreement as to what

13     those six properties are?   Okay.   Good.   And we will provide

14     that all of the single-asset rules apply to them, and I think

15     that they should be separately administered.   I don't think we

16     will need to file separate cases for them, but I think that, to

17     be fair and to otherwise avoid what would be an avoidance or an

18     abuse of the bankruptcy system, I think we have to apply the

19     rules as if those cases were filed separately.

20          So I will say today that that will apply as to the -

21     I guess the 362 parts, but I think we will also have to have

22     separate accountings and probably separate voting and the other

23     kind of things.   We can deal with that as a final matter down

24     the road but, just to give you some idea of where it is going

25     to go, I think you are going to have to treat those things as

21

1    if they were separately filed.

2         You know, if you want to pursue, if Palmetto or

3    anybody else wants to pursue the fraudulent transfer issue, I

4    think we need to do that by adversary proceeding and we will

5    deal with that as it comes up.

6         I am not sure as a practical matter that – well, I

7    will let you all decide about that, but it would seem to me

8    that you could – the banks could pursue that and win that issue

9    and then just be faced with twelve new bankruptcy filings.  So

10   I will let you all think about the practical aspects of this.

11   My intention is, though, is to try to administer the present

12   case, as long as we have the present case, to try to administer

13   it in such a way that it would be the same as if the cases had

14   been filed as the LLC cases.  Okay.  I may change my mind about

15   that but that is my current thinking.

16        Ms. Simpson.

17        MS. SIMPSON: As far as administration goes, then,

18   could we have the debtors file supplemental schedules and

19   statements for each of these six properties?  Not necessarily

20   amended but supplemental showing both the assets, the

21   creditors, as well as the financial information contained in

22   the statement of financial affairs?

23        THE COURT: If you all can do that, then I think it

24   would probably be worthwhile to do it.

25        MR. PULLIAM: Your Honor, excuse me, I would think that

22

1   applies to all the LLCs, not just the six single-asset cases.

2   The LLCs with - for example, one of the LLCs owned two

3   projects. Each should be separate schedules and statement of

4   affairs for those, as well, because I think the general thought

5   process with respect to the single-asset cases applies across

6   the board, not just the single asset. I understand the single-

7   asset rules may only apply to the six, but -

8          THE COURT: Okay. Yes, sir.

9          MR. HOUSTON: Right, Your Honor, and I think, if you

10  are going to apply them, I think it needs to apply to the six

11  properties that would have been prepetition.  I don't think

12  that was necessarily before the court.

13         THE COURT: No, we won't apply the single-asset rules

14  to the others but I think, in terms of laying out schedules, it

15  would probably be a good idea to have just an amended set of

16  schedules that shows what goes where with each entity.

17         MR. WRIGHT: But with regard to each preexisting SPE or

18  with regard to those six?

19         THE COURT: No, all of them.

20         MR. WRIGHT: All of them?

21         THE COURT: All of them.  Okay.

22         MR. ESSER: Your Honor, I think that that gives us a

23  fairly good road map moving forward.  The one issue which is

24  somewhat left hanging out there is the issue of avoidance

25  actions because, as a technical matter, if the various LLCs,

23

1   you know, transferred property in the ninety-day period or even

2   in the fraudulent transfer look-back period, as a technical

3   matter I am not sure that that's necessarily within the estate

4   because those LLCs haven't filed and, if down the road we

5   looked at it and one of these LLCs had done a big transfer,

6   then the party coming in would say, well, it's not a transfer

7   of property of the debtor, so that isn't the Farmers and

8   therefore we have got a complete defense.  It seems to me, Your

9   Honor, there should be something structured to make sure that's

10  brought in.

11          MR. PEARCE: Your Honor, that's a plan issue, it seems

12  to me, and let's let the parties negotiate that.

13          THE COURT: Let me let you all think and talk about

14  that before I haul off and do something because I can't begin

15  to figure out what that might mean down the road as a practical

16  matter to you all but you all talk about that and see where you

17  come out with it, and we can deal with that sometime later.

18          MR. HOUSTON: I just have one housecleaning kind of

19  aspect.  The 341 meeting is next Friday, and I am not sure that

20  that's even really possible for us to get schedules filed by

21  then.  Is there any objections to us rescheduling that and then

22  having some kind of extension for us to get supplemental or

23  amended schedules filed?

24          MS. SIMPSON: Typically you don't reschedule because we

25  would have to re-notice everyone.  We will go ahead and have it

24

1   and I have no objection, if creditors appear and they want to

2   ask questions, to ask what they want, and then we will continue

3   it over until schedules are filed.

4           THE COURT: Okay.

5           MR. HOUSTON: At which time you would schedule an

6   additional or supplemental 341 meeting?

7           MS. SIMPSON: We don't schedule one.  We just at the

8   meeting we continue it to a certain date forward, and that

9   avoids the cost of re-noticing everybody.

10          MR. HOUSTON: I think that works.  I think we probably

11  need at least two weeks to get all of this stuff filed if there

12  is no objection to that.

13          THE COURT: That's fine.  No, that's fine.  Okay.  Does

14  that take care of us, then, for today?

15              (Transcription stopped at 10:29:44 a.m.)

25

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Patricia Basham

Patricia Basham, Transcriber

Date:  August 25, 2010