**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(CHARLOTTE DIVISION)**

---

| | |
|---|---|
| In re: **RAYMOND B. FARMER** and **DIANE P. FARMER**, Debtors. | Case No. 10-40269 Chapter 11 |

| | |
|---|---|
| In re: **JOSHUA FARMER** and **ANDREA FARMER** Debtors | Case No. 10-40270 Chapter 11 |

---

**JOINT MOTION TO PROHIBIT THE USE OF CASH COLLATERAL, OR IN THE ALTERNATIVE TO MODIFY THE AMENDED FINAL ORDER AUTHORIZING THE USE OF CASH COLLATERAL, PURSUANT TO SECTIONS 105, 361 AND 363 OF THE BANKRUPTCY CODE**

---

The Parties[1] identified herein file this Joint Motion (the "Motion") to Prohibit The Use Of Cash Collateral, Or In The Alternative To Modify the Amended Final Order Authorizing the Use of Cash Collateral, Pursuant to Sections 105, 361 and 363 of the Bankruptcy Code (the "Amended Final Cash Collateral Order") [Doc. No. 145] pursuant to section 363 of chapter 11 of title 11, United States Code (the "Bankruptcy Code"). In support of their Motion, the Secured Creditors respectfully show the Court as follows:

---

[1] This motion is joined by the following parties: 1230 Overbrook Drive Holdings, LLC, CBA-Mezzanine Capital Finance, LLC, U.S. National Bank Association, The Palmetto Bank, First National Bank of the South U.S. Bank National Association, as Trustee for the Registered Holders of ML-CFC Commercial Mortgage Trust 2007-8, Commercial Mortgage Pass-Through Certificates Series 2007-8 ("A-Noteholder") and U.S. Bank National Association, as Trustee for the Registered Holders of Merrill Lynch Mortgage Investors, Inc. Commercial Mortgage Pass-Through Certificates Series 2007-C5 ("B-Noteholder") (collectively referred to herein as the "Secured Creditors").

US2008 2275707.11

## JURISDICTION AND VENUE

1.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.[2]

2.   Venue over this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.   This matter is a core proceeding which may be heard and determined by the Court pursuant to 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(A) and (G).

## FACTS

4.   The Court is very familiar with the facts in the instant cases prior to the filing of the bankruptcy petition and the Secured Creditors have not restated them here for brevity.  However, the only reason these cases are still continuing is as a result of the bad faith, corporate shell game that the Debtors played on the eve of their bankruptcy filing.  Such actions constitute an abuse of the bankruptcy process and the Secured Creditors should not be forced to pay for this abuse with their cash collateral.

5.   On April 6, 2010, as part of their "First Day Motions," Debtors filed their Emergency Motions to Use Cash Collateral [Doc. No. 4].

6.   On April 23, 2010, the Court entered an Interim Order Authorizing Motion to Use Cash Collateral [Doc. No. 39].

7.   On April 28, 2010, a hearing was conducted with respect to final authorization of the use of cash collateral.  At the hearing, the Court *sua sponte* informed

---

[2] Nor is this matter stayed as a result of Debtors' appeal.  At a hearing on February 3, 2011, Judge Mullen excluded any motion with respect to cash collateral from the effect of the stay.  In ruling on Debtors' motion to stay proceedings after a hearing on February 10, 2011, Judge Mullen denied the motion finding that the Debtors had not established a likelihood of success in that the SARE Order was a final order and further finding that the bankruptcy filing after the pre-petition transfers was an "abusive filing."  Ruling in open court reflected in entry dated December 10, 2011 in 3:11-cvm-00036-GCM.

US2008 2275707.11

the parties that it would hear argument as to whether the Bankruptcy Code provisions relating to single asset real estate entities would apply in the cases.

8. On May 10, 2010, the Court entered the Final Order Authorizing Motion to Use Cash Collateral (the "Initial Final Order") [Doc. No. 75]. The Initial Final Order had no budgets attached as exhibits.

9. Subsequently, the Court scheduled and conducted a hearing with respect to the issue of whether the Bankruptcy Code provisions relating to single real estate entities applied to the cases.

10. On May 28, 2010, the court entered the Order Resolving Motion of the Palmetto Bank for a Determination that the Debtors are Subject to Various Provisions of the Bankruptcy Code Relating to Single Asset Real Estate and Those Applicable to Corporate Entities (the "SARE Order") [Doc. No. 104].

11. The SARE Order, among other things, required that the Debtors keep separate accounting and administration and that the Debtors file separate schedules and statements of financial affairs.

12. As a result of the SARE Order, the Debtors were required to prepare separate budgets for each of the Properties. Accordingly, on July 13, 2010, the Court entered the Amended Final Cash Collateral Order which was amended to attach Exhibits A and B as well as to reflect the administrative consolidation of the Debtors' cases.

13. The Amended Final Cash Collateral Order provides, among other things, as follows:

> By entry of the Order, Debtors are authorized to use cash collateral derived from the rents generated by the Properties in the ordinary course of business provided such use is: (1) consistent with the approved expenses in that the amounts spent in respect of each Property do not

<blockquote>
exceed, on a line-item basis, the expense budgets for the Properties, which are attached hereto as **Group Exhibit B** (each a "Budget," and collectively the "Budgets"), subject, however, to the following: (i) Debtors may exceed the amounts set forth in any Budget line-item by not more than ten percent (10%) of such line item, and provided that Debtors' net cash and receivable position from the use of Cash Collateral in respect of a Property does not fail to meet the Projected Cash Surplus identified on the applicable Budget; and (ii) any expenditure in excess of those amounts shall require the prior written consent of the applicable Lender(s) before being paid; and (2) Debtors comply with all other terms of this Order.
</blockquote>

Amended Final Cash Collateral Order [Doc. No. 145] ¶ 9(a) (emphasis added).

14. From the very beginning, the Debtors have ignored the Amended Final Cash Collateral Order. According to the monthly operating reports that have been filed,[3] the Debtors have exceeded the budgets without consent of the Secured Creditors for every month since the entry of the Amended Final Cash Collateral Order. Attached hereto as Exhibits A, B and C and incorporated herein by reference are charts that show areas in which the Debtors have exceeded by more than ten percent (10%) the budgets for Properties that are the collateral of the Secured Creditors. Examples of the cost overruns include the following:

    (a)    October 2010, Magnolia Ridge; Utilities 62.3% over budget;

    (b)    July 2010, Magnolia Ridge; Maintenance/Repairs 57% over budget; and

    (c)    September 2010, Meadow Green Apartments; Grounds 54% over budget;

Although these exhibits refer only to the budgets related to the Secured Parties, upon information and belief, there are violations of the Amended Final Cash Collateral Order with respect to all or most of properties owned by the Debtors.

---

[3] The latest operating report is for the month of October, 2010.

Although these exhibits refer only to the budgets related to the Secured Parties, upon information and belief, there are violations of the Amended Final Cash Collateral Order with respect to all or most of properties owned by the Debtors.

## RELIEF REQUESTED

15.     Section 363 of Title 11 of the United States Code prohibits the trustee or debtor-in-possession from using cash collateral without either consent of the secured creditor or authorization from the court after notice and hearing.

16.     Section 363(e) further provides as follows:

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, <u>shall prohibit or condition such use, sale, or lease</u> as is necessary to provide adequate protection of such interest.

11 U.S.C. §363(e) (emphasis added).

17.     Accordingly, Section 363(e) provides the court with authority to prohibit the use of cash collateral. Cases interpreting Section 363 and violations of orders allowing use of cash collateral have fashioned a number of remedies, including the prohibition or modification of the cash collateral order. *See* Norton Bankruptcy Law and Practice (3rd Ed. Updated January 2011) (collecting cases employing a number of remedies for violation of cash collateral orders).

18.     In these cases, the Amended Final Cash Collateral Order and the budgets attached to it, entered after notice and a full hearing, established the parameters for use of the cash collateral. Among other items, the Amended Final Cash Collateral Order and budgets provide for a professional fee carve-out of $40,000 per month, a 4.5% management fee, a salary of $75,000 annually together with a vehicle to Joshua Farmer, a

salary of $50,000 annually to Raymond Farmer and various expenses of the Properties, including an administrative fee. Despite the generous carve-outs and management fees, the Debtors have repeatedly ignored the terms of the Amended Final Cash Collateral Order.

19.     In addition, despite the clear admonition and instruction in the SARE Order, the Debtors filed a disclosure statement and plan of reorganization that did not comply with the SARE Order. The Debtors have now appealed the Court's order denying approval of the First Amended Joint Disclosure Statement—using the Secured Creditor's cash collateral to fund this and other spurious litigation.

20.     The Secured Creditors file this motion seeking to prohibit the use of cash collateral, or in the alternative, to amend the cash collateral order to eliminate the salaries to Joshua and Raymond Farmer and eliminate the professional fee carve-out and to require the Debtors to comply with the provisions of the amended cash collateral order and budgets attached.

21.     To the extent that the Debtors wish to continue the various actions, the Debtors can use assets and income[4] that are not cash collateral of the Secured Creditors. Between the two cases, the Debtors listed personal property totaling $1,376,576.21, including the following:

        (a)     Certified coin collection -- $50,000;

---

[4] Even before the numerous violations of the Amended Interim Cash Collateral Order, Joshua Farmer testified on April 16, 2010 at the Continued Hearing on Debtors' Emergency Motion [for Interim Order Approving Use of Cash Collateral]; Hearing on Motion of CBA-Mezzanine Capital ("Cash Collateral Hearing") that he was prepared to contribute to the Bankruptcy Administrator's and professional fees out of personal income. Cash Collateral Hearing Transcript at pp. 87-90. Upon information and belief, the Debtors have made no contribution to any fees from personal income or assets

US2008 2275707.11

   (b) 18kt yellow gold diamond wedding ring set, 18kt white gold diamond ring, 14kt white gold diamond earrings -- $6,230;

   (c) Men's yellow gold enameled cuff links, 2 pr. Shell cuff links, IWC watch -- $3,950;

   (d) White South Sea pearl set -- $16,200;

   (e) Yellow gold, white gold, pearl and gemstone jewelry (including necklaces, bracelets, rings, earrings) and miscellaneous men's cuff links -- $4,490;

   (f) 3 handguns (Glock, Nighthawk, Sig Sauer) and ammunition -- $1,100; and

   (g) 100-gal aquariums w/stands . . . -- $8,000.

Although some of the items in the personal property may be collateral or cash collateral, it would appear that there should be significant funds for the Debtors to fund reasonable and necessary estate expenses.

 WHEREFORE, the Secured Creditors respectfully request that the Court enter an order prohibiting the use of the Secured Creditors' cash collateral, or in the alternative amending the Amended Final Cash Collateral Order to eliminate the management fees and professional carve-out and for such other further relief as to the court deems just and proper.

 This the 9th day of February, 2011.

        /s/ Alan D. McInnes
        Alan D. McInnes, Esq. (NC Bar No. 20938)
        Kilpatrick Townsend & Stockton, LLP
        3737 Glenwood Avenue Suite 400
        Raleigh, NC  27612
        Telephone (919) 420-1700

US2008 2275707.11

*Counsel for CBA-Mezzanine Capital Finance, LLC and 1230 Overbrook Drive Holdings, LLC, U.S. Bank National Association (A and B Noteholder)*


/s/ William L. Esser IV
William L. Esser IV, Esq. (NC Bar No. 29201)
Ashley A. Edwards, Esq. (NC Bar No. 40695)
Parker Poe Adams & Bernstein LLP
401 South Tryon Street, Suite 300
Charlotte, NC 28202
Telephone (704) 372-9000
*Counsel for Palmetto Bank*

/s/ Louis G. Spencer
Louis G. Spencer, Esq.
McNair Law Firm, P.A.
301 South Tryon Street, Suite 1615
Charlotte, NC 28202
*Counsel for First National Bank of the South*

# CERTIFICATE OF SERVICE

This is to certify that the undersigned counsel has served the **JOINT MOTION TO PROHIBIT THE USE OF CASH COLLATERAL, OR IN THE ALTERNATIVE TO MODIFY THE AMENDED FINAL ORDER AUTHORIZING THE USE OF CASH COLLATERAL, PURSUANT TO SECTIONS 105, 361 AND 363 OF THE BANKRUPTCY** on all of the parties to this cause through the Court's CM/ECF system in accordance with Local Rule 5005-1 as follows:

| | |
|---|---|
| Andrew T. Houston, Esq.<br>Hamilton Moon Stephens Steele & Martin<br>201 South College Street, Suite 2020<br>Charlotte, North Carolina 28244 | Travis W. Moon, Esq.<br>Hamilton Moon Stephens Steele & Martin<br>201 South College Street, Suite 2020<br>Charlotte, North Carolina 28244 |
| William L. Esser IV, Esq.<br>Parker Poe Adams & Bernstein, LLP<br>401 South Tryon Street, Suite 3000<br>Charlotte, North Carolina 28202 | Bradley E. Pearce, Esq.<br>Katten Muchin Rosenman LLP<br>550 South Tryon Street, Suite 2900<br>Charlotte, North Carolina 28202 |
| Louis G. Spencer, Esq.<br>McNair Law Firm, P.A.<br>301 South Tryon Street, Suite 1615<br>Charlotte, North Carolina 28202 | Joe M. Lozano Jr., Esq.<br>Brice, Vander Linden & Wernick, P.C.<br>9441 LBJ Freeway, Suite 350<br>Dallas, Texas 75243 |
| Hillary Brodgers Crabtree, Esq.<br>Moore & Van Allen, PLLC<br>100 North Tryon Street, Floor 47<br>Charlotte, North Carolina 28502-4003 | U.S. Bankruptcy Administrator<br>402 West Trade Street, Suite 200<br>Charlotte, North Carolina 28202 |

This the 9th day of February, 2011.

    /s/ Alan D. McInnes
Alan D. McInnes. (NC Bar No. 20938)
Kilpatrick Townsend & Stockton LLP
3737 Glenwood Avenue Suite 400
Raleigh, NC  27612
Telephone:  (919) 420-1700
Facsimile:  (919) 420-1800
Email: amcinnes@kilpatricktownsend.com
*Attorneys for CBA-Mezzanine Capital Finance, LLC, 1230 Overbrook Drive Holdings, LLC, U.S. Bank National Association (A and B Noteholder)*

US2008 2275707.11