FILED & JUDGMENT ENTERED
Steven T. Salata

Mar 16 2011

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

George R. Hodges
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

In re:                                                )
                                                      )  Chapter 11
RAYMOND AND DIANE FARMER, et al.,                     )  Case No. 10-40269
                                                      )
                                                      )
                    Debtors.                          )

### CONSENT ORDER RESOLVING THE PALMETTO BANK'S MOTION FOR RELIEF FROM STAY

This matter is before the Court upon the motion (the "Motion") [Docket no. 358] of The Palmetto Bank ("Palmetto") seeking relief from the automatic stay with regard to the following real properties: (a) Wildewood Apartments; (b) Meadow Green Apartments; (c) East Ridge Apartments; (d) Addison Townhomes (collectively, the "Apartment Properties") and (e) office / warehouse plus vacant land located at 174/220 Edward Street, Ext., Rutherfordton, Rutherford County (collectively, the "Office/Warehouse"). The Motion also sought relief from stay with regard to certain insurance proceeds and other cash collateral held by the Debtors. The Debtors

filed an objection to the Motion. [Docket no. 372] At the hearing on the Motion held on March 1, 2011, the parties announced to the Court that they had consensually resolved the Motion. Based upon the consent of the parties, the background of this case, and the hearing on this matter, the Court finds good cause for granting the Motion on the terms set forth below.

## FINDINGS OF FACT

1. The background facts regarding the Debtors' pre-petition transfers of assets are set forth in paragraphs 2, 3, 7 and 8 of the Court's May 28, 2010 Order Resolving Motion of the Palmetto Bank for a Determination that the Debtors are Subject to Various Provisions of the Bankruptcy Code Relating to Single Asset Real Estate and Those Applicable to Corporate Entities [Docket no. 104] (the "SARE Order"). The Court incorporates the facts set forth in paragraphs 2, 3, 7 and 8 of the SARE Order into this order by reference.[1]

2. After the Petition Date, the Debtors received insurance checks for hail damage caused to East Ridge Apartments, Wildewood Apartments and Meadow Green Apartments (the "Insurance Funds"). The Insurance Funds total no less than $350,000. The checks from the insurance company were made jointly payable to Palmetto and one or more of the Debtors or Entities, and constitute cash collateral of Palmetto. Upon agreement of the parties, the checks were deposited into the trust account of the Debtors' counsel, subject to disposition on further court order.

3. The Debtors filed a First Amended Plan of Reorganization and First Amended Joint Disclosure Statement (the "Joint Disclosure Statement") on November 15, 2010. The hearing on approval of the Joint Disclosure Statement was held on December 15, 2010.

4. The Court entered an order denying the approval of the Disclosure Statement on January 6, 2011 (the "Joint Disclosure Statement Order"). [Docket no. 322].

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the SARE Order.

5.      The Debtors filed an appeal of the Joint Disclosure Statement Order and obtained a temporary stay of the Joint Disclosure Statement Order from the District Court. On February 9, 2011, Judge Mullen set aside the temporary stay and denied the Debtors' motion for a stay pending appeal.

## CONCLUSIONS OF LAW

6.      The Motion is GRANTED, subject to the provisions described below.

7.      Upon entry of this Order, the Debtors have agreed to and shall immediately pay the Insurance Proceeds (and any other insurance proceeds for items other than hail damage) to Palmetto or its designee. The Debtors have further agreed to and shall immediately provide Palmetto with copies of all documents relating to the Insurance Proceeds, specifically including all correspondence with the insurance company regarding the Insurance Proceeds and all documents regarding further proceeds which may be available in connection with the hail damage caused to East Ridge Apartments, Wildewood Apartments and Meadow Green Apartments.

8.      Palmetto is GRANTED immediate relief from stay to exercise any and all state law remedies it has with regard to the Apartment Properties and the Office/Warehouse, subject to the limitations set forth in paragraph 12 below.

9.      The Debtors will pay Palmetto adequate protection payments for the month of March 2011 in the same manner as they have been paying adequate protection payments based on the most recent adequate protection Order entered by the Court. After turnover of the management of the Apartment Properties as set forth below, the Debtors will make adequate protection payments for the Office/Warehouse at the current monthly payment until such time as the Debtors commence making payments on a restructured debt for the Office/Warehouse (as discussed in Section 13(e) below) or

3

until Palmetto commences the exercise of its state law remedies with respect to the Office/Warehouse.

    10. The Debtors shall be permitted to continue to manage the Apartment Properties through the end of March 2011, subject to the existing cash collateral orders entered by the Court. [Docket Nos. 75, 145]. No later than April 1, 2011, the Debtors shall turn over management and control of the Apartment Properties to a third-party property manager designated by Palmetto. The Debtors shall turn over all relevant information and personal property related to the Apartment Properties, including without limitation, all documents, records, keys, leases, security codes, vendor contacts, current vendor invoices, and insurance policies. In addition, the Debtors shall turn over all tenant security deposits and escrowed tax funds to Palmetto or its designee. The Debtors shall specifically turnover to Palmetto or its designee all rents from the Apartment Properties for the month of April 2011 which may have been collected by the Debtors prior to turnover of the Apartment Properties.

    11. After the Apartment Properties are turned over to a third-party manager, Palmetto and the Debtors agree that all of the third-party manager's compensation and expenses shall be paid by the revenues generated by the Apartment Properties, provided however, that if such revenues are insufficient then Palmetto shall pay the third-party property manager for all sums due and owing to the third-party property manager. If a third-party property manager requires an executed management agreement to manage the Apartment Properties, the Debtors may execute such an agreement, but shall have no liability under such agreement. The Debtors and Palmetto shall notify any such property manager regarding this provision of the Order, and the terms of this section shall be specifically incorporated into any such agreement. The Debtors shall have no liability for any administrative expense claims asserted by the third-party property manager,

4

and shall not have any liability caused by, arising out of, or resulting from any negligent act, omission or failure to perform any obligation by the third-party manager or its employees or subcontractors.

12. Notwithstanding the grant of relief from stay set forth above, Palmetto has agreed not to exercise its state law remedies with regard to the Apartment Properties and the Office/Warehouse (without consent of the Debtors or further order of this Court) provided that the Debtors timely meet each of the following deadlines (the "Deadlines"):

(a) Timely comply with all provisions of this Order, including turnover of the Insurance Proceeds and turnover of the management of the Apartment Properties;

(b) On or before March 15, 2011, file a Chapter 11 plan of reorganization and related disclosure statement (the "Revised Plan") which is reasonably acceptable in form and substance to Palmetto, and which provides among other things for (i) 363 bankruptcy sales of the Apartment Properties; and (ii) a restructure of the existing Palmetto debt on the Office / Warehouse (all on terms more fully described below);

(c) On or before April 29, 2011, obtain confirmation of the Revised Plan, provided however, that nothing construed herein shall require the confirmation order to be entered on or before April 29, 2011; and

(d) On or before May 15, 2011, hold and consummate 363 sales of the Apartment Properties.

13. The terms of the Revised Plan will include each of the following (among other things):

(a) The Apartment Properties shall be sold through section 363 sales;

5

(b) Palmetto shall have the right to credit bid at the section 363 sales up to the full amount of its debt;

(c) Palmetto will have allowed secured claims with respect to each of the Apartment Properties equal to the appraised value of the real property (as set forth in Palmetto's appraisals), plus the Insurance Proceeds attributable to that property, if any, and the amount of any rents held by the Debtor over and above the budgeted monthly cash flow for that property, less the amount of the secured tax claims related to each property (the "Allowed Secured Claims");

(d) In conjunction with the section 363 bankruptcy sales, the Debtors shall assume and assign to any winning bidder at the sale such executory contracts and unexpired leases as the winning bidder (in its sole and absolute discretion) deems appropriate including, without limitation, any maintenance/service contracts and tenant leases;

(e) Upon confirmation of the Revised Plan, title to the Office/Warehouse shall re-vest in the names of Joshua and Andrea Farmer and Ray and Diane Farmer. Palmetto shall have an allowed secured claim in the amount of $611,000 secured by the Office/Warehouse. Monthly payments shall commence within thirty (30) days of the effective date of the Plan at the fixed rate of interest of seven percent (7.00%), with the principal balance of the restructured loan amortized over a period of twenty-five (25) years. The restructured loan will mature three (3) years from the effective date of the Plan; which effective date shall be no later than thirty (30) days after plan confirmation. The Debtors shall execute a promissory note and such other loan documents reasonably requested by Palmetto to evidence the restructured debt.

14. Upon confirmation of the Revised Plan and the final completion of the section 363 sales contemplated herein (including the assumption and assignment of any related contracts or leases), the Debtors will release any and all claims that any of them may have, personally or derivatively, against Palmetto, Palmetto's affiliates, and their respective owners, officers, managers, directors, employees and agents.

15. Upon confirmation of the Revised Plan and the final completion of the section 363 sales contemplated herein (including the assumption and assignment of any related contracts or leases), Palmetto will release any and all claims it may have, personally or derivatively, against the Debtors, the Entities, and their respective owners, officers, managers, directors, employees and agents. Without limiting the generality of the foregoing, Palmetto will release all claims against the Debtors and the Entities arising from: (i) deficiency claims against the Entities; (ii) guarantees executed by one or more of the Debtors or Entities, and (iii) those arising under Chapter 5 of the Bankruptcy Code. Palmetto will waive a pro rata distribution of the Debtors' "projected disposable income" as such term is defined under section 1129(a)(15) of the Bankruptcy Code. Provided however, that nothing herein shall be construed as a waiver of Palmetto's prospective rights with regard to the newly restructured debt on the Office/Warehouse.

16. If the Debtors comply with all other terms set forth above, Palmetto will support the Plan and vote its claim(s) in favor of the Plan.

17. Upon confirmation of the Revised Plan, Palmetto shall not move to modify or revoke the confirmed plan of reorganization under sections 1127, 1144 or any other similar provision of the Bankruptcy Code or Bankruptcy Rules.

18. Upon entry of this Order, Palmetto shall be deemed to have withdrawn its participation in the Joint Motion to Prohibit the Debtors' Use of Cash Collateral. [Docket No. 352].

19. The Debtors and Palmetto agree that the monthly professional fee carveout for each of the Apartment Properties shall terminate at the end of March 2011. To the extent any excess funds remain from the professional fee carveout which are attributable to the Apartment Properties, such funds shall also be turned over to Palmetto or its designee.

20. The Debtors and Palmetto agree that the Debtors may withhold from turnover of cash collateral a sufficient amount to pay the pro-rata share attributable to the Apartment Properties and the Office/Warehouse of the anticipated Bankruptcy Administrator Quarterly Fees due through the end of June 2011. In the event the fees withheld by the Debtor under this paragraph exceed the amount of quarterly fees actually paid for the second quarter of 2011, then the Debtors shall remit said funds to Palmetto or its designee immediately.

21. To the extent applicable, the Debtors agree that any prepaid obligations of the Debtors related to the Apartment Properties (e.g., prepaid insurance or service contracts) shall inure to the benefit of Palmetto, and the Debtors will not seek a refund of any such prepaid obligations. To the extent the Debtors have accepted prepayment of any leases or other amounts due to the Debtors and attributable to the Apartment Properties, they shall turnover such amounts to Palmetto or its designee on or before April 1, 2011.

22. Upon entry of this Order, the Farmers shall dismiss the appeal that is currently pending in the United States District Court for the Western District of North Carolina and captioned *Farmer v. Palmetto Bank et al.*, case no. 11-CV-36.

23. Notwithstanding section 502(j) of the Bankruptcy Code, no order of this Court and nothing contained in any chapter 11 plan confirmed in the bankruptcy case or any order of this Court confirming such plan or otherwise shall conflict with or derogate from the provisions of this Order, which constitutes the entire agreement of the Debtors and Palmetto. The provisions of the agreement between the Debtors and Palmetto are non-severable and mutually dependent.

24. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

25. Notwithstanding Bankruptcy Rule 4001(a)(3), this Order shall be effective and enforceable immediately upon entry.

CONSENTED AND AGREED TO BY:

/s/ William L. Esser IV
William L. Esser IV (N.C. Bar no. 29201)
Ashley A. Edwards (N.C. Bar. no. 40695)
Parker, Poe, Adams & Bernstein L.L.P.
401 South Tryon Street, Suite 3000
Charlotte, North Carolina  28202
Telephone:  (704) 372-9000
Facsimile:   (704) 334-4706
Attorneys for Palmetto Bank


/s/ Andrew T. Houston
Andrew T. Houston
Hamilton Moon Stephens Steele & Martin
201 South College Street, Suite 2020
Charlotte, North Carolina 28244
Phone: (704) 227-1072
Email: ahouston@lawhms.com
Attorney for the Debtors


This Order has been signed electronically.         United States Bankruptcy Court
The judge's signature and court's seal
appear at the top of the Order.

9