FILED & JUDGMENT ENTERED
Steven T. Salata
Mar 23 2011
Clerk, U.S. Bankruptcy Court
Western District of North Carolina

George R. Hodges
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

In re: )
) Chapter 11
**RAYMOND AND DIANE FARMER**, et al., ) Case No. 10-40269
)
)
Debtors. )

**CONSENT ORDER RESOLVING FIRST NATIONAL BANK OF THE SOUTH'S MOTION FOR RELIEF FROM STAY**

This matter is before the Court upon the motion (the "Motion") [Docket no. 368] of First National Bank of the South or its successor or assign (collectively, "First National") seeking relief from the automatic stay with regard to the Georgetown Village Apartments (the "Property").[1] Attached hereto as Exhibit A is a true and correct copy of the description of the Property.

[1] Counsel for First National has represented to counsel for the Debtors and provided certain documents evidencing that the FDIC as Receiver for First National Bank of the South has assigned the loan which is secured by an interest

The Motion also sought relief from stay with regard to certain insurance proceeds and other cash collateral held by the Debtors. The Debtors filed an objection to the Motion [Docket no. 373]. At the hearing on the Motion held on March 1, 2011, the parties announced to the Court that they were close to consensually resolving the Motion. Based upon the consent of the parties, the background of this case, and the hearing on this matter, the Motion is hereby resolved on the terms set forth below.

**FINDINGS OF FACT**

1. The background facts regarding the Entities and the Debtors' pre-petition transfers of assets are set forth in paragraphs 2, 3, 7 and 8 of the Court's May 28, 2010 Order Resolving Motion of the Palmetto Bank for a Determination that the Debtors are Subject to Various Provisions of the Bankruptcy Code Relating to Single Asset Real Estate and Those Applicable to Corporate Entities [Docket no. 104] (the "SARE Order"). The Court incorporates paragraphs 2, 3, 7 and 8 of the SARE Order into this order by reference.[2]

2. After the Petition Date, the Debtors received insurance checks for hail damage sustained to the Property. The checks from the insurance company were made payable to the Debtors and constitute cash collateral of First National. The checks were deposited into an account maintained by the Debtors.

3. The Debtors filed a First Amended Plan of Reorganization and First Amended Joint Disclosure Statement (the "Joint Disclosure Statement") on November 15, 2010. The hearing on approval of the Joint Disclosure Statement was held on December 15, 2010.

4. The Court entered an order denying the approval of the Disclosure Statement on January 6, 2011 (the "Joint Disclosure Statement Order") [Docket no. 322].

---

in the Property to NAFH National Bank. For purposes of convenience, this order refers to the creditor as "First National."

[2] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the SARE Order.

5. The Debtors filed an appeal of the Joint Disclosure Statement Order and obtained a temporary stay of the Joint Disclosure Statement Order from the District Court. On February 9, 2011, Judge Mullen set aside the temporary stay and denied the Debtors' motion for a stay pending appeal.

**CONCLUSIONS OF LAW**

6. The Motion is GRANTED, subject to the provisions described below.

7. The Debtors have agreed to make the Insurance Proceeds available to First National immediately to repair damage to the Property sustained during the pre-petition hail storm. First National will select a contractor after soliciting bids from at least two licensed contractors not affiliated with the Debtors or First National. The Insurance Proceeds will be held by Debtors' counsel and will be disbursed upon receipt of written draw requests approved by First National. Upon entry of this Order, the Debtors have further agreed to immediately provide First National with copies of all documents relating to the Insurance Proceeds, specifically including all correspondence with the insurance company regarding the Insurance Proceeds and all documents regarding further proceeds which may be available in connection with the hail damage caused to the Property.

8. First National is GRANTED immediate relief from stay to exercise any and all state law remedies it has with regard to the Property, subject to the limitations set forth in paragraph 13 below.

9. The Debtors will pay First National adequate protection payments for the months of March 2011 and April 2011 in the same manner as they have been paying adequate protection payments based on the most recent adequate protection Order entered by the Court.

10. The Debtors shall be permitted to continue to manage the Property until May 15, 2011, subject to the existing cash collateral orders entered by the Court [Docket Nos. 75, 145]. To the extent applicable, the Debtors will seek First National's consent pursuant to 11 U.S.C. §363 prior to exceeding the cash collateral budget. First National hereby consents to allow the Debtors to exceed the cash collateral budget in April to pay salaries in the amount of $6,500.

11. No later than May 16, 2011, the Debtors shall turn over management and control of the Property to a third-party property manager designated by First National. The Debtors shall also turn over all remaining funds in the Debtors' operating account related to the Property. Next, the Debtors shall turn over the following items and personal property related to the Property: all documents, records, keys, leases, security codes, vendor contacts, current vendor invoices, and insurance policies. The Debtors shall also turn over all tenant security deposits and escrowed tax funds.

12. To the extent applicable, after the Property is turned over to a third-party manager, First National and the Debtors agree that all of the third-party manager's compensation and expenses shall be paid by the revenues generated by the Property, provided however, that if such revenues are insufficient then First National shall pay the third-party property manager for all sums due and owing to the third-party property manager. First National hereby agrees to indemnify and hold harmless the Debtors and their respective estates from: (a) all administrative expense claims asserted by the third-party manager, and (b) any and all liability, claims, suits, losses, costs and legal fees caused by, arising out of, or resulting from any negligent act, omission or failure to perform any obligation by the third-party manager or its employees or subcontractors.

13. Notwithstanding the grant of relief from stay set forth above, First National has agreed not to exercise its state law remedies with regard to the Property (without consent of the Debtors or further order of this Court) provided that the Debtors timely meet each of the following deadlines (the "Deadlines"):

(a) Timely comply with all provisions of this Order;

(b) On or before March 18, 2011, file a Chapter 11 plan of reorganization and related disclosure statement (the "Revised Plan") which is reasonably acceptable in form and substance to First National, and which provides for a section 363 bankruptcy sale of the Property;

(c) On or before April 29, 2011, obtain confirmation of the Revised Plan, provided however, that nothing construed herein shall require the confirmation order to be entered on or before April 29, 2011; and

(d) On or before May 15, 2011, hold and consummate a section 363 sale of the Property.

14. The terms of the Revised Plan will include each of the following:

(a) The Property shall be sold through a section 363 sale;

(b) First National shall have the right to credit bid at the section 363 sale up to the full amount of its debt;

(c) First National will have an allowed secured claim with respect to the Property equal to the appraised value of the real property (as set forth in Debtors' appraisal), plus the Insurance Proceeds and the amount of any rents held by the Debtor over and above the budgeted monthly cash flow for that property, less the amount of the secured tax

claims related to the Property to the extent the taxes remain unpaid (the "Allowed Secured Claim");

(d) First National shall have an allowed unsecured claim for the difference between the full amount of its debt and the Allowed Secured Claim;

(e) Pursuant to section 365 of the Bankruptcy Code, the Debtors shall assume and assign to First National or its designee such executory contracts and unexpired leases as First National and Debtors deem appropriate including, without limitation, any maintenance/service contracts and tenant leases;

15. If the Debtors comply with all other terms set forth above, First National will support the Plan and vote its claim(s) in favor of the Plan.

16. Upon confirmation of the Revised Plan, First National shall not move to modify or revoke the confirmed plan of reorganization under Sections 1127, 1114 or any other similar provision of the Bankruptcy Code or Bankruptcy Rules.

17. Upon entry of this Order, First National shall be deemed to have withdrawn its participation in the Joint Motion to Prohibit the Debtors' Use of Cash Collateral [Docket No. 352].

18. The Debtors and First National agree that the monthly professional fee carveout for the Property shall terminate at the end of May 2011.

19. The Debtors and First National agree that the Debtors may withhold from turnover of cash collateral a sufficient amount to pay the anticipated Bankruptcy Administrator Quarterly Fees due through the end of June 2011. In the event the fees withheld by the Debtor under this paragraph exceed the amount of quarterly fees actually paid for the second quarter of 2011, then the Debtors shall remit said funds to First National or its designee immediately.

20. Upon entry of this Order, the Farmers shall dismiss the appeal that is currently pending in the United States District Court for the Western District of North Carolina and captioned *Farmer v. Palmetto Bank et al.*, case no. 11-CV-36.

21. In the event the individual Debtors are not discharged, then First National will retain all rights and remedies that may exist under applicable state law.

22. Notwithstanding section 502(j) of the Bankruptcy Code, no order of this Court and nothing contained in any chapter 11 plan confirmed in the bankruptcy case or any order of this Court confirming such plan or otherwise shall conflict with or derogate from the provisions of this Order, which constitutes the entire agreement of the Debtors and First National. The provisions of the agreement between the Debtors and First National are non-severable and mutually dependent.

23. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

24. Notwithstanding Bankruptcy Rule 4001(a)(3), this Order shall be effective and enforceable immediately upon entry.

CONSENTED AND AGREED TO BY:

/s/ Louis Spencer
Louis Spencer
McNair Law Firm, P.A.
301 South Tryon Street, Suite 1615
Charlotte, North Carolina  28282
Telephone: (704) 347-1170
Facsimile:   (704) 347-4467
Attorney for First National Bank of the South

/s/ Andrew T. Houston
Andrew T. Houston
Hamilton Moon Stephens Steele & Martin
201 South College Street, Suite 2020
Charlotte, North Carolina 28244
Phone: (704) 227-1072
Email: ahouston@lawhms.com
Attorney for the Debtors

This Order has been signed electronically. The judge's signature and court's seal appear at the top of the Order.

United States Bankruptcy Court

Exhibit "A"

All that certain piece, parcel or tract of land, with all improvements thereon, lying, situate and being in the State of South Carolina, City and County of Spartanburg, on the south side of Reidville Road containing 4.18 acres, more or less, as shown on a survey entitled "ALTA/ACSM Land Title Survey for First American Title Insurance Company Showing Georgetown Village Apartments" prepared by Gramling Brothers Surveying, Inc., dated January 23, 1998 and recorded March 3, 2008 in Plat Book 162 at Page 801 in the Office of the Register of Deeds for Spartanburg County. For a more accurate and complete description, reference is hereby made to the aforesaid plat. Said property is also shown on a survey prepared for Georgetown Village Associates dated April 29, 1964 and recorded in Plat Book 48 at Page 34 in the Office of the Register of Deeds for Spartanburg County.

This being the same property conveyed to Georgetown Village Apartments, LLC by deed of GTV Investors, LLC dated September 23, 2008 to be recorded in the Office of the Register of Deeds for Spartanburg County.