FILED & JUDGMENT ENTERED
Steven T. Salata

Apr 06 2011

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
George R. Hodges
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **JOSHUA AND ANDREA FARMER,** | **Case No. 10-40269** |
| Debtors. | |
| **In re:** | **Chapter 11** |
| **RAYMOND AND DIANE FARMER,** | **Case No. 10-40270** |
| Debtors. | |

**CONSENT ORDER RESOLVING MOTION FOR RELIEF FROM STAY**

This matter is before the Court upon the motion (the "Motion") [Docket no. 194] of 1230 Overbrook Drive Holdings, LLC ("Note A Holder") and CBA-Mezzanine Capital Finance, LLC ("Note B Holder", collectively with Note A Holder, the "Gaffney Noteholders") seeking relief from the automatic stay with regard to Creekside at Wellington Apartments and Magnolia Ridge Apartments (the "Properties"). The Debtors filed two objections to the Motion. [Docket nos. 200, 375]. At the hearings on the Motion held on March 1, 2011 and March 10, 2011, the parties

{00238859.DOC V.3 F130.017746;}

announced to the Court that they had consensually resolved the Motion. Based upon the consent of the parties, the background of this case, and the hearing on this matter, the Motion is hereby resolved on the terms set forth below.

## FINDINGS OF FACT

1. The background facts regarding the Entities and the Debtors' pre-petition transfers of assets are set forth in paragraphs 2, 3, 7 and 8 of the Court's May 28, 2010 Order Resolving Motion of the Palmetto Bank for a Determination that the Debtors are Subject to Various Provisions of the Bankruptcy Code Relating to Single Asset Real Estate and Those Applicable to Corporate Entities [Docket no. 104] (the "SARE Order"). The Court incorporates paragraphs 2, 3, 7 and 8 of the SARE Order into this order by reference.[1]

2. After the Petition Date, the Debtors asserted claim(s) against the insurance carrier maintaining coverage on the Properties arising out of hail damage to the Properties (the "Insurance Claim"). The Gaffney Noteholders own or have a security interest in any proceeds paid arising out of the Insurance Claim.

3. The Debtors filed a First Amended Plan of Reorganization and First Amended Joint Disclosure Statement (the "Joint Disclosure Statement") on November 15, 2010. The hearing on approval of the Joint Disclosure Statement was held on December 15, 2010.

4. The Court entered an order denying the approval of the Disclosure Statement on January 6, 2011 (the "Joint Disclosure Statement Order") [Docket no. 322].

5. The Debtors filed an appeal of the Joint Disclosure Statement Order and obtained a temporary stay of the Joint Disclosure Statement Order from the District Court. On February 9, 2011, Judge Mullen set aside the temporary stay and denied the Debtors' motion for a stay pending appeal.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the SARE Order.

## CONCLUSIONS OF LAW

6. The Motion is GRANTED, and the Gaffney Noteholders shall have immediate relief from stay to exercise any and all state law remedies they have with regard to the Properties, subject to the limitations set forth in paragraph 11 below.

7. The Debtors will pay Gaffney Noteholders adequate protection payments for the month of March 2011, in the same manner as they have been paying adequate protection payments based on the most recent adequate protection Order entered by the Court.

8. The Debtors shall be permitted to continue to manage the Properties through the end of March 2011, subject to the existing cash collateral orders entered by the Court [Docket Nos. 75, 145]. No later than April 1, 2011, the Debtors shall turn over management and control of the Properties to Laramar Specialty Services, LLC (the "Custodian"). Within one (1) week from the date of entry of this Order, the Debtors will also turnover all rents collected from the Properties for the month of April, 2011, which may have been prepaid or collected by the Debtors prior to turnover of the Properties. The Debtors shall turn over all relevant information and personal property related to the Properties including, without limitation, the following: all documents, records, keys, leases, security codes, vendor contacts, current vendor invoices, and insurance policies.

9. Further, the Debtors will turnover all tenant security deposits and escrowed tax funds. In addition to and without limitation to anything set forth above, the Debtors will turnover to Gaffney Noteholders the amount of $334,394.10. Said funds represent the amounts that the Debtors received from Easlan Management Company as a result of the Court's Order Directing the Custodian to Turnover Property, entered on June 3, 2010 [Docket no. 110]. The Custodian, with the Gaffney Noteholders' consent, may negotiate a resolution of the Insurance

Claim and upon such resolution may remit such insurance proceeds to Gaffney Noteholders. In connection with the Insurance Claim, the insurance carrier is authorized to issue any such checks payable to the Gaffney Noteholders (or its special servicer or master servicer if requested by the Gaffney Noteholders) without further authorization of this Court or consent of the Debtors.

10. After the Properties are turned over to the Custodian, Gaffney Noteholders and the Debtors agree that all of Custodian's compensation and expenses shall be paid by the revenues generated by the Properties, provided however, that if such revenues are insufficient then Gaffney Noteholders shall pay the Custodian for all sums due and owing to Custodian. The Debtors shall have no liability for any administrative expense claims asserted by the Custodian, and shall not have any liability caused by, arising out of, or resulting from any negligent act, omission or failure to perform any obligation by the Custodian or its employees or subcontractors.

11. Notwithstanding the grant of relief from stay set forth above, Gaffney Noteholders have agreed not to exercise their state law remedies with regard to the Properties (without consent of the Debtors or further order of this Court) provided that the Debtors comply with the conditions below (the "Stay Relief Events"):

(a) Timely comply with all provisions of this Order;

(b) On or before March 18, 2011, file a Chapter 11 plan of reorganization and related disclosure statement (the "Revised Plan"), which is reasonably acceptable in form and substance to Gaffney Noteholders, and which provides for a section 363 bankruptcy sale of the Properties;

(c) On or before April 29, 2011, obtain confirmation of the Revised Plan, provided however, that nothing construed herein shall require the confirmation order to be entered on or before April 29, 2011; and

(d) On or before May 15, 2011, hold and consummate section 363 sales of the Properties.

12. If the Gaffney Noteholders elect relief from the automatic stay upon the occurrence of a Stay Relief Event, then Gaffney Noteholders must file a notice with the Court and serve counsel for the Debtors and the bankruptcy administrator. Upon the expiration of five (5) days from the date of service of the stay relief notice, Gaffney Noteholders shall have automatic relief from the automatic stay unless otherwise ordered by the Court.

13. Upon the occurrence of a Stay Relief Event, the Debtors shall give Gaffney Noteholders and their counsel written notice of such Stay Relief Event; and Gaffney Noteholders, in their sole discretion, may file the notice set forth in section 12 above. If Gaffney Noteholders elect not to file such notice or deliver such instructions, such election will not be deemed to be an election of remedies or a waiver of Gaffney Noteholders' right to seek relief from stay.

14. The terms of the Revised Plan will include each of the following (among other things):

(a) The Properties shall be sold through a section 363 sale and will be offered for sale together;

(b) Gaffney Noteholders (or such entity owned by the Note A Holder or the Gaffney Noteholders, as applicable) shall have the right to credit bid at the section 363 sale up to the full amount of its debt;

(c) Pursuant to the section 363 sale, the Debtors will convey to the high bidder a special warranty deed conveying title to the Property;

(d) Gaffney Noteholders will have an allowed secured claim with respect to the Property equal to the appraised value of the real property (as set forth in Debtors' appraisals), plus the amount of any rents held by the Debtors over and above the budgeted monthly cash flow for that property, less the amount of the secured tax claims related to each property to the extent applicable (the "Allowed Secured Claim"), provided however, that the Gaffney Noteholders shall not be required to pay any amount to the Debtors in the event that the Gaffney Noteholders are the high bidders at the section 363 sale and their bid is in excess of the amount of the Allowed Secured Claim but equal to or less than the full amount of their debt;

(e) Pursuant to section 365 of the Bankruptcy Code, the Debtors shall assume and assign to the winning bidder at the section 363 sale(s) such executory contracts and unexpired leases as the winning bidder deems appropriate including, without limitation, any maintenance/service contracts and tenant leases.

15. Upon confirmation of the Revised Plan and section 363 sales contemplated herein, the Debtors will release any and all claims that any of them may have, personally or derivatively, against Gaffney Noteholders, their affiliates, special servicers, master servicers and their respective owners, officers, managers, directors, employees and agents.

16. Upon confirmation of the Revised Plan and section 363 sales contemplated herein, Gaffney Noteholders will release any and all claims they may have, personally or derivatively, against the Debtors, the Entities, and their respective owners, officers, managers, directors, employees and agents. Without limiting the generality of the foregoing, Gaffney Noteholders will

release all claims against the Debtors and the Entities arising from: (i) deficiency claims against the Entities; (ii) guarantees executed by one or more of the Debtors or Entities, and (iii) those arising under Chapter 5 of the Bankruptcy Code. Gaffney Noteholders will waive a pro rata distribution of the Debtors' "projected disposable income" as such term is defined under section 1129(a)(15) of the Bankruptcy Code.

17. If the Debtors comply with all other terms set forth above, Gaffney Noteholders will support the Plan and vote their claim(s) in favor of the Plan.

18. Upon confirmation of the Revised Plan, Gaffney Noteholders shall not move to modify or revoke the confirmed plan of reorganization under Sections 1127, 1114 or any other similar provision of the Bankruptcy Code or Bankruptcy Rules.

19. Upon entry of this Order, Gaffney Noteholders shall be deemed to have withdrawn its participation in the Joint Motion to Prohibit the Debtors' Use of Cash Collateral [Docket No. 352].

20. The Debtors and Gaffney Noteholders agree that the monthly professional fee carveout for each of the Properties shall terminate at the end of March 2011.

21. The Debtors and Gaffney Noteholders agree that the Debtors may withhold from turnover of cash collateral a sufficient amount to pay the pro rata share attributable to the Properties of the anticipated Bankruptcy Administrator Quarterly Fees due through the end of June 2011. In the event the fees withheld by the Debtors under this paragraph exceed the amount of quarterly fees actually paid for the second quarter of 2011, then the Debtors shall remit said funds to Gaffney Noteholders or their designee immediately.

22. As set forth in paragraph 15, the Debtors shall dismiss the adversary proceeding that is currently pending before the United States Bankruptcy Court for the Western District of North

Carolina and captioned *Farmer v. LB-UBS Commercial Mortgage Trust 2006-C7, et al.*, Case No. 10-3245.

23. Upon entry of this Order, the Farmers shall dismiss the appeal that is currently pending in the United States District Court for the Western District of North Carolina and captioned *Farmer v. Palmetto Bank et al.*, case no. 11-CV-36.

24. Upon confirmation of the Revised Plan, the Debtors shall turnover to Gaffney Noteholders the funds that the Debtors received from Easlan Management Company as a result of the Court's Order Directing Custodian to Turnover Property, which was entered by the Court on June 3, 2010 [Docket no. 110].

25. Notwithstanding section 502(j) of the Bankruptcy Code, no order of this Court and nothing contained in any chapter 11 plan confirmed in the bankruptcy case or any order of this Court confirming such plan or otherwise shall conflict with or derogate from the provisions of this Order, which constitutes the entire agreement of the Debtors and Gaffney Noteholders. The provisions of the agreement between the Debtors and Gaffney Noteholders are non-severable and mutually dependent.

26. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

27. Notwithstanding Bankruptcy Rule 4001(a)(3), this Order shall be effective and enforceable immediately upon entry.

28.  This Order shall be effective *nunc pro tunc* as of April 1, 2011.

CONSENTED AND AGREED TO BY:

/s/ James H. Pulliam
James H. Pulliam
Kilpatrick Stockton LLP
214 North Tryon Street, Suite 2500
Charlotte, NC  28202-2381
Telephone:  (704) 338-5288
Facsimile:  (704) 371-8311
Attorney for Timbercreek Apartments

/s/ Andrew T. Houston
Andrew T. Houston
Hamilton Moon Stephens Steele & Martin
201 South College Street, Suite 2020
Charlotte, North Carolina 28244
Phone: (704) 227-1072
Email: ahouston@lawhms.com
Attorney for the Debtors

This Order has been signed electronically.           United States Bankruptcy Court
The judge's signature and court's seal
appear at the top of the Order.