

FILED & JUDGMENT ENTERED
Steven T. Salata

May  31  2011

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
George R. Hodges
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **FARMER, RAYMOND AND DIANE** | Case No. 10-40269 |
| Debtors. | |
| In re: | Chapter 11 |
| **FARMER, JOSHUA AND ANDREA** | Case No. 10-40270 |
| Debtors. | Jointly Administered |

**ORDER (A) AUTHORIZING AND SCHEDULING AN AUCTION AT WHICH THE DEBTORS WILL SOLICIT THE HIGHEST OR BEST BIDS FOR THE SALE OF CERTAIN OF THEIR ASSETS; (B) APPROVING BID PROCEDURES GOVERNING THE PROPOSED SALE; (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF UNEXPIRED TENANT LEASES, (D) FIXING THE MANNER AND EXTENT OF NOTICE; AND (E) APPROVING THE SALE OF THE ASSETS TO THE PARTIES <u>SUBMITTING THE HIGHEST OR BEST BIDS</u>**

Upon consideration of the motion, dated April 15, 2011 (the "<u>Motion</u>[1]")(ECF Nos. 407, 408, 411), of the Debtors, for entry of (i) following an initial hearing, an order approving a sale and bidding process as hereinafter described to be used in connection with the proposed sale of the Assets identified on Exhibit A to this Order, and (ii) following a final hearing, an order approving the sale by the Debtors of the Assets to the Purchasers of the Assets in connection

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

MWH: 10006.001; 00001050.6

with the sale and bidding process; and an interim hearing regarding the Motion having been held on April 21, 2011 (the "Bid Procedures Hearing"); and based upon all of the evidence proffered or adduced at the Bid Procedures Hearing; and after consideration of any memoranda, objections, or other pleadings filed in connection with the Bid Procedures Hearing; and after consideration of the arguments of counsel made at the Bid Procedures Hearing; and upon the entire record of these cases; and it appearing that the approval of the Bid Procedures as requested in the Motion is in the best interests of the Debtors, their estates and creditors; and after due deliberation thereon; and good and sufficient cause appearing therefor, the Court makes the following:

**Findings of Fact**

1. On April 5, 2010 (the "Petition Date"), the Debtors filed two voluntary joint petitions for relief under chapter 11 of the Bankruptcy Code in this Court.

2. On May 10, 2010, the Court entered an Order administratively consolidating the Debtors' individual chapter 11 cases. The Debtors continue in possession of their properties and the management of their business and affairs as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee of unsecured creditors has been appointed in these chapter 11 cases.

3. Prior to March 31, 2010, Joshua Farmer and Raymond Farmer each owned one-half of the membership interests in the following limited liability companies: (i) Wildewood Apartments of Spartanburg, LLC, a South Carolina limited liability company; (ii) Meadow Green Apartments, LLC, a South Carolina limited liability company; (iii) East Ridge Apartments, LLC, a South Carolina limited liability company; (iv) Timbercreek Apartments, LLC, a South Carolina limited liability company; (v) Georgetown Village Apartments, LLC, a

South Carolina limited liability company; (vi) Gaffney Apartments, LLC, a South Carolina limited liability company; and (vii) Two Mile Properties, LLC, a North Carolina limited liability company (each an "Entity," and collectively, the "Entities").

4. Each Entity owned, among other things, certain real property and improvements, which are operated as apartment complexes and other rental properties (each a "Property," and collectively the "Properties"). The Entities derived substantially all of their revenues from rents related to the Properties. Joshua and Raymond Farmer are parties to numerous Tenant Leases related to the Properties (the "Tenant Leases"). The Debtors do not believe that there are any cure amounts owed by the Debtors as of the date of filing the Motion.

5. Various lenders (the "Senior Secured Creditors") who made loans to the Entities have properly perfected mortgages or deeds of trust encumbering one or more of the Properties. The Senior Secured Creditors also have properly perfected security interests in, among other things, the leases, rents and profits generated by the Properties.

6. On or about March 30, 2010, each Entity convened a meeting where it was determined, among other things, the following: (i) that each Entity would transfer all of the company's assets, including all personal property and real property to the members in a ratio equal to the members respective membership interests in exchange for the members assuming the liabilities of each Entity; and (ii) that each company would be dissolved pursuant to applicable state law.

7. The same day, each Entity executed: (i) a Consent Resolution authorizing that Entity to transfer all of the company's assets to Joshua Farmer and Raymond Farmer subject to all liens and encumbrances; and (ii) a Bill of Sale transferring all of the personal property to Joshua Farmer and Raymond Farmer.

8. On or about April 1, 2010, a deed was recorded in the appropriate county evidencing the transfers of the Properties from the Entities to Raymond Farmer and Joshua Farmer.

9. Each Entity was dissolved by filing either Articles of Dissolution (North Carolina) or Articles of Termination (South Carolina).

10. Attached hereto as Exhibit B is a chart identifying the ownership of each Property and the relevant Senior Secured Creditor associated with each Property.

11. After extensive negotiations with the Senior Secured Creditors during the course of these cases, the Debtors determined in the exercise of their business judgment that it would be in the best interest of their estates to conduct a sale and bidding process, pursuant to which certain of the Senior Secured Creditors would: (a) submit binding credit bids for the respective Assets that would serve as "floors" for other bidders at the Auction, (b) agree to waive unsecured deficiency claims against the Debtors and their respective estates; and (c) grant the Debtors certain other concessions such as the continued use of cash collateral to pay certain costs of administration. The terms of these agreements are set forth in a series of consent orders addressing relief from stay (Docket Nos. 389, 399, 405, and 406), and in the Debtors' second amended joint plan of reorganization and disclosure statement, which were filed with the Court on March 18, 2011 (Docket Nos. 390, 391).

## Conclusions of Law

A. The form and manner of notice of the Bid Procedures and the Bid Procedures Hearing shall be, and hereby are, approved as sufficient and adequate notice. No other or further notice in connection with the entry of this Order is or shall be required.

B. The Bid Procedures were proposed by the Debtors in good faith with the goal of maximizing the value of the Assets for the benefit of all creditors of their estates.

C. The Bid Procedures are fair and reasonable, are reasonably calculated to produce the best and highest offers for the Assets, and will confer actual benefits upon the Debtors' estates. The Bid Procedures represents an exercise of the Debtors' sound business judgment and will facilitate an orderly sale process.

D. Entry of this Order is in the best interests of the Debtors, their estates, and their creditors.

E. Entry of this Order is a condition precedent to closing the sales contemplated by the Motion.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is granted to the extent set forth in this Order. All objections to approval of the Bid Procedures that are not addressed in this Order are hereby overruled.

2. The Court hereby approves the following Starting Auction Bids:

| Assets for Sale | Senior Secured Creditor | Starting Auction Bid |
|---|---|---|
| Wildewood Apartments Assets | The Palmetto Bank | $6,300,000.00 |
| Meadow Green Apartments Assets | The Palmetto Bank | $1,830,000.00 |
| East Ridge Apartments Assets | The Palmetto Bank | $2,260,000.00 |
| Addison Townhomes Assets | The Palmetto Bank | $1,215,000.00 |
| Timbercreek Apartments Assets | Timbercreek Noteholders | $3,000,000.00 |
| Georgetown Village Apartments Assets | NAFH National Bank | $1,020,000.00 |
| The Gaffney Apartments Assets | Gaffney Noteholders | $3,990,000.00 |

3. In addition, the Court approves the following material terms and conditions of the proposed sale of Assets:

a. No Warranties – The Assets are sold "as is, where is" with no express or implied warranties;

b. <u>Form of Deed</u> – the Debtors will convey title to the Properties to the respective Purchasers by special warranty deed;

c. <u>Purchase Price</u> – the Assets will be sold to the bidder submitting the highest and best offers for the Assets;

d. <u>Assumed Liabilities</u> – the Purchaser will assume all post-closing liabilities under the relevant Tenant Leases, and post-closing liabilities related to or arising from the Assets;

e. <u>Cure Costs</u> – to the extent applicable, Purchaser(s) will be responsible for paying all cure amounts related to the Tenant Leases assumed by the Debtors and assigned to Purchasers;

f. <u>Postclosing Indemnification by Debtors</u> – none;

g. <u>Taxes</u> – the Purchasers shall be responsible for paying all outstanding ad valorem property taxes and personal property taxes related to the Properties and Assets and shall assume responsibility for paying all 2011 taxes; and

h. <u>Closing Costs</u> – all closing costs including, without limitation, title work, deed preparation, recording fees, and related costs will be paid by the Purchasers.

i. <u>Closing Date</u> — the closing of the sale of the Assets must take place on or before June 29, 2011.

4. The following "Bid Procedures" are hereby approved and shall be used in connection with the proposed sale of the Assets:

(i) <u>Initial Overbid</u>. Any third party (other than the Senior Secured Creditors) that is interested in acquiring the Assets must submit an "Initial Overbid" in conformity with the Bid Procedures by **not later than 5:00 p.m. local time in Charlotte, North Carolina on Friday, June 10, 2011** (the "Overbid Deadline"). Any such Initial Overbid must:

(a) Contain a signed definitive irrevocable offer to purchase with, at a minimum, the following requirements: (i) identifying specifically the Assets covered by the bid (a bidder may bid on all or certain of the Assets, but must submit separate bids for each set of Assets); (ii) having substantially identical terms and conditions as set forth in decretal paragraphs 2 and 3(a)-(i) above, except with higher and better consideration; (iii) containing terms and conditions otherwise no less favorable to the Debtors' estates than the terms and conditions set forth in decretal paragraphs 2 and 3(a)-(i) above; (iv) provide for a cash purchase price equal to or greater than the sum of (1) the relevant Starting Auction Bid for each set of Assets, plus (2) $25,000; (v) not be subject to any (1) financing contingency, (2) contingency relating to the completion of unperformed due diligence, or (3) contingency relating to the approval of the overbidder's board of directors or other internal approvals or consents; (vi) provide that the overbidder shall purchase all or substantially all of the relevant Assets; (vii) provide that the overbidder's offer is irrevocable until the closing if such bidder submits the Prevailing Bid (as defined below), and (viii) provide that the overbidder shall forfeit its Deposit (as defined below) in the event that it submits a Prevailing Bid as to a given

        set of assets and fails to close the purchase of those Assets in accordance with such bid, and (ix) provide that the bidder is ready, willing and able to close on the purchase no later than June 29, 2011;

    (b)    Include a cashiers' check in an amount equal to five percent (5%) of the purchase price set forth in the Initial Overbid (it being understood that the deposit may also be sent by wire transfer of immediately available funds) (in each case, a "<u>Deposit</u>");

    (c)    To the extent not previously provided to the Debtors, be accompanied by evidence satisfactory to the Debtors in their reasonable discretion (after consulting in good faith with the relevant Senior Secured Creditor) that the overbidder is willing, authorized, capable and qualified financially, legally and otherwise, of unconditionally performing all obligations contemplated herein in the event that it submits the Prevailing Bid at the Auction; and

    (d)    Be submitted to (i) counsel to the Debtors, Andrew T. Houston, Moon Wright & Houston, PLLC, 227 W. Trade Street, Suite 1800, Charlotte, NC 28202 (Facsimile: 704-944-0380), (ii) counsel to the relevant Senior Secured Creditor as set forth on Exhibit C to this Order, and (iii) the United States Bankruptcy Administrator, 402 W. Trade Street, Suite 200, Charlotte, North Carolina 28202, in each case so as to be received not later than the Overbid Deadline.

(ii)    <u>Auction</u>.  In the event that the Debtors timely receive conforming Initial Overbids from a prospective purchaser or purchasers as described above (a "Qualified Bidder"), then the Debtors will conduct an open auction with respect to the sale of the Assets on **Tuesday, June 14, 2011 beginning at 10:00 a.m.** local time, at the offices of Debtors' counsel, Moon Wright & Houston, PLLC, located at 227 West Trade Street, Suite 1800, Charlotte, North Carolina 28202 (the "<u>Auction</u>").  In order to participate in the Auction, each prospective purchaser shall be required to comply with the requirements of the Bid Procedures and to submit an Initial Overbid that is timely and that complies in all material respects with the Bid Procedures Order.  At the Auction, Qualified Bidders and the Senior Secured Creditor may submit successive bids **in increments of at least $25,000** greater than the prior bid for the purchase of the Assets until there is only one offer that the Debtors determine in conjunction with the relevant Senior Secured Creditor, subject to Court approval, is the highest or best offer for each set of Assets (the "Prevailing Bid"); <u>provided</u>, <u>however</u>, at the Auction, the Senior Secured Creditors shall be permitted to submit one or more successive Credit Bids for the purchase of the relevant Assets.  All bidding for the Assets will be concluded at the Auction and there will be no further bidding at the Sale Hearing.  If no conforming Initial Overbid from a Qualified Bidder shall have been received on a given set of Assets at or prior to the Overbid Deadline, then those Assets will not be included in the Auction and those Assets will be sold to the relevant Senior Secured Creditor free and clear of all liens, claims and encumbrances, provided however, that the Senior Secured Creditor shall be responsible for the payment of all real and personal property taxes related to the Property at closing.  In the event the Prevailing Bid for one or more of the sets of Assets is a cash bid, then that set of Assets will be sold free and clear of all liens, claims and encumbrances

pursuant to sections 105(a) and 363(f) of the Bankruptcy Code. Upon the closing of a cash sale, the Purchaser shall have and acquire good, valid and marketable title in and to each of the Assets, to the fullest extent permitted by applicable bankruptcy or non-bankruptcy law, free and clear of any and all liens, claims or encumbrances of any kind or nature whatsoever, except for any applicable assumed Tenant Leases, with all such liens, claims and encumbrances to attach to the net proceeds of the relevant sale of Assets in the order of their priority, with the same validity, force, and effect which they now have as against the specific Assets as set forth in the Debtors' second amended joint plan of reorganization; provided however, that the Purchaser shall be responsible for the payment of all real and personal property taxes related to the Property at closing, which cost shall be in addition to the prevailing bid amount. For the purpose of this section, the term "net proceeds" shall mean the gross sale proceeds minus the costs and expenses associated with closing the sale(s) of the Assets including, without limitation, any carveouts for professionals and any increase in quarterly fees payable under 28 U.S.C. §1930.

(iii) <u>Prevailing Bid</u>. In determining the Prevailing Bid, consideration will be given to, among other things: (a) the number, type and nature of any changes to the conditions set forth in decretal paragraphs 3(a)-(i) requested by each bidder; (b) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtors of such modifications or delay; (c) the total net consideration to be received by the Debtors; (d) the likelihood of the bidder's ability to close a transaction and the timing thereof; and (e) the net benefit to Debtors' estates. Only the Persons who submitted Initial Overbids and the Senior Secured Creditors may participate in the Auction. After the Auction has concluded, the Debtors shall present to the Court for consideration and approval at the Sale Hearing the Prevailing Bid(s) for the relevant Assets.

(iv) <u>Sale Hearing</u>. The Sale Hearing will be conducted at **10:00 a.m. local time, on Monday, June 20, 2011**, at the United States Bankruptcy Court, Charles R. Jonas Federal Building, 401 W. Trade Street, Courtroom 126, Charlotte, North Carolina, 28202, at which time the Debtors intend to present the Prevailing Bid(s) for approval by the Court pursuant to the provisions of Sections 105, 363(b), 363(f), 363(k) (if applicable), 363(m), 363(n), and 365 of the Bankruptcy Code. The Debtors shall be deemed to have accepted a bid only when the bid has been approved by the Court at the Sale Hearing.

(v) <u>Sale Implementation</u>. Following the approval of the Prevailing Bid at the Sale Hearing, the Debtors will be authorized and directed to take all commercially reasonable and necessary steps to complete and implement the transaction(s) contemplated by the Prevailing Bid, including (but not limited to) seeking entry of one or more Sale Orders. Except as otherwise mutually agreed by the Debtor, the Senior Secured Creditor and the holder of the Prevailing Bid, the closing on the sale of the assets shall occur no later than **June 29, 2011**.

(vi) <u>Defaulting Bidder</u>. In the event of a cash sale where the Prevailing Bidder for one or more of the sets of Assets is unable to close on the sale of the Assets on or before June 29, 2011, then that bidder shall forfeit its Deposit. In the event the Prevailing Bidder defaults, then the relevant Assets shall be sold to the second

highest bidder for the relevant Assets at the Auction whose bid shall remain open until the closing of the sale of Assets, provided however, that the second highest bidder shall have an additional fifteen (15) days from the date of written notice from the Debtors to close the sale of the Assets. The second highest bidder's Deposit shall be returned to that bidder upon the closing of the sale of Assets to the Prevailing Bidder.

5. Objections (if any) to approval of any Prevailing Bid or to approval of any proposed sale of the Assets shall be filed with the Bankruptcy Court on or before Friday, June 17, 2011, and heard at the Sale Hearing.

6. The failure of any third party to raise an objection as ordered and directed herein shall be deemed the consent of such party to the granting of the Motion and the sale and transfer of the Assets (including the assumption and assignment of Tenant Leases under the Prevailing Bid).

7. The Court hereby establishes the cure amounts related to the Tenant Leases as zero. This zero cure amount is binding on the counterpart to each Tenant Lease, and any tenant shall be forever barred from asserting against the Debtors any monetary or non-monetary default arising or incurred under any Tenant Lease, any actual pecuniary loss resulting from such default, or any other unpaid or unperformed obligation arising under such Tenant Lease.

8. The Debtor shall serve a copy of this Order as contemplated in the Motion.

| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of this Order. | United States Bankruptcy Court |
|---|---|

**EXHIBIT A**

| Assets for Sale[1] | Current Owner | Referred to as: |
|---|---|---|
| Wildewood Apartments, located at 350 Bryant Road, Spartanburg, S.C., together with all appliances, related personal property, all common area land and improvements, inventory, supplies, furniture, fixtures and equipment, accounts receivable, intellectual property, other real property, books and records, permits, licenses and other items presently used at the Property. The assets for sale do not include any cash, or any personal property owned now or previously by Two Mile Properties, LLC, which may be used at the Property. | Raymond and Joshua Farmer | "Wildewood Apartments Assets" |
| Meadow Green Apartments, located at 1504 Fernwood Glendale Road, Spartanburg, S.C., together with all appliances, related personal property, all common area land and improvements, inventory, supplies, furniture, fixtures and equipment, accounts receivable, intellectual property, other real property, books and records, permits, licenses and other items presently used at the Property. The assets for sale do not include any cash, or any personal property owned now or previously by Two Mile Properties, LLC, which may be used at the Property. | Raymond and Joshua Farmer | "Meadow Green Apartments Assets" |

---

[1] All Tenant Leases will be assigned to the Purchaser(s) of the relevant sets of Assets. All tenant security deposits currently held by the Debtors or third party property managers will be transferred to the respective Purchaser(s).

MWH: 10006.001; 00001244.3

| | | |
|---|---|---|
| East Ridge Apartments, located at 300 Regency Road, Spartanburg, S.C., together with all appliances, related personal property, all common area land and improvements, inventory, supplies, furniture, fixtures and equipment, accounts receivable, intellectual property, other real property, books and records, permits, licenses and other items presently used at the Property.  The assets for sale do not include any cash, or any personal property owned now or previously by Two Mile Properties, LLC, which may be used at the Property. | Raymond and Joshua Farmer | "East Ridge Apartments Assets" |
| Addison Townhomes, located at 104 Watson Road, Taylors, S.C., together with all appliances, related personal property, all common area land and improvements, inventory, supplies, furniture, fixtures and equipment, accounts receivable, intellectual property, other real property, books and records, permits, licenses and other items presently used at the Property.  The assets for sale do not include any cash, or any personal property owned now or previously by Two Mile Properties, LLC, which may be used at the Property. | Raymond and Joshua Farmer | "Addison Townhomes Assets" |
| Timbercreek Apartments, located at 501 Camelot Drive, Spartanburg, S.C., together with all appliances, related personal property, all common area land and improvements, inventory, supplies, furniture, fixtures and equipment, accounts receivable,  intellectual property, other real property, books and records, permits, licenses and | Raymond and Joshua Farmer | "Timbercreek Apartment Assets" |

| | | |
|---|---|---|
| other items presently used at the Property. The assets for sale do not include any cash, or any personal property owned now or previously by Two Mile Properties, LLC, which may be used at the Property. | | |
| Georgetown Village Apartments, located at 1421 John B. White Sr. Boulevard, Spartanburg, S.C., together with all appliances, related personal property, all common area land and improvements, inventory, supplies, furniture, fixtures and equipment, accounts receivable, insurance proceeds currently on hand together with any claim for additional proceeds arising from a pre-petition hail storm at the Property, intellectual property, other real property, books and records, permits, licenses and other items presently used at the Property. The assets for sale do not include any cash, or any personal property owned now or previously by Two Mile Properties, LLC, which may be used at the Property. | Raymond and Joshua Farmer | "Georgetown Village Apartments Assets" |
| The Gaffney Apartments consisting of: (i) Magnolia Ridge Apartments, located at 266 Goldmine Springs Road, Gaffney, S.C.; and (ii) Creekside at Wellington Apartments, 1230 Overbrook Drive, Gaffney, S.C., together with all appliances, related personal property, all common area land and improvements, inventory, supplies, furniture, fixtures and equipment, accounts receivable, intellectual property, other real property, books and records, permits, licenses and | Raymond and Joshua Farmer | "Gaffney Apartments Assets" |

| | | |
|---|---|---|
| other items presently used at the Properties.[2] The assets for sale do not include any cash, or any personal property owned now or previously by Two Mile Properties, LLC, which may be used at the Properties | | |

---

[2] The Gaffney Apartments Assets are packaged for sale together.

**EXHIBIT B**

| Properties for Sale | Former Owner | Current Owner | Senior Secured Creditor |
|---|---|---|---|
| Wildewood Apartments<br>350 Bryant Road<br>Spartanburg, S.C. | Wildewood Apartments of Spartanburg, LLC | Raymond and Joshua Farmer | The Palmetto Bank |
| Meadow Green Apartments<br>1504 Fernwood Glendale Road<br>Spartanburg, S.C. | Meadow Green Apartments, LLC | Raymond and Joshua Farmer | The Palmetto Bank |
| East Ridge Apartments<br>300 Regency Road<br>Spartanburg, S.C. | East Ridge Apartments, LLC | Raymond and Joshua Farmer | The Palmetto Bank |
| Addison Townhomes<br>104 Watson Road<br>Taylors, S.C. | Two Mile Properties, LLC | Raymond and Joshua Farmer | The Palmetto Bank |
| Timbercreek Apartments<br>501 Camelot Drive<br>Spartanburg, S.C. | Timbercreek Apartments, LLC | Raymond and Joshua Farmer | U.S. Bank National Association, as Trustee for the registered holders of ML-CFC Commercial Mortgage Trust 2007-8, Commercial Mortgage Pass-Through Certificates, Series 2007-8 ("Note A Holder") and U.S. Bank National Association as Trustee for the registered holders of Merrill Lynch Mortgage Investors, Inc. Commercial Mortgage Pass-Through Certificates Series 2007-C5 ("Note B Holder"; collectively with Note A Holder, the "Timbercreek Noteholders") |
| Georgetown Village Apartments<br>1421 John B. White Sr. Boulevard<br>Spartanburg, S.C. | Georgetown Village Apartments, LLC | Raymond and Joshua Farmer | NAFH National Bank |

MWH: 10006.001; 00001245.1

| | | | |
|---|---|---|---|
| The Gaffney Apartments consisting of:<br>(i) Magnolia Ridge Apartments<br>266 Goldmine Springs Road<br>Gaffney, S.C.; and<br>(ii) Creekside at Wellington Apartments<br>1230 Overbrook Drive, S.C. | Gaffney Apartments, LLC | Raymond and Joshua Farmer | 1230 Overbrook Drive Holdings, LLC ("Note A Holder") and CBA-Mezzanine Capital Finance, LLC ("Note B Holder", collectively with Note A Holder, the "Gaffney Noteholders") |

MWH: 10006.001; 00001245.1

**EXHIBIT C**

| Assets for Sale | Senior Secured Creditor | Notice to: |
|---|---|---|
| Wildewood Apartment Assets | The Palmetto Bank | William L. Esser IV<br>Parker Poe Adams & Bernstein LLP<br>Three Wachovia Center<br>401 South Tryon Street, Suite 3000<br>Charlotte, NC  28202<br>704.335.9507 |
| Meadow Green Apartments Assets | The Palmetto Bank | William L. Esser IV<br>Address above |
| East Ridge Apartments Assets | The Palmetto Bank | William L. Esser IV<br>Address above |
| Addison Townhomes Assets | The Palmetto Bank | William L. Esser IV<br>Address above |
| Timbercreek Apartment Assets | Timbercreek Noteholders | James H. Pulliam<br>Kilpatrick Townsend & Stockton LLP<br>214 North Tryon Street, Suite 2500<br>Charlotte, NC  28202-2381<br>704.338.5288 |
| Georgetown Village Apartments Assets | NAFH National Bank | Louis G. Spencer<br>McNair Law Firm<br>301 South Tryon Street<br>Suite 1615<br>Charlotte, NC  28282<br>704.347.1170 |
| Gaffney Apartments Assets | Gaffney Noteholders | James H. Pulliam<br>Address above |