

FILED & JUDGMENT ENTERED
Steven T. Salata

Jun 28 2011

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

George R. Hodges
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **FARMER, RAYMOND AND DIANE** | Case No. 10-40269 |
| Debtors. | |
| In re: | Chapter 11 |
| **FARMER, JOSHUA AND ANDREA** | Case No. 10-40270 |
| Debtors. | Jointly Administered |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365 OF THE BANKRUPTCY CODE (A) AUTHORIZING THE SALE OF ASSETS OF THE DEBTORS OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF UNEXPIRED TENANT LEASES; AND (D) GRANTING RELATED RELIEF**

Upon consideration of the motion, dated April 15, 2011 (the "Motion[1]")(ECF Nos. 407, 408, 411), of the Debtors, for entry of (i) following an initial hearing, an order approving a sale and bidding process to be used in connection with the proposed sale of the Assets identified on Exhibit A to this Order, and (ii) following a final hearing, an order approving the sale by the Debtors of the Assets to the Purchasers of the Assets in connection with the sale and bidding

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

MWH: 10006.001; 00001485.4

process; and an interim hearing regarding the Motion having been held on April 21, 2011 (the "Bid Procedures Hearing"); and the Court having held a final hearing on the Motion on June 20, 2011 (the "Sale Hearing"); and based upon all of the evidence proffered or adduced at the Bid Procedures Hearing and the Sale Hearing; and after consideration of any memoranda, objections, or other pleadings filed in connection with the Bid Procedures Hearing and Sale Hearing; and after consideration of the arguments of counsel made at the Bid Procedures Hearing and the Sale Hearing; and upon the entire record of these cases; and it appearing that the approval of the sale of the Assets free and clear of all liens, claims, encumbrances and interests as requested in the Motion is in the best interests of the Debtors, their estates and creditors; and after due deliberation thereon; and good and sufficient cause appearing therefor, the Court makes the following:

### **Findings of Fact**

1. On April 5, 2010 (the "Petition Date"), the Debtors filed two voluntary joint petitions for relief under chapter 11 of the Bankruptcy Code in this Court.

2. On May 10, 2010, the Court entered an Order administratively consolidating the Debtors' individual chapter 11 cases. The Debtors continue in possession of their properties and the management of their business and affairs as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee of unsecured creditors has been appointed in these chapter 11 cases.

3. Prior to March 31, 2010, Joshua Farmer and Raymond Farmer each owned one-half of the membership interests in the following limited liability companies: (i) Wildewood Apartments of Spartanburg, LLC, a South Carolina limited liability company; (ii) Meadow Green Apartments, LLC, a South Carolina limited liability company; (iii) East Ridge

Apartments, LLC, a South Carolina limited liability company; (iv) Timbercreek Apartments, LLC, a South Carolina limited liability company; (v) Georgetown Village Apartments, LLC, a South Carolina limited liability company; (vi) Gaffney Apartments, LLC, a South Carolina limited liability company; and (vii) Two Mile Properties, LLC, a North Carolina limited liability company (each an "Entity," and collectively, the "Entities").

4. Each Entity owned, among other things, certain real property and improvements, which are operated as apartment complexes and other rental properties (each a "Property," and collectively the "Properties"). The Entities derived substantially all of their revenues from rents related to the Properties. Joshua and Raymond Farmer are parties to numerous Tenant Leases related to the Properties (the "Tenant Leases"). The Debtors do not believe that there are any cure amounts owed by the Debtors as of the date of filing the Motion.

5. Various lenders (the "Senior Secured Creditors") who made loans to the Entities have properly perfected mortgages or deeds of trust encumbering one or more of the Properties. The Senior Secured Creditors also have properly perfected security interests in, among other things, the leases, rents and profits generated by the Properties.

6. On or about March 30, 2010, each Entity convened a meeting where it was determined, among other things, the following: (i) that each Entity would transfer all of the company's assets, including all personal property and real property to the members in a ratio equal to the members respective membership interests in exchange for the members assuming the liabilities of each Entity; and (ii) that each company would be dissolved pursuant to applicable state law.

7. The same day, each Entity executed: (i) a Consent Resolution authorizing that Entity to transfer all of the company's assets to Joshua Farmer and Raymond Farmer subject to

all liens and encumbrances; and (ii) a Bill of Sale transferring all of the personal property to Joshua Farmer and Raymond Farmer.

8. On or about April 1, 2010, a deed was recorded in the appropriate county evidencing the transfers of the Properties from the Entities to Raymond Farmer and Joshua Farmer.

9. Each Entity was dissolved by filing either Articles of Dissolution (North Carolina) or Articles of Termination (South Carolina).

10. Attached hereto as Exhibit B is a chart identifying the ownership of each Property and the relevant Senior Secured Creditor associated with each Property.

11. After extensive negotiations with the Senior Secured Creditors during the course of these cases, the Debtors determined in the exercise of their reasonable business judgment that it would be in the best interest of their estates to conduct a sale and bidding process, pursuant to which certain of the Senior Secured Creditors would: (a) submit binding credit bids for the respective Assets that would serve as "floors" for other bidders at the Auction, (b) agree to waive unsecured deficiency claims against the Debtors and their respective estates; and (c) grant the Debtors certain other concessions such as the continued use of cash collateral to pay certain costs of administration. The terms of these agreements are set forth in a series of consent orders addressing relief from stay (Docket Nos. 389, 399, 405, and 406), and in the Debtors' second amended joint plan of reorganization and disclosure statement, which were filed with the Court on March 18, 2011 (Docket Nos. 390, 391). The terms of the foregoing are incorporated by reference as if set forth fully herein.

12. On May 31, 2011, the Court entered an order approving the Bid Procedures, and authorizing the Debtors to conduct, and approving the terms and conditions of, an Auction to

consider higher or otherwise better offers for the Assets (the "Bid Procedures Order")(ECF No. 430). The Court incorporates the terms of the Bid Procedures Order by reference as if set forth fully herein.

13. Among other things, the Bid Procedures Order approved the following Starting Auction Bids for the Assets:

| Assets for Sale | Senior Secured Creditor | Starting Auction Bid |
|---|---|---|
| Wildewood Apartments Assets | The Palmetto Bank | $6,300,000.00 |
| Meadow Green Apartments Assets | The Palmetto Bank | $1,830,000.00 |
| East Ridge Apartments Assets | The Palmetto Bank | $2,260,000.00 |
| Addison Townhomes Assets | The Palmetto Bank | $1,215,000.00 |
| Timbercreek Apartments Assets | Timbercreek Noteholders | $3,000,000.00 |
| Georgetown Village Apartments Assets | NAFH National Bank | $1,020,000.00 |
| The Gaffney Apartments Assets | Gaffney Noteholders | $3,990,000.00 |

14. Further, the Court established the following schedule for conducting the Auction: i) the Overbid Deadline for a potential bidder to submit a qualifying Initial Overbid was 5:00 p.m. local time in Charlotte, North Carolina on Friday, June 10, 2011; ii) in the event the Debtors timely received conforming Initial Overbids prior to the Overbid Deadline, then the Debtors would conduct an auction with respect to the relevant Assets on June 14, 2011; and iii) the Court would conduct a Sale Hearing to approve the Prevailing Bids on June 20, 2011. *See* Bid Procedures Order, Decretal ¶4.

15. The Court also established June 17, 2011, as the deadline to file written objections to the approval of any Prevailing Bid or to the proposed sale of Assets. *See* Bid Procedures Order, Decretal ¶5.

16. On or before the Overbid Deadline, the Debtor received the following qualifying cash bids:

| Assets for Sale | Qualified Bidder | Initial Overbid |
|---|---|---|
| Meadow Green Apartments Assets | Southwood Realty Company | $1,855,000.00 |

MWH: 10006.001; 00001485.4                5

| East Ridge Apartments Assets | Southwood Realty Company | $2,285,000.00 |
| East Ridge Apartments Assets | CRE Strategic Opportunity Fund, LLC | $2,285,000.00 |

17. On June 14, 2011, the Debtors conducted an auction of the East Ridge Apartments Assets, which was attended by representatives of Southwood Realty Company ("Southwood"), CRE Strategic Opportunity Fund, LLC ("CRE Strategic"), and the Palmetto Bank. At the auction, the highest and best bid for the East Ridge Apartments Assets was submitted by CRE Strategic in the amount of $2,375,000.00. Southwood submitted the second highest bid for the East Ridge Apartments Assets in the amount of $2,350,000.00.

18. No written objection to the Prevailing Bids or the approval of the proposed sale of Assets was filed with the Bankruptcy Court on or before June 17, 2011.

19. The Senior Secured Creditors have consented to the sale of the relevant Assets free and clear of all liens, claims, encumbrances and interests.

## Conclusions of Law

A. This is a core proceeding within the meaning of 28 U.S.C.§157(b)(2), and this Court has the authority to enter this Order pursuant to 11 U.S.C. §§ 105, 363, and 365.

B. The form and manner of notice of the Motion, the Bid Procedures Hearing, the Bid Procedures Order and the Sale Hearing shall be, and hereby are, approved as sufficient and adequate notice.

C. The Debtor has provided due and appropriate notice to all entities with an interest in the Assets.

D. The Assets are property of the Debtors' bankruptcy estates under section 541 of the Bankruptcy Code.

E. The sale of the Assets represents a reasonable exercise of the Debtors' sound business judgment.

F. The consideration to be received by the Debtors for the Assets is fair and adequate under the circumstances.

F. The Sale of the Assets by the Debtors to the Purchasers pursuant to the auction is the result of an arm's length transaction(s).

G. The Purchasers are not "insiders" or "affiliates" of the Debtors as those terms are defined in the Bankruptcy Code and decisions thereunder.

H. The Purchasers are purchasing the Assets for fair value and in "good faith" as referenced in section 363(m) of the Bankruptcy Code. The sale price(s) are fair and reasonable and the sale may not be set aside under section 363(n) of the Bankruptcy Code.

I. The Debtors are authorized to sell the Assets free and clear of all liens, claims, encumbrances and interests under section 363(f) because each entity with an interest in the Assets consents, is deemed to have consented to the sale, or will receive a cash payment equal to or greater than the value of such interest in the Assets.

J. The Debtors' decision to assume the Tenant Leases and to assign the Tenant Leases to the Purchasers represents a reasonable exercise of the Debtors' sound business judgment.

K. The tenants are adequately assured of future performance under the Tenant Leases by the Purchasers as required by section 365(f)(2)(B) of the Bankruptcy Code.

L. Entry of this Order is in the best interests of the Debtors, their estates, and their creditors.

M. Entry of this Order is a condition precedent to closing the sales contemplated by the Motion.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is granted to the extent set forth in this Order. All objections to approval of the Motion that are not addressed in this Order are hereby overruled.

2. The Court hereby approves the sale of the relevant sets of Assets to the following parties submitting the Prevailing Bid(s) (each a "Purchaser," and collectively the "Purchasers"):

| Assets for Sale | Purchaser | Prevailing Bid |
|---|---|---|
| Wildewood Apartments Assets | The Palmetto Bank | $6,300,000.00 |
| Meadow Green Apartments Assets | Southwood | $1,855,000.00 |
| East Ridge Apartments Assets | CRE Strategic | $2,375,000.00 |
| Addison Townhomes Assets | The Palmetto Bank | $1,215,000.00 |
| Timbercreek Apartments Assets | Timbercreek Noteholders | $3,000,000.00 |
| Georgetown Village Apartments Assets | NAFH National Bank | $1,020,000.00 |
| The Gaffney Apartments Assets | Gaffney Noteholders | $3,990,000.00 |

3. In addition, the Assets are sold subject to the following material terms and conditions:

   a. <u>No Warranties</u> – The Assets are sold "as is, where is" with no express or implied warranties;
   b. <u>Form of Deed</u> – the Debtors will convey title to the Properties to the respective Purchasers by special warranty deed;
   c. <u>Purchase Price</u> – the Assets will be sold to the Purchasers identified above;
   d. <u>Assumed Liabilities</u> – the Purchasers will assume all post-closing liabilities under the relevant Tenant Leases, and all post-closing liabilities related to or arising from the Assets;
   e. <u>Cure Costs</u> – to the extent applicable, the Purchasers will be responsible for paying all cure amounts related to the Tenant Leases assumed by the Debtors and assigned to the Purchasers;
   f. <u>Postclosing Indemnification by Debtors</u> – none;
   g. <u>Taxes</u> – the Purchasers shall be responsible for paying all outstanding ad valorem property taxes and personal property taxes related to the Properties and Assets and shall assume responsibility for paying all 2011 taxes;

    h. <u>Closing Costs</u> – all closing costs including, without limitation, title work, deed preparation, recording fees, and related costs will be paid by the Purchasers; and

    i. <u>Closing Date</u> — the closing of the sale of the Assets shall take place on or before June 29, 2011.

    4.    <u>Authorizations</u>. The Debtors are hereby authorized to sell the Assets free and clear of all liens, claims, encumbrances and interests to the Purchasers as set forth in this Order. The Debtors are further authorized to execute and deliver all documents necessary to close the sale of the Assets including, without limitation, executing special warranty deeds conveying the real property to the Purchasers, bills of sale evidencing the sale of personal property to the Purchasers, and any documents evidencing the assignment of the Tenant Leases to the Purchasers. Notwithstanding anything herein to the contrary, the Purchasers shall be entitled (in their sole discretion) to designate one or more special purpose entities to take title to the Assets and the assignment of the Tenant Leases.

    5.    <u>Effect of Sale</u>. The sale of the Assets to the Purchasers shall be free and clear of all mortgages, liens, assessments, encumbrances, obligations, liabilities, security interests, collateral assignments, pledges, judgments, rights of first refusal, rights to purchase, contractual commitments (except the Tenant Leases), taxes (provided however, that the Purchasers must pay any and all outstanding tax obligations related to the Assets), charges, claims (including, but not limited to, tort or product liability claims), rights, damages or other interests or matters of any kind or nature that could be asserted against the Debtors, the Assets or the Purchasers of the Assets.

    6.    <u>Defaulting Bidder</u>. In the event of a cash sale where the Prevailing Bidder for one or more of the sets of Assets is unable to close on the sale of the Assets on or before June 29, 2011, then that bidder shall forfeit its Deposit. In the event the Prevailing Bidder defaults, then the relevant Assets shall be sold to the second highest bidder for the relevant Assets at the

Auction, whose bid shall remain open until the closing of the sale of Assets, provided however, that the second highest bidder shall have an additional fifteen (15) days from the date of written notice from the Debtors to close the sale of the Assets. The second highest bidder's Deposit shall be returned to that bidder upon the closing of the sale of Assets to the Prevailing Bidder.

7. <u>Application of Section 363(m)</u>. The Purchasers are acquiring the Assets in good faith and are entitled to the protections of section 363(m) of the Bankruptcy Code, which ensures that the sale of the Assets pursuant to section 363(b) of the Bankruptcy Code remains valid even if this Order is later reversed or modified on appeal.

8. <u>Taxes</u>. The Purchasers shall be responsible for the payment of all real and personal property taxes related to the Assets at closing.

9. <u>Stamp or Deed Taxes</u>. In accordance with section 1146(a) of the Bankruptcy Code, no stamp tax (e.g. deed stamps) or similar tax may be charged in connection with the transfer of the Assets by any register of deeds or other governmental entity.

10. <u>No Cure</u>. The Court hereby establishes the cure amounts related to the Tenant Leases as zero. This zero cure amount is binding on the counterpart to each Tenant Lease as of the date of the entry of this Order, and any tenant shall be forever barred from asserting against the Debtors, either by way of affirmative claim or offset, any monetary or non-monetary default arising or incurred under any Tenant Lease, any actual pecuniary loss resulting from such default, or any other unpaid or unperformed obligation arising under such Tenant Lease.

11. <u>Tax escrow</u>. Any and all tax escrows currently held by the Debtors are not part of the property included in the sale and all such tax escrows shall be paid to the respective Senior Secured Creditor within thirty (30) days of the date of the entry of this Order, unless otherwise ordered by the Court.

12. <u>Waiver of Stay</u>. The Court hereby waives the fourteen (14) day stay of this Order as set forth in Bankruptcy Rules 6004(h) and 6006(d).

13. The Debtor shall serve a copy of this Order as contemplated in the Motion.

| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of this Order. | United States Bankruptcy Court |
|---|---|